# Gerstein Harrow llp

The Hon. Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

<u>*Re: Letter-Motion to Consolidate 25-mc-527 with other related actions*</u>

Dear Judge Garnett,

Plaintiffs in the following actions hold judgments for damages against either the Democratic People's Republic of Korea ("North Korea"), the Islamic Republic of Iran, or both (alongside many other terrorist parties), resulting from these states' sponsorship and commission of acts of terrorism:

- *Campuzano v. Islamic Republic of Iran*, 13-mc-146
- *Goldberg-Botvin v. Islamic Republic of Iran*, 13-mc-323
- *Ben Haim v. Islamic Republic of Iran*, 16-mc-94
- *Ben Haim v. Islamic Republic of Iran*, 16-mc-95
- *Kim v. Democratic People's Republic of Korea*, 25-mc-527 (this case)
- *Kaplan v. Central Bank of The Islamic Republic of Iran*, 26-mc-33
- *Braun v. Islamic Republic of Iran*, 26-mc-34
- *Botvin v. Islamic Republic of Iran,* 26-mc-35
- *Bodoff v. Islamic Republic of Iran*, 26-mc-36
- *Ben Yishai v. Syrian Arab Republic*, 26-mc-81
- *Borochov v. Islamic Republic of Iran*, 26-mc-82
- *Fakhoury v. Islamic Republic of Iran*, 26-mc-83
- *Force v. Islamic Republic of Iran*, 26-mc-84
- *Fraenkel v. Islamic Republic of Iran*, 26-mc-85
- *Jakubowicz v. Islamic Republic of Iran*, 26-mc-86
- *Rubin v. Islamic Republic of Iran*, 26-mc-87
- *Salzman v. Islamic Republic of Iran*, 26-mc-88
- *Stern v. Islamic Republic of Iran*, 26-mc-89
- *Weinstein v. Islamic Republic of Iran*, 26-mc-90
- *Calderon-Cardona v. Democratic People's Republic of Korea*, 26-mc-94

All of the judgments are registered in this Court, and although the facts that led to the underlying judgments differ, the already filed and forthcoming turnover motions in each case all present the same issue: Which crypto assets issued by Garnishees Circle Internet Financial LLC ("Circle") and Tether International *S.A. de C.V.* ("Tether") must be turned over to satisfy the judgments? Because this issue is



GH

Washington, DC
Scottsdale, AZ
Los Angeles, CA

hi@gerstein-harrow.com          gerstein-harrow.com

# Gerstein Harrow llp

common to all of the cases and because handling the cases together would result in significant efficiencies and no prejudice, this Court should consolidate the cases under Federal Rule of Civil Procedure 42(a) or New York C.P.L.R. § 602, as incorporated by Federal Rule of Civil Procedure 69(a), which incorporates state-law procedures into federal cases for judgment collection.

As explained, Plaintiffs in each of these cases are represented by the same counsel, and all consent to this Letter-Motion. The Defendant rogue nations in each of these cases never appeared, so we do not expect to receive any opposition to this letter-motion from any Defendant. Moreover, as explained below, we believe consolidation will lead to additional efficiencies for Garnishees Circle and Tether.

## I.       Background

### A.       The Underlying Judgments Against Rogue Nations For Acts of Terrorism

As Congress, the Executive Branch, the Supreme Court, and the Second Circuit have recognized, North Korea and Iran have for many years sponsored and conducted acts of terrorism across the world. *E.g.*, *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 206 (2018); *Kim v. Democratic People's Republic of Korea ["DPRK"]*, 774 F.3d 1044, 1046 (2d Cir. 2014). The Plaintiffs in each of the cases at issue here are the estates of those killed, people who were injured, and those whose family members were either killed or injured in acts of terrorism perpetrated or aided by either of those rogue nations. Collectively, the Plaintiffs in these actions hold judgments worth over two billion dollars, excluding interest.

Very briefly, the judgments against North Korea alone arise from the abduction and murder of a pastor performing philanthropic work in China, and North Korea's support for a terrorist cell that indiscriminately opened fire on civilians in an airport, killing Puerto Rican pilgrims visiting Israel. *See* ECF No. 4-1 at 4; *Calderon-Cardona v. Democratic People's Republic of Korea*, 723 F. Supp. 2d 441, 450 (D.P.R. 2010) (explaining that North Korea "was the only state sponsoring" the armed cell that murdered the Christian pilgrims visiting Israel). The judgments against Iran alone arise from many acts of terrorism committed in Israel by Iranian proxies, including, for example, a terrorist who drove his car into a crowd, killing an infant, *see Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 72 (D.D.C. 2017), and a suicide bombing in a mall that killed, among others, American tourists, *see Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 260 (D.D.C. 2003). And the judgment against both Iran and North Korea arises from those countries' support for Hezbollah, a terrorist group that fired rockets on civilians in Northern Israel, killing and injuring many. *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 55 F. Supp. 3d 189, 193 (D.D.C. 2014).

These Plaintiffs all have suffered at North Korea and Iran's hands. But they



Washington, DC
Scottsdale, AZ
Los Angeles, CA

hi@gerstein-harrow.com          gerstein-harrow.com

# Gerstein Harrow llp

have something more in common, too—neither North Korea nor Iran has paid their judgments. Now, these twenty sets of Plaintiffs are all moving to recover North Korean and Iranian assets held by Garnishees Circle and Tether, which are capable of turning over crypto assets—some of which are frozen—used by those rogue nations.

### B.    Prior Proceedings

On November 20, 2025, Han and Yong Kim registered their judgment against North Korea in this Court. 25-mc-527, ECF No. 1. Shortly thereafter, they served a writ of execution on Garnishee Circle, which issues a crypto asset called U.S. Dollar Coin (USDC), of which North Korea holds at least $2.5 million worth. 25-mc-527, ECF No. 4. Circle did not act on the writ of execution, and so the Kims sought turnover under C.P.L.R. § 5225, which is incorporated into this post-judgment proceeding by Federal Rule 69(a). *Id.* The central question in that motion is whether Circle is in possession of North Korean property. That motion remains pending.

Plaintiffs also wish to garnish North Korean and Iranian assets held by Garnishee Tether, a Salvadoran company that issues a different crypto asset called Tether ("USDT"). Approximately 530 million USDT are currently in wallet addresses frozen by Tether that have exposure to known North Korean wallet addresses. And approximately 403 million USDT are in wallet addresses frozen by Tether that have exposure to known Iranian wallet addresses. How many of those USDT belong to North Korea or Iran will be the central question in the Plaintiffs' forthcoming turnover motion against Tether.

But before that motion can be filed, either the Marshal or Plaintiffs will serve Tether with a writ of execution. The Plaintiffs have been in communication with the Marshal about service on Tether, but the Marshal stated it required an order of this Court for the somewhat unusual method of service required because Tether is a Salvadoran company not registered to do business in New York. Plaintiffs filed that motion on February 20, 2026. *See* ECF No. 13, 25-mc-527. As of this filing, the Turnover Motion against Circle and the Request for an Order Directing Service on Tether remain pending in docket 25-mc-527. Upon disposition of the pending motion for service on Tether and after appropriate post-judgment discovery, all Plaintiffs will be prepared to file what would be identical, additional turnover motions.

This is the lowest docket with an assigned judge. That is because for some of the Plaintiffs, many of their judgments against Iran were registered in this Court years ago, and under the versions of this Court's local rules in effect at the time, those cases were assigned to Part One when initially registered, and so have not been assigned to a specific judge. *See Campuzano v. Islamic Republic of Iran*, 13-mc-146 (S.D.N.Y.); *Goldberg-Botvin v. Islamic Republic of Iran*, 13-mc-323 (S.D.N.Y.); *Ben Haim v. Islamic Republic of Iran*, 16-mc-94 (S.D.N.Y.); *Ben Haim v. Islamic Republic of Iran*, 16-mc-95 (S.D.N.Y.).



# Gerstein Harrow llp

Moreover, on January 23, 2026, four additional sets of plaintiffs registered their judgments against North Korea and Iran in this Court. *See Kaplan v. Central Bank of The Islamic Republic of Iran*, 26-mc-33 (S.D.N.Y.); *Braun v. Islamic Republic of Iran*, 26-mc-34 (S.D.N.Y.); *Botvin v. Islamic Republic of Iran,* 26-mc-35 (S.D.N.Y.); *Bodoff v. Islamic Republic of Iran*, 26-mc-36 (S.D.N.Y.). On February 3, the plaintiffs in *Campuzano*, *Goldberg-Botvin*, *Ben Haim*, *Kaplan*, *Braun*, *Botvin*, and *Bodoff* each case served writs of execution on the Marshal, directing the Marshal to serve them on Tether.

On February 24, 2026, ten additional sets of plaintiffs registered their judgments in this Court. *See Ben Yishai v. Syrian Arab Republic*, 26-mc-81 (S.D.N.Y.); *Borochov v. Islamic Republic of Iran*, 26-mc-82 (S.D.N.Y.); *Fakhoury v. Islamic Republic of Iran*, 26-mc-83 (S.D.N.Y.); *Force v. Islamic Republic of Iran*, 26-mc-84 (S.D.N.Y.); *Fraenkel v. Islamic Republic of Iran*, 26-mc-85 (S.D.N.Y.); *Jakubowicz v. Islamic Republic of Iran*, 26-mc-86 (S.D.N.Y.); *Rubin v. Islamic Republic of Iran*, 26-mc-87 (S.D.N.Y.); *Salzman v. Islamic Republic of Iran*, 26-mc-88 (S.D.N.Y.); *Stern v. Islamic Republic of Iran*, 26-mc-89 (S.D.N.Y.); *Weinstein v. Islamic Republic of Iran*, 26-mc-90 (S.D.N.Y.). On February 25, 2026, the plaintiffs in *Calderon-Cardona v. Democratic People's Republic of Korea*, opened docket number 26-mc-94, having previously registered their judgment in this Court on October 8, 2010, under Judgment Number 10,1746. The plaintiffs in these eleven recently registered cases intend to serve writs of execution on the Marshal, directing the Marshal to serve them on Tether, in short order.

Plaintiffs now file this letter-motion requesting consolidation of these cases.

## II.    Argument

### A.    Consolidation Is Warranted Under Federal Rule of Civil Procedure 42(a) And CPLR § 602

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). In exercising that discretion, "considerations of judicial economy favor consolidation." *Id.* The Second Circuit has said that consolidation "should be prudently employed as a valuable and important tool of judicial administration" that can "eliminate unnecessary repetition and confusion." *Devlin v. Transp. Communs. Int'l Union,* 175 F.3d 121, 130 (2d Cir. 1999) (quotation marks and citations omitted).

The threshold requirement for consolidation under Rule 42(a) is the existence of a "common question of law or fact." *See* Fed. R. Civ. P. 42(a). Once that threshold is met, courts weigh several factors, including whether there is a risk of inconsistent adjudications if the cases are not consolidated; whether consolidation will reduce



Washington, DC
Scottsdale, AZ
Los Angeles, CA

hi@gerstein-harrow.com        gerstein-harrow.com

# Gerstein Harrow llp

costs and the burden on the parties, witnesses, and the Court; and whether consolidation will prejudice any party, among other factors. *See Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999); *Johnson*, 899 F.2d at 1284–85. Each of these considerations supports consolidation here.

### 1.    The Cases Present Common Questions of Law and Fact

All twenty post-judgment proceedings share the same core legal and factual questions: whether Garnishees Circle and Tether are in possession of crypto assets belonging to North Korea or Iran that can be reached to satisfy Plaintiffs' judgments. Resolving this question will require the same evidence in every case: namely, evidence concerning the crypto wallets associated with North Korea and Iran; the nature of the crypto assets (either USDC or USDT) issued by Circle and Tether; and whether Garnishees can be said to possess or control those assets so that they may turnover relevant assets to Plaintiffs to satisfy the outstanding judgments.

The mechanism for determining these questions will likewise be identical. As Plaintiffs already have against Circle in 25-mc-527, Plaintiffs will seek turnover of crypto assets under C.P.L.R. § 5225, as incorporated into these federal post-judgment proceedings by Federal Rule of Civil Procedure 69(a). *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located."). Although Tether is a different business than Circle and so the question of turnover of USDT presents possibly different considerations from the ones presented with respect to Circle and its crypto asset, whatever differences there are apply equally across all twenty dockets.

Moreover, the legal issues are essentially identical whether the request is for assets that belong to North Korea or Iran. Across all dockets, the basic questions of fact and law remain the same regardless of which rogue nation's frozen assets are at issue: are Plaintiffs entitled to the funds that Circle or Tether hold that are—or were, before freezing—in the possession of North Korea or Iran? Plaintiffs accordingly suggest that the most efficient route under Rule 42(a) is to consolidate all dockets under a single master docket rather than having one docket related to North Korean assets and another for Iranian assets.

### 2.    Consolidation Will Avoid the Risk of Inconsistent Adjudications

Without consolidation, there is a significant risk that different judges within this District could reach inconsistent conclusions on the same legal and factual questions. For instance, one trier of fact might conclude that a given wallet address belongs to Iran and order the balance of that wallet address turned over to one set of Plaintiffs, while another might conclude that the same wallet address belongs to another party and order that the balance remain with the garnishee. *See Johnson*, 899 F.2d at 1285 (noting that the risk of inconsistent adjudications weighs in favor of



Washington, DC
Scottsdale, AZ
Los Angeles, CA

hi@gerstein-harrow.com          gerstein-harrow.com

# Gerstein Harrow llp

6

consolidation). Consolidation eliminates that risk by ensuring that a single judge resolves these common questions consistently across all cases.

### 3. Consolidation Will Promote Judicial Economy and Reduce the Burden on All Parties

The benefits of consolidation to the Court and the parties are substantial. All Plaintiffs are represented by the same counsel, Gerstein Harrow LLP and the Berkman Law Office LLC. All cases target the same Garnishees—Circle and Tether—and seek turnover of the same categories of crypto assets on the same legal theories. And, because the Plaintiffs in these cases are cooperating in their efforts to collect, if the Plaintiffs discover additional garnishees, or the assets of additional judgment creditors, they will seek to collect them as a group. Absent consolidation, then, the Court would face the prospect of twenty separate but substantively identical turnover motions, each requiring briefing, argument, and decision on the same questions. *See Devlin*, 175 F.3d at 130 (noting that judicial economy is a principal purpose of consolidation). Consolidation will also reduce the burden on the Garnishees, who would otherwise be forced to respond to duplicative motions in multiple proceedings.

Indeed, courts in this District have previously dealt in one docket with post-judgment enforcement proceedings that involve common garnishees and overlapping legal questions even though those cases involved judgment creditors from multiple underlying judgments. *See, e.g.*, Amended Complaint in *Peterson v. Islamic Republic of Iran*, No. 13-cv-9195, ECF No. 102 (S.D.N.Y. July 23, 2014) (case involving consolidated turnover request from five different judgments registered in this Court). This case similarly involves the same turnover questions directed at the same Garnishees from holders of different underlying registered judgments.

### 4. Consolidation Will Not Prejudice Any Party

Moreover, no party will be prejudiced by consolidation. Plaintiffs are requesting consolidation, and the Judgment Debtors are sovereign, rogue nations that have not appeared and are not expected to appear in any of these enforcement proceedings. Garnishees will also benefit from consolidation because they will need to respond to turnover motions only once rather than in each case individually. Moreover, consolidation will not delay proceedings in any case; to the contrary, it will expedite resolution by allowing a single coordinated set of motions rather than many parallel proceedings.

Finally, to the extent New York C.P.L.R. § 602(a) applies to the consolidation question by incorporation into post-judgment proceedings by Federal Rule of Civil Procedure 69(a), *see* Fed. R. Civ. P. 69(a)(1), consolidation is also available and warranted. Section 602(a) of the CPLR provides that "[w]hen actions involving a common question of law or fact are pending before a court, the court, upon motion, may order a joint trial of any or all the matters in issue, may order the actions



Washington, DC
Scottsdale, AZ
Los Angeles, CA

hi@gerstein-harrow.com        gerstein-harrow.com

# Gerstein Harrow llp

consolidated, and may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." C.P.L.R. § 602(a). The standard under § 602 is thus substantially the same as under Rule 42(a), and for the same reasons discussed above, consolidation is warranted. *E.g.*, *Chinatown Apartments, Inc. v. N.Y.C. Transit Auth.*, 100 A.D.2d 824, 825 (1st Dep't 1984) ("Consolidation is appropriate where it will avoid unnecessary duplication of trials, save unnecessary costs and expense and prevent the injustice which would result from divergent decisions based on the same facts.").

## III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court consolidate the cases listed at the first page of this Letter-Motion for all purposes relating to post-judgment enforcement proceedings against Garnishees Circle Internet Financial LLC and Tether International S.A. de C.V.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
Gerstein Harrow LLP
1629 Columbia Road NW, Suite 302
Washington, DC 20004
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
Gerstein Harrow LLP
12100 Wilshire Blvd. Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

*/s/ Robert Tolchin*
Robert Tolchin
The Berkman Law Office LLC
829 E. 15th Street, Suite Seven
Brooklyn, New York 11230
rtolchin@berkmanlaw.com
(718) 855-3627

*Attorneys for all Plaintiffs in all listed actions*



Washington, DC
Scottsdale, AZ
Los Angeles, CA

hi@gerstein-harrow.com          gerstein-harrow.com