**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAN KIM, *et al.*, Plaintiffs,     ) | |
|     ) | |
| *v.*    ) | |
|     ) | |
| THE DEMOCRATIC PEOPLE'S    ) | |
| REPUBLIC OF KOREA, a.k.a. NORTH    ) | |
| KOREA, Defendant    ) | |
|     ) | |
| ~~~~~    ) | |
|     ) | |
| IN RE CENTRAL BANK OF THE    ) | |
| ISLAMIC REPUBLIC OF IRAN, et al.    ) | |
|     ) | Case Nos. 25-MC-527-MMG |
| ~~~~~    ) | 26-MC-033-MMG |
|     ) | 26-MC-094-MMG |
| RUTH CALDERON-CARDONA, et al.,    ) | |
| Plaintiffs,    ) | |
|     ) | |
| *v.*    ) | |
|     ) | |
| THE DEMOCRATIC PEOPLE'S    ) | |
| REPUBLIC OF KOREA, et al.,    ) | |
| Defendants,    ) | |
|     ) | |
| &    ) | |
|     ) | |
| ARBITRUM DAO,    ) | |
|     ) | |
| Garnishee (as to all cases)    ) | |
|     ) | |

**PLAINTIFFS' OPPOSITION TO NON-PARTY AAVE LLC'S EMERGENCY
MOTION TO VACATE RESTRAINING NOTICE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT..............................................................................................................4

I.  THE RESTRAINING NOTICE IS VALID ..........................................................4

    A.  Plaintiffs Need to Make Only a Prima Facie Showing That The Restrained Assets Belong to Their Judgment Debtor .............................5

    B.  Plaintiffs Make a Prima Facie Showing That DPRK Is The Exploiter And Will so Prove in a Turnover Proceeding ..........................6

    C.  The Exploiter Obtained Title to The Immobilized Assets When it Used Fraudulent Collateral to Borrow the Immobilized Assets ............8

    D.  Garnishee Arbitrum DAO Concededly Possesses The Exploiter's Property And Nothing About That Possession Even Purports to Transfer Ownership to Arbitrum DAO....................................................13

II.  AAVE'S CLAIMS OF IRREPARABLE HARM ARE FLATLY FALSE............14

    A.  Aave's Own Proposal Will Result in no Action Regarding the Immobilized Funds Until June 13, 2026, And Any Harm It Is Currently Suffering Is From The Exploit, Not The Restraining Notice ......................................................................................................15

    B.  Aave LLC Fails to Mention That "DeFi United" Has *Already* Raised Nearly Enough To Repay Protocol Users And That Aave LLC Wants The Immobilized Assets to Be Used to Pay Back Undisclosed Contributors....................................................................17

III.  AAVE CONCEDES IT HAS NO INTEREST IN THE IMMOBILIZED ASSETS AND SO LACKS STANDING TO CHALLENGE THE NOTICE OR REQUIRE PLAINTIFFS TO POST A BOND ...........................19

    A.  Aave Lacks Article III Standing Because It Has Suffered No Concrete, Particularized Injury From The Service of The Restraining Notice. ...........................................................................19

    B.  Aave LLC's Bond Request Is Nonsensical ............................................23

CONCLUSION ........................................................................................................25

CERTIFICATE OF COMPLIANCE .........................................................................26

i

# TABLE OF AUTHORITIES[1]

## CASES

*Am. Title Ins. Co.* v. Mo-ST Assocs., Inc., CV-91-0308, 1991 U.S. Dist. LEXIS 16706 (E.D.N.Y. Nov. 7, 1991) .......................................................................10

*Berkshire Bank* v. Tedeschi, No. 1:11-CV-0767 (LEK/CFH), 2016 U.S. Dist. LEXIS 32930 (N.D.N.Y. Mar. 15, 2016) ...........................................................6

*Blue Giant Equip. Corp.* v. Tec-Ser, Inc., 92 A.D.2d 630 (N.Y. App. Div. 3d Dep't. 1983) .........................................................................................................6

*Calderon-Cardona* v. Bank of New York Mellon, 70 F.3d 993 (2d Cir. 2014) .......................................................................................................................13

*Claymont* v. Levitt, 140 A.D.2d 578 (N.Y. App. Div. 2nd Dep't 1988) .........................6

*Cunningham* v. Brown, 265 U.S. 1 (1924) ............................................................. 2, 10

*Estate of Levin* v. Wells Fargo Bank, N.A., 156 F.4th 632 (D.C. Cir. 2025) ..................................................................................................... 12, 13, 14

*Grupo Mexicano de Desarrollo, S.A.* v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999)....................................................................................................15

*Heiser* v. Islamic Republic of Iran, 735 F.3d 934 (D.C. Cir. 2013)..............................13

*JSC Foreign Econ. Ass'n Technostroyexport* v. Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366 (S.D.N.Y. 2003) ..................................................22

*Kitchen v. Boyd (In re Newpower),* 233 F.3d 922 (6th Cir. 2000) ................................8

*Kowalski* v. Tesmer, 543 U.S. 125 (2004) ................................................................21

*Lujan* v. Defs. of Wildlife, 504 U.S. 555 (1992) .......................................................20

*Paden* v. Taylor, 44 N.Y. 371 (1871)........................................................................10

*Plaza Hotel Assocs.* v. Wellington Assocs., Inc., 378 N.Y.S.2d 859 (N.Y. Sup. Ct. 1975) ..................................................................................................5, 6

---

[1] Given the abbreviated timeline for this memorandum, Plaintiffs used an automated program to generate this table of authories and have not verified the page numbers or completeness of the citations.

*Save Way Oil Co.* v. 284 E. Parkway Corp., 115 Misc. 2d 141 (Civ. Ct. Kings Cnty. 1982) ................................................................................22

*Spokeo, Inc.* v. Robbins, 578 U.S. 330 (2016)................................................................20

*Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.),* 377 F.3d 209 (2d Cir. 2004) ................................................................................11

*TransUnion LLC* v. Ramirez, 594 U.S. 413 (2021) ......................................................21

*United States SEC* v. Universal Express, Inc., 2008 U.S. Dist. LEXIS 35342 (S.D.N.Y. Apr. 30, 2008) ........................................................2, 9

## STATUTES AND REGULATIONS

28 U.S.C. § 1605A .......................................................................................................12

28 U.S.C. § 1610 .........................................................................................................12

31 C.F.R. § 594.201(a).................................................................................................13

C.P.L.R. § 5222 ................................................................................................ 5, 6, 14

C.P.L.R. § 5240 ................................................................................................. 19, 22

Fed. R. Civ. P. 65.........................................................................................................15

Fed. R. Civ. P. 69(a) ....................................................................................................15

International Emergency Economic Powers Act (IEEPA) ................................... 12, 13

Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, § 201, 116 Stat. 2322................................................................................................................12

## OTHER AUTHORITIES

David Gray Carlson, *Critique of the Money Judgment (Part II Liens on Personal Property)*, 83 St. John's L. Rev. 43 (2009)................................................11

OFFICE OF FOREIGN ASSET CONTROL (OFAC), SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS LIST (Oct. 2025) ................................................13

U.S. DEPARTMENT OF STATE, STATE SPONSORS OF TERRORISM.....................................12

**PRELIMINARY STATEMENT**

On Friday, May 1, Plaintiffs, who seek to collect on outstanding judgments against North Korea and its agencies and instrumentalities, served a restraining notice pursuant to this Court's order, ECF No. 34, on Garnishee Arbitrum DAO, *see* ECF No. 33-7 at 2. That notice restrains the digital ledger balance at a specific blockchain address (the "Immobilized Assets") because Plaintiffs have alleged that North Korea owns those assets and Plaintiffs seek to preserve them for a forthcoming turnover motion.

So far, neither the judgment debtor, nor Garnishee, nor any lender who used something called the Aave Protocol in reliance on bad North Korean collateral, has challenged the Restraining Notice. Instead, non-party Aave LLC—whose website reads "that neither we nor any affiliated entity is a party to any transaction on the blockchain networks underlying the Aave Protocol; we do not have possession, custody or control over any cryptoassets, or any user's funds," Ex. E.—now moves this Court for an emergency order vacating the Restraining Notice, arguing principally that North Korea has an insufficient property interest in the Immobilized Assets to support restraint and complaining about a parade of irreparable harms that will flow from the Restraining Notice. The Motion is meritless.

*First*, Aave LLC is legally wrong about the nature of North Korea's property interest in the Immobilized Assets. To borrow Aave's metaphor, North Korea did not do the digital equivalent of "smash[] a jewelry case" and "grab[] diamonds" that were later "intercepted by a Good Samaritan," *contra* Memo at 3; North Korea used a fake diamond as collateral to borrow money from financial speculators. According to Aave

1

LLC's own witness, here's what happened: Someone "forg[ed] a message that falsely claimed that rsETH had been burned on the Unichain network," which allowed that person to "trick" Kelp DAO into "releasing 116,500 rsETH," and then the person "us[ed] that unbacked rsETH as collateral on the Aave Protocol to borrow *other* cryptocurrency assets" some of which were then "frozen" by the "Arbitrum Security Council." ECF No. 41 ¶ 5 (emphasis added). The law is clear that the "forg[ing]" borrower obtained title to the assets obtained in exchange for bad collateral, *United States SEC v. Universal Express, Inc.*, 2008 U.S. Dist. LEXIS 35342, at *10 (S.D.N.Y. Apr. 30, 2008) ("Assuming the seller had good title to the property before it was exchanged for the stolen money, that title is conveyed by the sale to the embezzler or thief."), and regardless people who transfer their property to others on fraudulent premises, as here, lose title to their property, *Cunningham v. Brown*, 265 U.S. 1, 12 (1924) (holding that Charles Ponzi obtained, through the now-eponymous scheme, "defeasible title" to his victims' cash). The relevant facts do not appear to be in dispute; only the legal conclusion is. And Aave LLC is straightforwardly wrong on the law.

*Second*, Aave contends that Plaintiffs have not substantiated their claim that the Immobilized Assets are North Korea's, but Plaintiffs need only make a prima facie showing at this stage; Aave LLC proffers no alternative explanation or evidence; and Arbitrum DAO itself admits—as every other available source confirms, Exs. B–D, F, G—that it is "very confident" that the exploiter is North Korea, Ex. A at 1.

*Third*, Aave LLC is not entitled to any equitable relief from this Court,

2

especially on the ultra-emergency timeline it demands, because its claims that lenders are being irreparably injured by the Restraining Notice are flatly false. Aave LLC's own proposal to transfer the Immobilized Assets *to itself* would have taken until June 13th. ECF No. 33-5 at 2, 4 (proposal from Aave authorizing transfer of Immobilized Assets to address controlled by Aave Labs and two others, and reading "Timeline . . . Total estimated period: Approximately 49 days"). And anyway, by Aave LLC's own account, lenders whose collateral turned out to be bad will almost surely be made whole regardless of the Restraining Notice. "DeFi United," which is a "movement" of which Aave LLC claims to be a part, *see* Memo at 10, "came together to help bridge the gap and restore the backing that could allow the affected Aave Protocol users to withdraw their funds," DeMeo Decl. ¶ 38. DeFi United has already nearly bridged the gap, having raised nearly $329 million as of this writing.[2] DEFI UNITED, defiunited.world (last accessed May 5, 10:10 AM). Aave LLC thus appears to be seeking the release of the Immobilized Assets to reimburse itself and unnamed crypto investors for voluntarily paying users with bad loans: while Aave LLC claims that "returning [the Immobilized Assets]"—returning to whom, Aave LLC does not say—would "go[] a long way toward making [lenders] whole," DeMeo Decl. ¶ 39, it notably does *not* say that these same users will not be "ma[de] whole" if the Immobilized Assets are instead applied to the judgments of victims of North Korea's previous crimes. Aave LLC's silence on this point speaks volumes.

---

[2] The tally changes constantly because contributors are adding money to the pot and because the price of ETH changes constantly. By the time of the hearing on Wednesday, the total may be significantly higher.

3

*Finally*, and relatedly, Aave LLC articulates no harm at all *to itself* and so lacks Article III standing and any ability to order Plaintiffs to post the massive bond it seeks. Aave LLC contends that it is "a software development and services company that contributes to the open-source software known as the Aave Protocol," DeMeo Decl. ¶ 10, which, Aave LLC contends, "is not a company or legal entity," Memo at 6. But software and services companies do not have standing to challenge restraining notices against property of users of their software, property in which they have no legal, beneficial, or other financial interest. Indeed, Aave LLC's request that Plaintiffs post a $300 million bond highlights the absurdity of their request: who would receive the proceeds if the bond paid out? Aave LLC does not say. Aave's entire motion, like its wild request that Plaintiffs post a bond, is without legal support. It should be denied.

**ARGUMENT**

This Court should deny Aave LLC's motion because (a) the restraining notice is plainly valid; (b) Aave's claims of irreparable harm are false, and the disposition of the Immobilized Assets can be determined in the ordinary course; and (c) regardless, Aave LLC, by its own admission, has lost nothing here and has no grounds to seek anything from this Court.

## I.    THE RESTRAINING NOTICE IS VALID

The core of Aave LLC's argument rests on repeated misstatements of what it admits happened here and the law governing what is supposed to happen now. Aave LLC contends that some unknown person "stole approximately $180 million (at the time of the exploit) worth of cryptocurrency assets from the Aave Protocol." ECF No.

4

42, Memo at 2. This is either a very creative use of the word "stole" or else a flat misstatement. What actually happened is that North Korea borrowed assets from users of the "Aave Protocol" and did not pay it back, and when the "Aave Protocol" sought to liquidate North Korea's collateral, the "Aave Protocol" unhappily discovered that the collateral was worthless. North Korea thus obtained title to the borrowed assets, and Plaintiffs—who have a lien on those assets and who make a sufficient evidentiary showing that they belong to North Korea—are entitled to them.

### A. Plaintiffs Need to Make Only a Prima Facie Showing That The Restrained Assets Belong to Their Judgment Debtor

Under New York law, "[a] restraining notice served upon a person other than the judgment debtor is effective only if, at the time of service . . . he or she is in possession or custody of property" of the judgment debtor and either "knows or has reason to believe the judgment debtor . . . has an interest" in that property "or . . . the judgment creditor . . . has stated in the notice that . . . the judgment debtor . . . has an interest in specified property in the possession or custody of the person served." C.P.L.R. § 5222(b). This Court should uphold the restraining notice because Plaintiffs have precisely described the restrained property and have made an evidentiary showing that it belongs to the judgment debtor, North Korea.

In urging this Court to dissolve the restraining notice, Aave LLC wrongly attempts to turn its motion into a full-blown turnover proceeding. But a "restraining notice may be used in conjunction with other devices to '[maintain] the status quo while the judgment creditor seeks a delivery, turnover, or receivership order in what were formerly called supplementary proceedings.'" *Plaza Hotel Assocs. v. Wellington*

*Assocs., Inc.*, 378 N.Y.S.2d 859, 863 (N.Y. Sup. Ct. 1975). To preserve the status quo via a restraining notice, the party serving the notice need make only a "prima facie" case that the entity served with the notice possesses the judgment debtor's property. *Id.*; *see also Berkshire Bank v. Tedeschi*, No. 1:11-CV-0767 (LEK/CFH), 2016 U.S. Dist. LEXIS 32930, at *7 (N.D.N.Y. Mar. 15, 2016) (applying C.P.L.R. 5222(b), "Plaintiff is correct that a restraining notice against non-debtor property is valid if the creditor has made a prima facie showing" that the party served possesses the judgment-debtor's property); *Blue Giant Equip. Corp. v. Tec-Ser, Inc.*, 92 A.D.2d 630, 631 (N.Y. App. Div. 3d Dep't. 1983) (explaining that, because Plaintiff made "a prima facie case," plaintiff could "pursu[e] its remedies to enforce its judgment, including the device of restraining notices"). Thus, the judgment-creditors here need only "produce evidence from which the hearing court could infer" that Arbitrum DAO possesses crypto assets in which North Korea has an interest. *Claymont v. Levitt*, 140 A.D.2d 578, 579 (N.Y. App. Div. 2nd Dep't 1988).

For the reasons explained below, Plaintiffs have shown that (1) the owner of the Immobilized Assets is very likely North Korea, Plaintiffs' judgment debtor, (2) North Korea has title to the assets such that they are subject to a valid restraining notice, and (3) Arbitrum DAO is a valid Garnishee who possess the property on the owner's behalf.

### B.      Plaintiffs Make a Prima Facie Showing That DPRK Is The Exploiter And Will so Prove in a Turnover Proceeding

Plaintiffs have made the required prima facie showing that North Korea was behind the exploit and owns the Immobilized Assets. The Court need look no farther

than Garnishee Arbitrum DAO, whose own Security Council members are "very confident" that the person who borrowed assets from the Aave Protocol was in fact North Korea or its agencies or instrumentalities (against which Plaintiffs' judgment is directly executable under federal law, 28 U.S.C. § 1610(f)). Ex. A. All other sources that Plaintiffs have found confirm this finding. Exs. B–D, F, G.

Aave LLC only partially disputes this. It claims that Plaintiffs' theory is "based on conjecture from posts on the internet," Memo at 2, but offers no alternative evidence of who was behind the exploit. And anyway the evidence in support of the fact that North Korea was behind the exploit is far more than mere "posts on the internet." In fact, Plaintiffs relied initially on *the supposed victim's* attribution. LayerZero, the company that provides the "cross-chain bridge architecture" used in the fraud, explained that the fraud was "likely attributable to the Lazarus Group." Ex. G. Many other reputable sources in a variety of sectors have confirmed this attribution, including Chainalysis and TRM Labs (both reputable forensics firms) and the Wall Street Journal. Ex. F, Wall Street Journal Article ("Aave has faced significant pressure since April 18, when hackers affiliated with North Korea's Lazarus Group gained access to KelpDAO."). Tellingly, no source of which Plaintiffs are aware has offered alternative attribution, and Aave LLC has proffered no other possible alternative for who may be behind the exploit.

To be sure, mere days into the fast-moving case, Aave LLC may be correct that Plaintiffs have not yet proven conclusively that North Korea is the exploiter. But the evidence in support is substantial, currently undisputed, and far beyond the "prima

7

facie" showing necessary to prevail here. *E.g.* Ex. A. Plaintiffs intend to produce an expert report in support of a forthcoming motion for turnover—but again, they have made a prima facie showing at this point, which is what is required.

> ### C. The Exploiter Obtained Title to The Immobilized Assets When it Used Fraudulent Collateral to Borrow the Immobilized Assets

According to Aave LLC, the validity of the restraining notice also depends on whether the Immobilized Assets were property owned by North Korea, Plaintiffs' judgment debtor, or whether those assets are owned by the people who loaned money relying North Korea's bad collateral. Memo at 15–17. North Korea obtained title to the Immobilized Assets when it used bad collateral to borrow them because (a) the Immobilized Assets were not taken directly by anyone, but rather were obtained in exchange for bad collateral, and (b) fraud transfers title, not just possession. Indeed, as courts have stated, this doctrine makes sense because to allow Aave LLC to prevail here would be to let some creditors jump to the front of a very long line merely by crying fraud in response to an arms'-length transaction gone bad. And federal law would subject the Immobilized Assets to Plaintiffs' judgment.

*First*, as Plaintiffs explained in their motion for alternative service, "if a thief steals funds and uses them to purchase other property the owner cannot follow the funds, and he is left to his remedy against the thief, who, although he had no title to the stolen funds, *does have title to the property purchased therewith*." *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 930 (6th Cir. 2000) (emphasis added). In response, Aave LLC contends that *Boyd* is "not binding" because it is out-of-circuit, but Aave LLC cites no other case, and of course the rule is the same everywhere, including

8

here. *United States SEC v. Universal Express, Inc.*, 2008 U.S. Dist. LEXIS 35342, at *10 (S.D.N.Y. Apr. 30, 2008) ("Assuming the seller had good title to the property before it was exchanged for the stolen money, that title is conveyed by the sale to the embezzler or thief." (relying on *Boyd*)). Aave LLC then attempts to distinguish these cases by claiming that "[s]ince no one—including Plaintiffs—have alleged that the thief gained legal title to the cryptocurrency in question by purchasing it with ill-gotten gains, *Boyd* is inapposite." Memo at 15. That's news to Plaintiffs, who wrote that "[e]ven though North Korea's collateral was worthless, North Korea *obtained ownership*, not just possession, of the borrowed assets," Mot. for Alt. Service at 7 (emphasis added), and, therefore, Plaintiffs are entitled to restrain those assets, *id.* Aave LLC has nothing to say to this.

Aave LLC does later admit, as it must, that someone who steals property then sells it for cash indeed acquires title to the cash. Memo at 15. But that is the proper lens to evaluate this transaction. And nothing about that outcome changes merely because the "Aave Protocol" supposedly does not "account for the Immobilized Assets as property validly belonging to the wallet address that initiated the exploit," Memo 16, whatever Aave LLC means by "account[ing]" here. Aave LLC is not the arbiter of what belongs to whom, and it (yet again) cites no authority for the proposition that the supposed accounting treatment of the Aave Protocol—which is run by Aave DAO, not even a party here—controls over clear law. Because North Korea acquired the Immobilized Assets in exchange for other assets, Aave LLC's claim is meritless.

9

*Second*, even if the Immobilized Assets came directly from Aave LLC's wallet—and, as explained below, Aave LLC in fact has nothing to do with those assets—Aave LLC would *still* lose because the law is crystal clear that a fraud victim passes title, not merely possession, to a fraudster. *E.g.*, *Cunningham v. Brown*, 265 U.S. 1, 12 (1924) (holding that Charles Ponzi obtained, through his now-eponymous scheme, "defeasible title" to his victims' cash); *see also Am. Title Ins. Co. v. Mo-ST Assocs., Inc.*, CV-91-0308, 1991 U.S. Dist. LEXIS 16706, at *7 (E.D.N.Y. Nov. 7, 1991) (citing *Paden v Taylor*, 44 N.Y. 371, 376 (1871)). In other words, as Plaintiffs explained, the rule is that where an exploiter convinces lenders to voluntarily part with their property by posting bad collateral, the exploiter nonetheless ends up with good title, subject to lawsuit by the lenders. That is just what happened here and any defrauded Aave lenders are free to sue North Korea or its agents.

*Third*, this is not merely some technical distinction between fraud and theft or some technical distinction between stolen property and property purchased with stolen funds; common sense and equity also dictate that Plaintiffs should prevail here. Plaintiffs have valid judgments now reduced to valid levies against North Korean property. Under New York law, the judgment creditor who executes first prevails. David Gray Carlson, *Critique of the Money Judgment (Part II Liens on Personal Property)*, 83 ST. JOHN'S L. REV. 43, 47–50 (2009). This rule is based on the sound judgment of the state that diligent creditors be rewarded. If entities like Aave LLC prevailed over judgment creditors simply by saying "that guy took some of my assets!" or, worse, "he told me something about my loan collateral that wasn't true!,"

10

and if they could do that without even proving their case to a jury, New York's scheme would be turned on its head. *See Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217 (2d Cir. 2004) (explaining that allowing fraud victims to prevail over other creditors in bankruptcy through the imposition of constructive trust threatens similar priority scheme in bankruptcy).

This is all the more true where, as here, the Plaintiffs are quite literally victims of murder by North Korea, while Aave LLC purports to speak up for "unknown" financial speculators who have not even appeared here. Memo at 2. The Aave Protocol, in likely violation of federal law, does not have any know-your-customer requirements. *See* Ex. H ("It is important to note that, like other DeFi platforms . . . Aave does not have a Know Your Customer (KYC) process. Unlike centralized exchanges like Coinbase and Binance, users don't have to show their IDs when trading. This means anyone can interact with the protocol if they have an Ethereum wallet."). Its users are crypto speculators, who may well be sanctioned parties themselves for all Aave LLC knows, who call take-backs on crypto bets gone bad. If there is a rule of equity prioritizing them over murder victims with enforceable judgments from U.S. federal courts, Aave LLC does not cite it, and undersigned counsel hasn't seen it.

*Finally*, this case is governed by the Terrorism Risk Insurance Act, which provides an independent federal-law priority to execute against assets that are "property of" a terrorist state, as the Immobilized Assets are. Section 201 of the TRIA provides in relevant part that

11

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

*Estate of Levin v. Wells Fargo Bank, N.A. ("Levin II")*, 156 F.4th 632, 634 (D.C. Cir. 2025) (quoting Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, 116 Stat. 2322). The "TRIA defines a 'blocked asset' as 'any asset seized or frozen by the United States' under [the International Emergency Economic Powers Act ('IEEPA')]." *Id.* (quoting TRIA § 201(d)(2)(A)–(B)). The TRIA "defines a 'terrorist party' to include any foreign country designated as a state sponsor of terrorism. *Id.* (quoting TRIA § 201(d)(4)). And a terrorism-related judgment includes "any judgment relating to a claim for which a foreign state (including any agency or instrumentality of such state) claiming such property is not immune under section . . . 28 U.S.C. § 1605A [which covers judgments for acts of terrorism and extra-judicial killings]." 28 U.S.C. § 1610.

Plaintiffs' judgments are against state sponsors of terrorism for acts of terrorism and extra-judicial killing. U.S. DEPARTMENT OF STATE, STATE SPONSORS OF TERRORISM at 1. And the Immobilized Assets here are "the blocked assets" of a terrorist party because, even though the blockchain address where they are stored has not been specifically designed, "when property of designated persons comes 'within the United States' or 'the possession or control of U.S. persons,' it is 'blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in.'" *Levin II*, 156 F.4th at 638 (quoting 31 C.F.R. § 594.201(a)). North Korea (and its agencies

and instrumentalities, such as the "Lazarus Group" or "APT-38") are "designated persons" under IEEPA. *See, e.g.*, OFFICE OF FOREIGN ASSET CONTROL (OFAC), SPECIALLY DESIGNATED NATIONALS AND BLOCKED PERSONS LIST at 1452 (Oct. 2025). And so, because Plaintiffs have made a prima facie showing that the Immobilized Assets belong to North Korea or its agencies or instrumentalities under state law, *see Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 936 (D.C. Cir. 2013), *Calderon-Cardona v. Bank of New York Mellon*, 70 F.3d 993, 1002 (2d Cir. 2014), the Immobilized Assets are "blocked." Given this, Plaintiffs' right to the property is thus superior to any other right that Aave LLC or its supposed users might assert. That is because "blocked property" is subject to execution of this judgment "notwithstanding *any* other provision of law." *Levin II*, 156 F.4th at 638.

### D. Garnishee Arbitrum DAO Concededly Possesses The Exploiter's Property And Nothing About That Possession Even Purports to Transfer Ownership to Arbitrum DAO

Finally, Aave LLC does not contest that Arbitrum DAO is a proper garnishee. Aave LLC concedes, as it must, that Arbitrum DAO effected a "seizure" of the Immobilized Assets. Memo at 17. That is, Aave LLC does not contest that Arbitrum DAO is a valid garnishee as to anyone with a claim against the Immobilized Assets because Arbitrum DAO possesses the property in which those people have claims.

Instead, Aave LLC makes the bizarre argument that Arbitrum DAO's *seizure* transferred *ownership* of North Korea's assets. Memo at 17. Unsurprisingly, Aave LLC cites no cases in support of this argument, instead relying exclusively on its own admiration for Arbitrum DAO. *Id.* (describing Arbitrum as "heroic"). And Aave LLC's argument is wrong because it starts from a wrong premise: Plaintiffs agree that if

13

North Korea simply steals property it does not acquire title to that property. *Contra id.* (claiming that Plaintiffs rely on "kindergarten adage 'finders keepers'"). North Korea, as explained above, in fact borrowed funds in an arms'-length transaction and Arbitrum DAO froze those funds, evidently in coordination with the government. Exs. A, C. To say that this transfers ownership is akin to saying that a bank obtains ownership when it freezes a bank account. That is wrong, *e.g.*, *Levin II*, 156 F.4th at 638, and makes a hash of New York that a judgment creditor may serve a Restraining Notice on an entity, called "a Garnishee," holding property of a judgment debtor, C.P.L.R. § 5222.

Finally, Aave LLC halfheartedly posits in a footnote that Arbitrum DAO is not a juridical entity at all, going so far as to accuse Plaintiffs of "pulling a fast one" on the Court by citing publicly reported cases. Memo at 10 n.2. Aave LLC makes this contention despite recognizing that those cases uniformly held that plaintiffs had plausibly alleged DAOs could be general partnerships and despite this Court's holding that those cases *treated* DAOs as general partnerships in fact "for purposes of service," ECF No. 34 at 2. But Aave LLC does not explain what impact its specious disagreement with the legal framework governing DAOs has on the question whether the Restraining Notice should be vacated. This Court can thus ignore Aave LLC's unsubstantiated broadsides on this point.

## II.    AAVE'S CLAIMS OF IRREPARABLE HARM ARE FLATLY FALSE

The above is sufficient to defeat Aave LLC's motion because the restraint is valid no matter the harm it may be causing to Aave LLC's unrelated business interests. And contrary to Aave LLC's unsupported accusation that Plaintiffs "have

14

improperly utilized post-judgment procedures to help themselves to the equivalent of a TRO while doing an end-run around Rule 65," Memo at 22, the law is clear that Rule 69(a), not Rule 65, applies here, *see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330 (1999) (explaining that plaintiffs may not use Rule 65 to enjoin the movement of funds pre-judgment). Accordingly, Plaintiffs do not need to show irreparable harm absent a restraint. They need only show that the garnishee is in possession of assets in which Plaintiffs' judgment debtor has an executable interest, something that (as explained above) they have clearly done.

But still Aave LLC, in an evident effort to convince this Court to require briefing on 24 hours' notice, has attempted to show that it would be harmed absent instantaneous equitable relief from this Court in the form of a vacatur of the Restraining Notice. Aave LLC's complaints of harm are factually wrong and inconsistent with its own actions.

### A.    Aave's Own Proposal Will Result in no Action Regarding the Immobilized Funds Until June 13, 2026, And Any Harm It Is Currently Suffering Is From The Exploit, Not The Restraining Notice

At the outset, Aave LLC has frankly misled the Court about the source of urgency of its request. It contends that it must have "*immediate*" relief from the Restraining Notice directed at Arbitrum DAO because "[t]he Restraining Notice is causing immediate harm, right this very moment, to blameless third parties." Memo at 5. But Aave LLC's own facts show otherwise. The Immobilized Funds are to remain immobilized until at least June 13th under the proposal *that Aave LLC authored.*

15

ECF No. 33-5 at 2. The Restraining Notice thus changes nothing between now and then: Whether or not subject to restraint, the funds were not going to move for more than an entire month.[3]

Aave LLC makes no other specific showing of harm from the Restraining Notice, which (as will be explained in a forthcoming certificate) was served by posting to the Arbitrum Governance Forum and by email to counsel immediately after this Court's Friday order regarding alternative service (and served by mail and on agents of Arbitrum Partners on Monday). Aave LLC's primary contention for immediate vacatur is that "[i]f the restraining notice remains in place, ordinary users around the world who in good faith supplied assets to, borrowed assets from, or otherwise interacted with the Aave Protocol will continue to be deprived of access to their own property and exposed to ongoing financial harm." DeMeo Decl. ¶ 40. But again: they would not have been able to transfer the Immobilized Assets *until June 13* anyway.

In support of their urgent request, Aave LLC also mentions the possibility of "cascading liquidations, sustained liquidity outflows, or prolonged withdrawal constraints," and states that, if these events "take hold, their effects are not reversible or capable of full remediation." DeMeo Decl. ¶ 42. But Aave LLC fails to reveal that these impacts began for Aave lenders weeks ago, after the exploit, and not as a result of the Restraining Notice. Ex. F, Vicky Ge Huang, *Crypto Rushes to Bail Out*

---

[3] Perhaps, as Plaintiffs suspected (ECF No. 33-2 ¶¶ 8,9), some parties involved with Arbitrum DAO intended to short-circuit the process. But *Aave itself* was evidently fine waiting for 49 days as of April 25, and it raises nothing in its motion to suggest that circumstances have changed since.

*Decentralized Lender Targeted by Hackers*, WALL STREET JOURNAL, April 29, 2026 ("The novel attack triggered a panic among Aave depositors, who have withdrawn more than $10 billion since then. As the initial wave of users rushed to exit, Aave reached its limits on how much it could lend out, effectively freezing the remaining assets and leaving subsequent users unable to withdraw. Borrowing rates on Aave surged into double digits as stranded lenders scrambled to borrow stablecoins against their locked collateral."). Aave LLC thus appears to be blaming Plaintiffs for its own business failures and acting as though it has somehow become too big for this Court to let it fail. But the timing reveals the game Aave LLC is playing: Aave LLC cites no specific harm that befell it over the weekend when the Restraining Notice was in place that is any different from whatever harm occurred in the week prior due to its decision to base its loans on risky collateral that turned out to be worthless.

> **B.    Aave LLC Fails to Mention That "DeFi United" Has *Already* Raised Nearly Enough To Repay Protocol Users And That Aave LLC Wants The Immobilized Assets to Be Used to Pay Back Undisclosed Contributors**

Even more troublingly, Aave LLC is evasive about the actual consequences for the impacted Aave Protocol lenders of keeping the Restraining Notice in place. Nowhere in its papers does Aave LLC say that the Immobilized Assets must be unrestrained or else the lenders' collateral will not be restored in full. And that silence is revealing, because Aave LLC elsewhere admits that "[m]any in the decentralized finance world . . . came together to help bridge the gap and restore the backing that could allow the affected Aave Protocol users to withdraw their funds." DeMeo Decl. ¶ 38. Indeed, as of the morning of this filing, the DeFi United effort that Aave LLC is a

part of has so far raised $327.95 million to restore the lost collateral to lenders in the red. *See* DEFI UNITED, defiunited.world. The Immobilized Assets here are included in that total but are currently only approximately 22% of it. *See id.* And with several large contributors' precise contributions still to be determined, *see id.* (listing the contributions of four very large industry players as "TBD"), there is no evidence that these Immobilized Assets are necessary to back the collateral of any specific lender.

Instead, it appears by all accounts that a recovery effort is happening no matter what, and Aave LLC actually wants to have Arbitrum DAO use the Immobilized Assets to help offset the contributions of major donors to this effort. Aave LLC, after all, proposed to Arbitrum DAO that the Immobilized Assets be transferred to a wallet address that *Aave LLC controls* alongside Kelp DAO and a company called Certora. ECF No. 33-5 at 4. (Leave for another day the wisdom of entrusting the partnership that fell for North Korea's "trick[s]" with the recovery funds. ECF No. 41 ¶ 5.) Aave LLC is notably not forthcoming in its motion papers about any of this, and the DeMeo Declaration says only that "returning [the Immobilized Assets] goes a long way toward making [the users] whole." DeMeo Decl. ¶ 39. But DeMeo does not say what it means "to go a long way"; he does not say to whom the Immobilized Assets will actually be paid to on June 13 if the proposal passes; he does not say what other assets are available to make the lenders' collateral good; and he does not say whether the lenders will still receive meaningful compensation without the Immobilized Assets being transferred on June 13. Whatever is actually happening under the hood here, what is clear is that the lenders are very likely to see their collateral restored

18

with or without the Immobilized Assets, and that Aave LLC will instead use the Immobilized Assets to pay itself back. This may have been permissible for Aave LLC to do absent Plaintiffs' judgments, but it definitely does not need to happen tomorrow.

### III.    AAVE CONCEDES IT HAS NO INTEREST IN THE IMMOBILIZED ASSETS AND SO LACKS STANDING TO CHALLENGE THE NOTICE OR REQUIRE PLAINTIFFS TO POST A BOND

#### A.    Aave Lacks Article III Standing Because It Has Suffered No Concrete, Particularized Injury From The Service of The Restraining Notice.

This Court should also independently deny Aave LLC's emergency request because Aave LLC concedes it has no direct legal or monetary interest in the Immobilized Assets and so lacks standing.

Aave brings its motion pursuant to C.P.L.R. Section 5240, which permits a court, on "the motion of any interested person," to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." But Aave neither meets the criterion of being an "interested person" nor meets the requirement of standing under Article III because it alleges no concrete, particularized injury from service of the restraining notice.

As the Court is aware, to invoke this Court's jurisdiction, Aave LLC must demonstrate "(i) [an] injury in fact (ii) that is fairly traceable to the challenged conduct of the defendant, and (iii) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). The injury must be "concrete and particularized" and reflect the invasion of "a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Aave LLC, as the movant, "bears the burden of establishing these elements." *Id.* at 561.

19

Aave LLC's own submissions defeat the first element—that it has suffered a concrete injury in fact. On Aave LLC's own account, it has no financial or legal interest in any of the Immobilized Assets. According to Aave LLC, the Immobilized Assets "belong to Aave Protocol users, and are being held by Arbitrum." Mot. 14; *see also* DeMeo Decl. ¶ 8 ("The Immobilized Assets belong to the Aave Protocol users who supplied them."). Aave LLC is, according to its representative, "a software development and services company that contributes to the open-source software known as the Aave Protocol." DeMeo Decl. ¶ 10. And Aave LLC's website explains that "[i]t is important to understand that neither we nor any affiliated entity is a party to any transaction on the blockchain networks underlying the Aave Protocol; we do not have possession, custody or control over any cryptoassets, or any user's funds." Ex. E. Accordingly, the Restraining Notice deprives Aave LLC of no property, no legal entitlement, and no possessory right that the law recognizes as its own—that is, no "legally protected interest," *Lujan*, 504 U.S. at 561.

What Aave LLC offers instead is a generalized assertion that the Immobilized Assets are somehow "economically and operationally intertwined" with its software platform and that continued operation of the Restraining Notice "*may* implicate Aave LLC's conduct, governance role, and legal exposure." DeMeo Decl. ¶ 53 (emphasis added). Aave LLC also candidly acknowledges that it is here because it thinks that "treating assets immobilized for emergency containment and recovery as subject to judgment enforcement would have consequences extending beyond this incident," DeMeo Decl. ¶ 55, in other words that it would result in legal precedent that makes

20

Aave LLC's future business harder. But this is precisely the kind of speculative and derivative harm that the Supreme Court has repeatedly rejected as sufficient to confer Article III standing. *E.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (holding that harms must be "concrete," and harms sufficient to meet this requirement include "physical or monetary injury" or "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts").

Aave LLC, as mentioned, also purports to be here as a champion of Aave Protocol lenders, but it may not stand in the shoes of these people because "a party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quotation marks omitted). While there are narrow circumstances that permit third-party standing, Aave LLC does not even attempt to invoke those here, nor could it: Aave LLC is a software developer and service provider, not a fiduciary for users of Aave Protocol.

Aave LLC ignores Article III standing completely in its Motion and instead asserts that "third parties affected by restraining notices have standing when their property or rights are impacted, and New York courts have repeatedly vacated restraining notices where the property restrained belongs to third parties, and not to the judgment debtor." Mot. at 13. But the impacted third parties in cases on which Aave LLC relies were third parties *whose property was improperly restrained. See, e.g., JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295

F. Supp. 2d 366, 393 (S.D.N.Y. 2003) (vacating restraining notices on request of third parties whose assets were restrained); *Save Way Oil Co. v. 284 E. Parkway Corp.*, 115 Misc. 2d 141, 142–43 (Civ. Ct. Kings Cnty. 1982) (same). Aave LLC has cited no case where the "third party" movant was a contractor working for a company (that denies it is even a company) whose users' assets have allegedly been restrained where the contractor admits it has no interest in those assets. Ex. E. These kinds of indirect harms have not been recognized as supporting either Article III standing or the ability to obtain an order vacating a restraining notice under C.P.L.R. Section 5240 in state court.

Aave LLC represents to this Court that "[n]o other current party can . . . defend the position that the Immobilized Assets are not property of the judgment debtor, but instead belong to Aave Protocol users," DeMeo Decl. ¶ 57, but that is obviously not true: If Aave Protocol lenders wish to assert their alleged rights in the Immobilized Assets, what's stopping them? Yet neither the users nor even Aave DAO is here asserting any interests. There is no evidence in the record on what any defrauded lenders think of the restraining notice, who they might be, how they are impacted, whether they will eventually be able to recover anyway, and more. This all suggests either that the parade of horribles Aave LLC relies on is not quite so horrible or else that Aave lenders have some unstated reason not to appear in this Court. Neither option means that a software and services company can appoint itself representative of the unnamed users of some other entity's software; it means that no one with a

concrete interest in the Immobilized Assets is before this Court other than Plaintiffs, and the Motion must be denied.

### B.    Aave LLC's Bond Request Is Nonsensical

Finally, Aave LLC makes the frankly absurd request that this Court should use its equitable powers to order that "Plaintiffs post a cash bond in an amount not only in value equivalent to the Immobilized Assets ($71 million), but more appropriately in the full amount of the damages that Plaintiffs' Restraining Notice is likely to cause, an amount no less than $300 million." Memo at 21. Aave LLC provides no precedent for this bond requirement, no real support for its inflated amount—which inexplicably quadruples the amount directly in issue—and, crucially, no indication of whom the bond would be payable to. That is telling: the payee obviously shouldn't be Aave LLC, which is just a software and services provider to the Aave Protocol, and which "do[es] not have possession, custody or control over any cryptoassets," Ex. E, and so obviously will not suffer anywhere close to the full amount of the supposed "damages that Plaintiffs' Restraining Notice is likely to cause." But there is no one else before the Court to whom it could be payable. This Court should not require Plaintiffs to post a bond payable to either Aave LLC or some unnamed non-party as a condition of keeping the assets restrained in preparation for their eventual turnover.

\* \* \*

Aave LLC's non-party motion to vacate a validly served notice restraining notice is as brazen as it is meritless. Unidentified and anonymous lenders using the Aave Protocol—none of whom has ever completed KYC to prove their identity—

23

wanted to make money lending speculative crypto assets against collateral issued by something called Kelp DAO. Aave LLC and its users know the risks of doing that: "Among other risks," Aave LLC's website reads, "cyberattacks. . . could disrupt these technologies and even result in a total loss of cryptoassets, their market value, or digital funds. We assume no liability or responsibility for any such risks. If you are not comfortable assuming these risks, you should not access or engage in transactions using blockchain-based technology." Ex. F ¶ 3. Good advice.

One of those risks materialized: North Korean agents defrauded their lenders and obtained ownership of hundreds of millions of dollars of crypto assets, as North Korea has done before on the blockchain and as it will surely do again. Some of those North Korean assets are now frozen in the custody of Arbitrum DAO, and Plaintiffs have restrained the assets to attempt to ensure they remain in place pending Plaintiffs' attempt to turn over those assets to satisfy legitimate federal court judgments against North Korea arising from the torture, murder, and bombing of their loved ones. Neither the Garnishee nor the lenders have challenged the Restraining Notice, and the lenders will likely be made whole anyway from a compensation plan put together by various crypto insiders who have business reasons to prevent what they describe as a cascading liquidity crisis.

Aave LLC is here complaining about the consequences of other people's bad bets. It now has the chutzpah to ask this Court for *immediate* vacatur of the Restraining Notice to permit a transfer of the immobilized North Korean assets to (among others) *Aave itself*. The upshot of the relief Aave LLC seeks is that North

24

Korean assets would be unrestrained and could be swiftly moved to prevent those victimized by North Korean terror—including those whose family members have been kidnapped and murdered by the regime—from even having a chance to request turnover of the assets as a way to partially satisfy their judgments.

Aave LLC is not entitled to this relief. This Court should swiftly deny this disingenuous, meritless request.

## CONCLUSION

For the foregoing reasons, this Court should deny Aave LLC's motion.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
1629 Columbia Road NW, Suite 302
Washington, DC 20004
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
401 Park Ave. S. 10th Floor
New York, NY 10016
jason@gerstein-harrow.com
(323) 744-5293

*/s/ Robert Tolchin*
Robert Tolchin
THE BERKMAN LAW OFFICE LLC
829 E. 15th Street, Suite Seven
Brooklyn, New York 11230
rtolchin@berkmanlaw.com
(718) 855-3627

*Attorneys for Plaintiffs*

25

## CERTIFICATE OF COMPLIANCE

I certify that the forgoing memorandum contains 7,051 words using Microsoft's word count tool.

/s/ Charles Gerstein

26