**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| HAN KIM, *et al.*, Plaintiffs, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, a.k.a. NORTH KOREA, Defendant | ) ) ) | |
| | ) | |
| ~~~~~ | ) | |
| | ) | |
| IN RE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, et al. | ) ) | |
| | ) | Case Nos.  25-MC-527-MMG |
| ~~~~~ | ) | 26-MC-033-MMG |
| | ) | 26-MC-094-MMG |
| RUTH CALDERON-CARDONA, et al., Plaintiffs, | ) ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, et al., Defendants, | ) ) ) | |
| | ) | |
| & | ) | |
| | ) | |
| AAVE LLC, | ) | |
| | ) | |
| Garnishee (as to all cases) | ) | |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TURNOVER AND TO
DETERMINE AND FORECLOSE ADVERSE CLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT.........................................................................................................1

I.   PLAINTIFFS ARE ENTITLED TO TURNOVER ...............................................1

    A.   Plaintiffs Are Entitled to Turnover Under State Law ............................2

        1.   There is no dispute of fact, let alone a genuine one, that North Korea conducted the relevant transactions ........................2

        2.   North Korea "has an interest" in the Assets because North Korea owns them and is therefore entitled to possession of them .........................................................................3

        3.   Aave LLC has no claim to the assets, let alone a superior one to Plaintiffs' ..................................................................8

    B.   TRIA Abrogates North Korea's Sovereign Immunity..............................9

    C.   Even If The Assets Were "Seized" By North Korea, Plaintiffs Would Be Independently Entitled to Turnover Under Federal Law.........................................................................................................9

II.  THIS COURT SHOULD DIRECT SERVICE ON OTHER POTENTIAL CLAIMANTS...................................................................................................10

    A.   Serving Potential Claimants Is The Best Practice Here........................10

    B.   Aave LLC's Refusal to Cooperate With Service Requires an Amendment to Plaintiffs' Proposal .......................................................11

CONCLUSION ...................................................................................................12

CERTIFICATE OF COMPLIANCE ....................................................................14

# TABLE OF AUTHORITIES

**Cases**

*All. Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.,* 190 F.3d 16 (2d Cir. 1999)..................................................................................................................1, 7

*Beauvais v. Allegiance Sec., Inc.,* 942 F.2d 838 (2d Cir. 1991).....................................8

*Brown v. Eli Lilly & Co.,* 654 F.3d 347 (2d Cir. 2011).................................................2

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................3

*Cunningham v. Brown,* 265 U.S. 1 (1924) ...................................................................7

*Greenbaum v. Islamic Republic of Iran,* 67 F.4th 428 (D.C. Cir. 2023) ......................9

*Mendelsohn v. R. Simpson & Co.,* 267 A.D. 564, 47 N.Y.S.2d 489 (1st Dep't 1944)....7

*Nat'l Union Fire Ins. Co. v. Eland Motor Car Co.,* 85 N.Y.2d 725 (1995)...................11

*People v. Whight,* 36 Cal. App. 4th 1143 (1995) .......................................................5, 6

*SEC v. Levine,* 881 F.2d 1165 (2d Cir. 1989)............................................................7, 8

*SEC v. Universal Express, Inc.,* 2008 WL 1944803 (S.D.N.Y. 2008)............................7

*United States v. Eisenberg,* 784 F. Supp. 3d 579 (S.D.N.Y. 2025) ...............................4

*Villoldo v. Ruz,* 113 F. Supp. 3d 435 (D. Mass. 2015)..................................................9

**Statutes and Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................2

N.Y. C.P.L.R. Art. 52 (McKinney) .............................................................................1, 7

N.Y. C.P.L.R. § 5239 (McKinney) ............................................................................. 1, 11

# INTRODUCTION

Plaintiffs seek turnover of 30,766 Ether Tokens ("the Assets") held by Garnishee Aave LLC. Plaintiffs also move to determine other potential claimants' rights to those assets under C.P.L.R. Section 5239 and for alternative service on those potential claimants. North Korea holds title to the Assets, has been served, ECF No. 78, and has not appeared to contest turnover. Arbitrum DAO, the original garnishee, has also been served, ECF No. 34, and has also not appeared to contest turnover.

Instead, Aave LLC, an entity that "provid[es] technical . . . services related to the Aave Protocol," ECF No. 83 ¶ 1, has filed an opposition contesting both turnover and notice to any potential claimants. Aave LLC does not say that it owns the Assets or has any right to keep them. ECF No. 85 ¶¶ 16–17. But Aave LLC opposes sending notice to anyone who may assert a claim to the Assets on the grounds that "harm arose at the protocol level," ECF No. 82 at 26, and so any notice would be ineffective.

Aave LLC's opposition is without merit. Plaintiffs are entitled to turnover. This Court should also order notice to any potential claimants to ensure that those who wish to be heard have a chance to assert potential claims.

# ARGUMENT

## I. PLAINTIFFS ARE ENTITLED TO TURNOVER

Under Article 52 "those property interests of the judgment debtor 'which by law the debtor may assign or transfer, may be sought for application to the judgment.'" *All. Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 190 F.3d 16, 24 (2d Cir. 1999) (citations omitted). Plaintiffs thus must show that the Assets are property of North Korea and that the Assets may be assigned to Plaintiffs. *See* ECF

No. 60 at 8–9 (explaining standard). Plaintiffs have done so under state law, and, in addition, would independently prevail under the TRIA.

### A. Plaintiffs Are Entitled to Turnover Under State Law

#### 1. *There is no dispute of fact, let alone a genuine one, that North Korea conducted the relevant transactions*

The parties agree that a turnover motion is treated as a motion for summary judgment, and to obtain a summary judgment, the movant must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant has met its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

Here, there is no genuine dispute that North Korea (or its agency or instrumentality) is behind the exploit. Plaintiffs introduced the detailed declaration of Justin Ehrenhofer, a well-qualified, credible expert, ECF No. 60-2, that offers both the expert's own opinion *and* citations to evidence that would be alone sufficient to make Plaintiffs' case—including evidence from several other blockchain analysts and entities involved in the exploit that uniformly attribute the exploit to North Korea. ECF No. 60-2 ¶ 67. Aave LLC introduces no evidence to the contrary, instead declaring the report "unconvincing," ECF No. 82 at 19, and threatening to file a *Daubert* motion at some unspecified point in the future, *id.* at 21 n.10. This does not create a genuine dispute of fact: Even putting aside the expert's qualifications and conclusions, the record contains uncontradicted evidence that the exploit was carried

out by North Korea. Indeed, the supplier of a key piece of software involved in the transactions, LayerZero, publicly attributed the hack to North Korea and noted that prominent security firms did the same "*with high confidence* based on their forensic investigation." *Id.* ¶ 67 (emphasis added). And there is no dispute that the exploiter used wallets linked to North Korea. ECF No. 60-2 ¶ 65–67. Although Aave LLC asserts that these wallets may have been used "to throw people off the scent," ECF No. 82 at 21, Aave LLC introduces no evidence that this happened, and counsel's imagination cannot create a factual dispute. *Celotex*, 477 U.S. at 322.

Regardless, Ehrenhofer is easily qualified as an expert and used industry-standard, reliable, and replicable means to reach his conclusion that "the Kelp exploit can be reasonably attributed to North Korea." ECF No. 60-2 ¶ 68. Aave LLC does not contend that the forensic methods used by TRM Labs, Crowdstrike, and Mandiant—all widely accepted security firms—were somehow "[un]reliable" and beneath the "general acceptance" in the field of "illicit finance." ECF No. 82 at 19–20. And yet those firms, using the same methods Ehrenhofer used, reached the same conclusion he did: The exploiter was North Korea.[1]

> 2.    *North Korea "has an interest" in the Assets because North Korea owns them and is therefore entitled to possession of them*

As Plaintiffs explained in prior briefing, North Korea has title to the Assets because, even assuming the first transaction (on Kelp) was larceny and did not pass title to the rsETH, the second transaction (on Aave) was a voluntary exchange and,

---

[1] Plaintiffs accidentally omitted Ehrenhofer's CV, which is attached here.

therefore, passed title to the ETH Assets. *E.g.*, ECF Nos. 59, 67. In response, Aave LLC re-hashes its arguments that the Aave transaction did not pass title and that, regardless, no judgment creditor may reach assets a debtor acquired by crime. ECF No. 82 at 9–17. These arguments lack merit.

*First*, Aave LLC's fourth attempt at arguing that the Aave transaction was pure larceny (*compare* ECF Nos. 42, 61, 68) fails just as its first three did. Aave LLC starts by arguing that an automated software protocol cannot be defrauded. ECF No. 82 at 10. But that argument does not get Aave LLC where it needs to go: Even if the Aave transaction was not theft by false pretenses, that does not mean it was *involuntary*, but rather that it was simply a bad trade. That was the conclusion in *United States v. Eisenberg*, 784 F. Supp. 3d 579 (S.D.N.Y. 2025), which held that because the "platform [had] no rules, instructions, or prohibitions about borrowing," *id.* at 617, a transaction was not fraudulent even though the defendant "knew that the value of his portfolio was the product of his market manipulation," *id.* at 616–17. Aave LLC argues this case is "irrelevant" because it did not "concern property rights." ECF No. 82 at 8. But *Eisenberg* shows how a materially identical transaction is *not wrongful* on a protocol, like Aave, that has no rules against the transaction. If the *Eisenberg* transaction was not involuntary then title necessarily passed. So too here.

Next, Aave LLC reargues that the Aave transaction was involuntary because the protocol is like a vending machine and a vending machine operator does not voluntarily pass title to goods "[w]hen a thief uses a slug coin." ECF No. 82 at 11–12. But, as this Court said at its most recent hearing, "the analogy to a slug coin or to

counterfeit coins, it seems, doesn't work very well because if that were right, if the rsETH were like a counterfeit coin, it couldn't continue to be traded, held, and used," and yet "it is continuing to be traded, held, and used." Trans. of June 5 Hearing at 5:3–7. The evidence is uncontradicted that the rsETH North Korea used was indistinguishable from all other rsETH, which is why that rsETH is currently trading in the market at par value. *See* ECF No. 60-2 ¶ 55. Aave LLC simply ignores this point. *See generally* ECF No. 82.

Similarly, Aave LLC argues that Plaintiffs' theory must be wrong because otherwise "every vending-machine theft, ATM exploit, or software hack is deemed a 'willing transaction' because the system was designed to release assets under certain conditions," ECF No. 82 at 12, but Aave LLC ignores what those "certain conditions" are. Here, the transaction was voluntary because it worked exactly as intended and North Korea violated none of the protocol's conditions. *See, e.g.*, ECF No. 83 ¶¶ 30–33 (Aave LLC's witness explaining that "[t]he protocol . . . applies rules uniformly," that it is "governed by smart contracts," and that Aave users "supplied assets to a pool governed by computer code"). Accordingly, when those "certain conditions" obtain, courts have indeed held that ATM exploits are "willing transactions" where title passes. For example, in *People v. Whight*, the California Court of Appeal upheld a conviction for theft by false pretenses where the defendant knowingly used a revoked ATM card to make purchases at Safeway, reasoning that Safeway "*parted with* [its] property in reliance upon the representation" made by the presentation of the ATM card. 36 Cal. App. 4th 1143, 1151 (1995) (emphasis added) (citation omitted).

As Plaintiffs explained, ECF No. 67 at 4–5, any voluntary transaction—whether it be fraud, theft by false pretenses, the result of manipulated or unexpected asset values, or an everyday exchange—passes title, *id.* Aave LLC's *reductio ad absurdum* thus fails because "ATM exploits" of a kind analogous to the exploit here *are* voluntary transactions. *Whight*, 36 Cal. App. 4th at 1153. And, contrary to Aave LLC's counsel's representations at the recent hearing—where he said that "the [Aave] Protocol is using measures to try to keep out money launderers, sanctioned parties, etc., etc." and that when "Plaintiffs try to throw mud at Aave" by saying that it "will trade with anyone" that is "just absolutely not true," Trans. at 19:23–20:3—Aave users in fact volunteered to interact with *anyone*, not just selected or pre-vetted parties who might be less likely to manipulate asset values: Aave LLC now admits that "*anyone* with the technical ability to send a transaction to the blockchain can interact with the protocol" and "[a]ccess is not generally gated by account approvals or identity checks." ECF No. 83 ¶ 4 (emphasis added).

*Second*, Aave LLC argues that Plaintiffs "improperly atomize a single, unified scheme into two artificial 'steps.'" ECF No. 82 at 13. But this Court at its most recent hearing said even though Aave LLC "[doesn't] like that, . . . the problem is I feel we have to separate [the two transactions] because this is entirely different counterparties" and "we have to think of it as two different events because the counterparties [and] the means by which [the thief] accomplish[ed] each step are totally different." Trans. at 17:15–17, 17:22–23; *see also id.* at 18:1–2 (noting that "it's not useful, and I don't think accurate, to pretend it's all one event"). The two

6

transactions were, indeed, two transactions, *id.*, and even though the first did not pass title, the second did. *SEC v. Universal Express, Inc.*, 2008 WL 1944803 (S.D.N.Y. 2008). Along the way, Aave LLC argues without citation that "[e]ven if the Court concluded that there were 'two steps,'" title would not have passed to the ETH obtained at the second step because "the thief could not use stolen goods to acquire good title." ECF No. 82 at 13. But that's just not the law, as Aave LLC admitted. ECF No. 61 at 16.

*Finally*, Aave LLC asserts that because North Korea allegedly committed a crime to acquire the Assets, Plaintiffs may not execute their judgment against those assets. ECF No. 82 at 14–17. That is not the law either, and Aave LLC's own case proves the point: In *SEC v. Levine*, the Second Circuit held that a lien was enforceable even though it attached to assets the defendant obtained through crime. 881 F.2d 1165, 1176 (1989). The Court reasoned that "the culpable party to a voidable transaction acquires title, albeit voidable title," to which "an innocent party's lien may attach." *Id.* (citing *Mendelsohn v. R. Simpson & Co.*, 267 A.D. 564, 47 N.Y.S.2d 489 (1st Dep't 1944)). The Court thus upheld a lien on property that the defendant acquired by fraud for which he was convicted. That's the only possible conclusion under New York law, because Article 52 permits execution against any "interest" that may be "assign[ed]" or "transferr[ed]," *All. Bond Fund*, 190 F.3d at 24, and Aave LLC has not cited a case showing that defeasible title is unassignable or untransferable. And *Levine* dispenses with Aave LLC's quibble that cases like *Cunningham v. Brown*, 265 U.S. 1 (1924), apply only where the plaintiff is the victim of the same fraud that

7

brought the assets to the defendant—in *Levine*, the plaintiff was the IRS, whose lien did not arise because it was a victim of Levine's fraud. 881 F.2d at 1176.

> 3. *Aave LLC has no claim to the assets, let alone a superior one to Plaintiffs'*

Aave LLC points the Court to *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838 (2d Cir. 1991), according to which, Aave LLC says, Plaintiffs must establish that their "rights to the Immobilized Assets are superior to those of Aave LLC, the party that possesses the Immobilized Assets." ECF No. 82 at 21. Plaintiffs meet this test because they have execution liens on the Assets, and Aave LLC claims no "rights to the . . . Assets." *Id.* Aave LLC received the assets as garnishee and does not even attempt to articulate any right to the assets beyond its current court-approved authorization to possess them. Instead, Aave LLC tells the Court that it wants to use the assets to implement a vague "recovery plan" that will somehow "restore the damages resulting from the April 18 Incident," ECF No. 82 at 24, even though it is undisputed that the Protocol is already "restore[d]," ECF No. 60-2 ¶ 55. Aave LLC thus has no *legal right* to the assets—just a desire to keep them.

Finally, Aave LLC asserts that "aggrieved users of the Aave Protocol" or "victims of the judgment debtor's subsequent crimes" may have superior rights to Plaintiffs. ECF No. 82 at 23. But the question is whether *Aave LLC*'s rights are superior to Plaintiffs', not whether anyone else's could hypothetically be. Aave LLC's argument thus supports Plaintiffs' suggestion to send out notice, not to release the Assets to Aave LLC, which does not meet either of its own criteria.

## B. TRIA Abrogates North Korea's Sovereign Immunity

TRIA applies here because the Assets are the "blocked assets of a terrorist" party that are "within the United States." *See* ECF No. 67 at 18–19. In response, Aave LLC mostly argues that the Assets never "belong[ed] to North Korea in the first place," and that North Korea was not "the culprit," ECF No. 82 at 18–19 (quotation marks omitted). As explained, this is wrong. But Aave LLC also argues that turnover is inconsistent with TRIA's "core purpose" because, in Aave LLC's view, TRIA does not "dictate that the Court 'rob Peter to pay Paul.'" ECF No. 82 at 18. But this Court is not robbing anybody. North Korea committed legal wrongs against both Peter (exploit victims) and Paul (terror victims), and in TRIA, Congress provided that terror victims execute first. And even assuming Aave LLC were correct that its view of TRIA's policy could displace plain text (and it cannot), on Aave LLC's view North Korea engaged in "pure theft," which creates a claim against North Korea for 30,766 ETH. If Plaintiffs win turnover, North Korea would owe the same amount as it does now.

## C. Even If The Assets Were "Seized" By North Korea, Plaintiffs Would Be Independently Entitled to Turnover Under Federal Law

TRIA permits Plaintiffs to execute against any "blocked assets of" a terrorist party, ECF No. 60-1 at 25–27, and TRIA preempts any law conflicting with that execution, *see, e.g.*, *Greenbaum v. Iran*, 67 F.4th 428, 432 (D.C. Cir. 2023) (discussing preemptive effect of TRIA). When a foreign state "seizes" property—*i.e.*, acquires property in an *in*voluntary transaction—it becomes property "of" the state and, therefore, subject to execution. *See, e.g.*, *Villoldo v. Ruz*, 113 F. Supp. 3d 435, 441 (D.

9

Mass. 2015) (treating shares as subject to a terrorism judgment against Cuba if Cuba seized them and holding Cuban seizure law inapplicable). So even if Aave LLC somehow establishes that North Korea took the Assets by pure larceny, then it "seized" the Assets, which under TRIA subjects them to execution. Aave LLC does not respond to, and therefore waives its opposition to, this argument. ECF No. 82.

## II.  THIS COURT SHOULD DIRECT SERVICE ON OTHER POTENTIAL CLAIMANTS

### A.  Serving Potential Claimants Is The Best Practice Here

Plaintiffs have suggested that the Court use the procedures available under Section 5239 to notice potential claimants of this action and determine whether they have claims. ECF No. 60 at 29–31. Plaintiffs thus sought leave to serve this motion by posting it on Kelp DAO's and Aave DAO's governance forums and by sending messages to the blockchain addresses of Aave ETH suppliers. *Id.*

Aave LLC opposes the sending of notice, ECF No. 82 at 25–26, but still criticizes "[t]he notion that Plaintiffs could win priority simply by being 'first to the courthouse' . . . over countless aggrieved users of the Aave Protocol" who have not received "formal notice of this proceeding," *id.* at 23. But of course Aave LLC wants the Court to permit *it* to do just that: take the assets. Aave LLC self-servingly claims it should be permitted to do this because "[v]ictims of the April 18 Incident fully support Aave LLC's efforts," ECF No. 82 at 24, but it has no authority to speak on behalf of all "victims of the April 18 incident." The record contains no evidence that Aave LLC is an assignee of any claims or is somehow working on behalf of any specific

victims. Instead, as explained, ECF No. 67 at 20–23, Aave LLC is going to keep the assets to pay itself and its collaborators.

Aave LLC's handful of procedural objections to notice are meritless. Aave LLC argues that Plaintiffs must "serve[] their request on the sheriff." ECF No. 82 at 26. But Section 5239 does not require service on the sheriff of a motion directed to any "other person"; it instead says that *if* service is made on *anyone* under the section, that service is "in the same manner as a notice of motion." C.P.L.R. § 5239. Aave LLC also argues that "under Plaintiffs' own (incorrect) theory, *every* judgment creditor of North Korea has a right to the Immobilized Assets," ECF No. 82 at 26, but Plaintiffs were the first (and only) judgment creditors who served a writ of execution directed to the Assets, and so have priority over other judgment creditors until their judgments are satisfied. ECF No. 60 at 9 (citing ECF No. 34). And Aave LLC contends that Section 5239 does not allow a judgment creditor to determine any rights other than its and a garnishee's, but the law has no such limitation, *Nat'l Union Fire Ins. Co. v. Eland Motor Car Co.*, 85 N.Y.2d 725, 729 (1995) (permitting "[r]ival claimants" to be joined in one proceeding "so that the court may prioritize the competing interests").

## B. Aave LLC's Refusal to Cooperate With Service Requires an Amendment to Plaintiffs' Proposal

Plaintiffs proposed a viable and comprehensive notice plan in their initial motion. ECF No. 60 at 25. But Aave LLC has indicated it will not cooperate in a process to notice the people it claims to be "victims" here. ECF No. 82. Plaintiffs accordingly amend their request: Plaintiffs will send a copy of this Court's order (a

proposal is attached) by an ERC-20 token (and Arbitrum equivalent) containing a URL with the order to each address that supplied more than $100 worth of ETH to the Aave protocol at the time of the North Korean transaction, and will post the order on *Kelp*'s governance forum (to reach Kelp DAO as an entity). As explained in Plaintiffs' motion, the only people with conceivable constructive-trust claims are Kelp DAO itself and the ETH suppliers, so Plaintiffs' proposal will adequately notice all possible claimants.

## CONCLUSION

For the foregoing reasons, this Court should order that notice be sent as explained above or grant turnover.

Respectfully submitted,

*/s/ Charles Gerstein*
Charles Gerstein
GERSTEIN HARROW LLP
1319 F St. NW. Suite 301
Washington, DC 20004
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
401 Park Ave. S. 10th Floor
New York, NY 10016
jason@gerstein-harrow.com
(323) 744-5293

*/s/ Robert Tolchin*
Robert Tolchin
THE BERKMAN LAW OFFICE LLC
829 E. 15th Street, Suite Seven
Brooklyn, New York 11230
rtolchin@berkmanlaw.com

(718) 855-3627

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing memorandum contains 3,346 words using Microsoft's word count tool.

/s/ Charles Gerstein