GERSTEIN HARROW LLP

October 15, 2026

The Hon. Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

*Re: Letter-Motion for Alternative Service of Motion Under Section 5239 on Kelp DAO and Users of the Aave Protocol Who Supplied At Least $100 Worth of ETH at the Time of the North Korean Transaction*

Dear Judge Garnett,

This letter-motion concerns four related actions, *Kim v. Democratic People's Republic of Korea*, No. 25-mc-527; *Kaplan v. Central Bank of the Islamic Republic of Iran*, No. 26-mc-33; *Calderon-Cardona v. Democratic People's Republic of Korea*, No. 26-mc-94; and *Butler v. Democratic People's Republic of Korea*, No. 26-mc-235, in which Plaintiffs have unsatisfied judgments against the Democratic People's Republic of Korea. This letter-motion relates to assets possessed by garnishee Aave LLC. Plaintiffs write to respectfully move this Court for an order authorizing alternative service of the motion to determine claims under Section 5239 filed at docket number sixty.

## I. Background

On April 19, 2026, a group of North Korean hackers engaged in a fraudulent transaction on Kelp DAO, a "decentralized finance" protocol operated by a partnership called Kernel DAO, that allowed them to obtain a kind of crypto asset token known as rsETH. *See* Dkt. 60 at 4–5. The hackers then deposited some of that rsETH as collateral into a lending protocol called Aave running on the Arbitrum blockchain. Dkt. 33 at 7. This transaction allowed the hackers to instantly borrow 29,782 wETH and 821 wstETH (similar crypto assets whose value usually tracks that of Ethereum's native ETH) on Arbitrum. *Id.* In response, on April 21, 2026, the Arbitrum Security Council voted to implement an emergency freeze on a batch of 30,766 ETH that the Council identified as belonging to the North Korean hackers and that were trading on Arbitrum. *Id.* at 8.

On April 30, 2026, Plaintiffs filed an emergency motion in this Court seeking an order authorizing alternative service of a restraining notice and writ of execution against the North Korean assets seized by the Arbitrum Security Council (the "Immobilized Assets"), *id.* at 11–15, which this Court granted the next day, *see* Dkt. 34. On May 4, 2026, non-party Aave LLC—which states in its own terms of service that it "do[es] not have possession, custody or control over any cryptoassets, or any user's funds,"

*see* Dkt. 47-6 at 3—filed a motion to vacate the restraining notice Plaintiffs served on Arbitrum DAO, claiming that the Immobilized Assets belong to a group of unidentified "Aave Protocol victims" with whom it has no legal relationship. Dkt. 42 at 3. On May 8, 2026, with the consent of the parties, this Court authorized "an on-chain vote to transfer the Immobilized Assets . . . to a digital assets wallet controlled by Aave LLC," where the assets presently remain, subject to Plaintiffs' restraining notice. Dkt. 52.

On May 22, 2026, Plaintiffs filed a Motion for Turnover and to Determine Adverse Claims under N.Y. C.P.L.R. § 5239. *See* Dkt. 60. In their motion, Plaintiffs asserted their superior rights to the Immobilized Assets, but stated their preference "that turnover should happen with title clear of all possible claims, including the claims of those who think they could assert an ownership interest derived from a state-law constructive trust." *Id.* at 27. To that end, Plaintiffs sought authorization to serve notice of their Section 5239 motion on the only other entities with conceivable constructive-trust claims on the Immobilized Assets—Kelp DAO and users of the Aave crypto asset protocol who supplied ETH at the time of the North Korean transaction. *Id.* at 30–31. Plaintiffs proposed serving notice by "(a) posting on Aave's governance forum, (b) posting on Kernel DAO's governance forum, and (c) if Aave LLC will agree, posting on Aave LLC's website, via its X account, and via nonfungible token to Aave suppliers in the affected rsETH–ETH pool." *Id.* at 30. Aave LLC did not agree to Plaintiffs' proposal. *See* Dkt. 82 at 25–26. Separately, on June 8, 2026, Plaintiffs served notice of their motion on North Korea by mailing a copy of the papers to the Minister of Foreign Affairs of DPRK, care of its permanent mission to the United Nations in New York, in accordance with Rule 5 of the Federal Rules of Civil Procedure and the Foreign Sovereign Immunities Act. *See* Dkt. 78.

Pursuant to this Court's scheduling order, Plaintiffs and Aave LLC briefed the turnover motion and Plaintiffs' request to serve notice on potential claimants for a subsequent Section 5239 proceeding. *See* Dkt. 63. Given Aave LLC's refusal to cooperate in notifying these potential claimants, Plaintiffs proposed another means of service reasonably calculated to reach Kelp DAO and Aave suppliers: by sending "an ERC-20 token (and Arbitrum equivalent) containing a URL with the order to each address that supplied more than $100 worth of ETH to the Aave protocol at the time of the North Korean transaction, and [to] post the order on Kelp's governance forum (to reach Kelp DAO as an entity)." *See* Dkt. 91 at 11–12.

By way of this letter-motion, Plaintiffs renew their request that the Court authorize alternative service of Plaintiffs' turnover and § 5239 motion on potential claimants, with one slight amendment. As described in further detail below, because the Kelp DAO governance forum previously maintained on the website of Kernel DAO is no longer functioning, Plaintiffs now propose serving notice in three ways: (1) by sending an ERC-20 token (and Arbitrum equivalent) containing a URL hosting copies of the papers to each address that supplied more than $100 worth of ETH to the Aave

protocol at the time of the North Korean transaction; (2) by posting the papers in a web-based forum on the communications platform Telegram where Kelp DAO members choose to interact and discuss governance matters; and (3) by sending the papers via direct messages to accounts on Telegram and on Discord, another web-based forum where Kelp DAO members discuss governance matters, that have publicly identified themselves as involved in the governance of Kelp DAO.

## II. Argument

Section 5239 of the C.P.L.R. "provides for a stakeholder action in which parties may assert competing claims to property owned by the judgment debtor." *Cruz v. TD Bank*, N.A., 711 F.3d 261, 269 (2d Cir. 2013). Although typically parties with adverse claims to property file special proceedings against garnishees or garnishees implead parties with adverse claims, Section 5239 "is the path to the courthouse for a claimant who wants to have a priority or lien or other dispute with another claimant ironed out," *id*. (citing David Siegel, *Practice Commentaries N.Y.* C.P.L.R. 5239 (2013)), and operates as "an all-inclusive tool for the settlement of almost any problem that may arise in connection with the enforcement of money judgments," *Herman v. Siegmund*, 415 N.Y.S.2d 681, 682 (2d Dep't 1979).

Under New York law, "[s]ervice of process" of Section 5239 actions "shall be made . . . in the same manner as a notice of motion." N.Y. C.P.L.R. § 5239; *see also CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469 (2d Cir. 2018) (explaining that, in federal court, parties invoking actions under New York's Article 52 may proceed by motion rather than commencing a "special proceeding," as New York law suggests). Thus, valid service must comply with Rule 5 of the Federal Rules of Civil Procedure. *See Teamsters Local 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transp., Inc.*, No. 18-CV-2056 (KMK), 2020 U.S. Dist. LEXIS 116669, at *26 n.6 (S.D.N.Y. July 2, 2020) (holding that Federal Rule 5 applies to service of motions under Article 52 of New York law and permitting non-parties to be served under Rule 5).

Where, as here, the identities and physical addresses of potential adverse claimants are not definitively known, due process requires only notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Courts regard "service via NFT [as] akin to service via email," which makes sense because "only th[e] individual who owns a private key to a given wallet can access the wallet." *Meghji v. Wallet Owner (In re Celsius Network LLC)*, 666 B.R. 28, 34–35 (Bankr. S.D.N.Y. 2024). Accordingly, many courts have found service via NFTs like the service token proposed in this letter-motion to be reasonably calculated to provide notice to defendants. *See, e.g., In re Celsius Network LLC*, 666 B.R. at 37–38; *Chow v. Defendant 1*, No. 24-CV-480, 2024 WL 3225917, at *1 (E.D. La. Apr. 19, 2024); *CipherBlade, LLC v.*

*CipherBlade, LLC*, No. 3:23-CV-00238-JMK, 2024 WL 69164, at *3 (D. Alaska Jan. 5, 2024); *Polansky v. Defendant 1*, No. 23-21852-CIV, 2023 WL 5951838, at *3 (S.D. Fla. Aug. 31, 2023); *Stil Well v. Defendant "1"*, No. 23-21920-CIV, 2023 WL 5670722, at *2–3 (S.D. Fla. Sept. 1, 2023); *People v. Unknown Parties in Ownership and/or Control of Digital Wallet Addresses*, 87 Misc. 3d 950, 954 (Sup. Ct. Queens Cnty. 2025); *LCX AG v. 1.274M U.S. Dollar Coin*, No. 154644/2022, 2022 WL 3585277, at *2 (N.Y. Sup. Ct. Aug. 21, 2022). Indeed, this Court has previously authorized service via this method in a materially identical context. *See* Dkt. 109 (order granting motion for alternative service); *see also* Dkt. 68, *Benson v. Islamic Republic of Iran*, No. 26-cv-2327 (S.D.N.Y. July 8, 2026).

With respect to Kelp DAO, Plaintiffs previously proposed serving it as an entity by "post[ing] the order on Kelp's governance forum," Dkt. 91 at 12, which had been maintained on the website of the partnership that operates Kelp DAO, Kernel DAO, *see* Dkt. 60 at 4; *see also* ECF No. 34 (granting alternative service on a DAO via this method). As of this filing, however, the website that previously hosted the Kernel DAO governance forum, https://forum.kerneldao.com/, is no longer functioning. *See* Declaration of Samuel Davis at ¶¶ 2–3. Kelp DAO directs visitors to its webpage to a Discord Server, a free online communication and instant messaging platform, where users can exchange messages with accounts that identify themselves as members of Kelp DAO, such as "Kelp | Support," "KernelDAO & Kelp Support," "Kelp | Live Support," "Kelp Community Support," and "Kelp Customer Support." *Id.* at ¶¶ 4, 10–16. One of these accounts, "Kelp | Support," stated that it was a member of the Kelp DAO and KernelDAO support teams and described the Kelp Discord Server as "the Kelp DAO governance forum." *Id.* Another user routinely posts announcements and updates regarding Kelp DAO and related product offerings in a channel on the Kelp Discord Server called "announcements." *Id.*

In addition, the Kelp DAO webpage directs users to a page on Telegram, another online messaging application. *Id.* at ¶¶ 4–8. On Kelp DAO's Telegram page, which is accessible to anyone with a Telegram account, anyone can post and view messages in a sub-channel called "Chat" where accounts that represent themselves to be members of the Kelp DAO team routinely post announcements about Kelp DAO and answer questions posed by other users. *Id.* Anyone who joins the Kelp DAO Telegram page is able to send direct messages to nineteen accounts identified as "administrators" of the Kelp DAO Telegram page. *Id.* One of these administrators, who posts using the account handle @AmitGajjala, appears to be one of the cofounders of Kelp DAO, a man named Amitej Gajjala. *Id.* at ¶ 9. Another administrator, who posts using the account handle @sadekad, frequently posts announcements and updates regarding Kelp DAO and related products and answers questions posed by other Telegram users in a group called "Chat." *Id.* at ¶ 8. Accordingly, Plaintiffs propose serving Kelp DAO as an entity in three ways: (1) by sending the papers via direct message to the five Discord users who represent themselves to be members of the Kelp DAO support team on Kelp DAO's Discord Server; (2) by posting the papers in the "Chat" group on

Kelp DAO's Telegram page; and (3) by sending the papers by direct message to the nineteen Telegram accounts listed as "administrators" of the Kelp DAO Telegram page.

Service in this manner comports with the requirements of due process. Kelp DAO is a general partnership with no formal corporate structure, no identified corporate officers or employees, and no physical presence anywhere in the world. *See, e.g.*, Dkt. 33 at 3–5. As such, the Hague Service Convention does not apply, *e.g.*, *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, No. 19-cv-01167-JST (AGT), 2020 U.S. Dist. LEXIS 253535, at *5 (N.D. Cal. Dec. 17, 2020), and traditional means of service on Kelp DAO would be futile, *e.g.*, *LCX AG v. 1.274M U.S. Dollar Coin*, No. 154644/2022, 2022 WL 3585277, at *3 (N.Y. Sup. Ct. Aug. 21, 2022) ("[R]ecent alternate service methods using social platforms and technology are designed for such service where defendants' identity is known, but their location is a mystery."). For this reason, courts—including this Court—have routinely granted motions for alternative service on DAOs. *See* Dkt. 34; *see also Kim v. Railgun DAO*, No. 26-CV-179, ECF No. 7 at 1 (D.D.C. Feb. 9, 2026); *Samuels v. Lido DAO*, No. 23-cv-06492-VC, 2024 U.S. Dist. LEXIS 170796, at *3 (N.D. Cal. June 27, 2024); *Commodity Futures Trading Comm'n v. Ooki DAO*, No. 22-cv-05416, 2022 U.S. Dist. LEXIS 228820, at *13 (N.D. Cal. Dec. 20, 2022). Moreover, courts in many cases, including cases in this district, have authorized service on defendants, including DAOs, who lack an ascertainable physical presence by posting messages in online forums where they are present and choose to interact with the public. *E.g., Patagon Mgmt. LLC v. Wu, No. 1:23-cv-02742-AS (S.D.N.Y. Apr. 26*, 2023), ECF No. 17 at 8 (authorizing alternative service via NFT, email address, and by posting a message "in the Discord forum where [the defendant DAO] is known to be active"); *Chegg, Inc. v. Doe*, No. 22-cv-07326-CRB, 2023 U.S. Dist. LEXIS 200023, at *11 (N.D. Cal. Nov. 7, 2023) (authorizing service via Telegram message to unidentified Defendant at Telegram account handle associated with online entity that lacked physical presence); *XMOD Indus. v. Kennedy*, Civil Action No. 1:22-cv-11464-IT, 2023 U.S. Dist. LEXIS 87866, at *4 (D. Mass. May 19, 2023) (authorizing service "by privately messaging [Defendant] via a direct message on Telegram and Discord"); *Ryan v. Best in Slot, LLC FZ*, No. 25-cv-2348-AGS-BLM, 2025 U.S. Dist. LEXIS 265568, at *1 (S.D. Cal. Dec. 19, 2025) (authorizing service via message to "publicly listed office contact email" of foreign corporation with no known physical address).

## III. Conclusion

Accordingly, Plaintiffs request that this Court issue an order (proposal attached) authorizing alternative service of their Motion for Turnover and to Determine Adverse Claims under N.Y. C.P.L.R. § 5239, as well as all materials attached in support of these motions, on the wallet addresses and Discord and Telegram accounts listed in the appendix to this letter-motion.

Respectfully submitted,

*/s/ Charlie Gerstein*
Charlie Gerstein
GERSTEIN HARROW LLP
1319 F St NW, Suite 301
Washington, DC 20004
charlie@gerstein-harrow.com
(202) 670-4809

*/s/ Jason Harrow*
Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

/s/ Robert Tolchin
Robert Tolchin
THE BERKMAN LAW OFFICE LLC
829 E. 15th Street, Suite Seven
Brooklyn, New York 11230
rtolchin@berkmanlaw.com
(718) 855-3627