Morrison Cohen

Jason Gottlieb
Partner
(212) 735-8837
jgottlieb@morrisoncohen.com

October 20, 2026

**<u>VIA ECF</u>**
Hon. Margaret M. Garnett
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 906
New York, New York 10007

Re: <u>*Kim, et al. v. The Democratic People's Republic of Korea*, Case No. 25-MC-527</u>

Dear Judge Garnett:

We represent interested non-party Aave LLC ("Aave LLC") in the above-captioned action. We write in response to Plaintiffs' letter motion dated October 15, 2026 (the "October 15 Letter") requesting alternative service of Plaintiffs' Motion for Turnover and to Determine Adverse Claims (Dkt. No. 60, the "Turnover Motion") as part of Plaintiffs' proposed notice and claims process. Aave LLC opposes the October 15 Letter because it is unnecessary, procedurally improper, and not sufficiently calculated to provide notice to affected users. Aave LLC respectfully refers the Court to its opposition to the Turnover Motion (Dkt. No. 82, the "Opposition" or the "Opp."),[1] which sets forth its argument in detail, as well as Aave LLC's motion to vacate the Restraining Notice (Dkt. Nos. 39-42), its two supplemental briefs (Dkt. Nos. 61, 68), and the three declarations of Luigi D'Onorio DeMeo (Dkt. Nos. 41, 62, 83).

<u>First</u>, the relief requested in the October 15 Letter is unnecessary because Plaintiffs are not entitled to turnover of the Immobilized Assets, obviating the need for any claims procedure under CPLR 5239. Plaintiffs have not met their burden to establish the first prong under the touchstone Second Circuit turnover case *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838 (2d Cir. 1991), that North Korea has an "interest" in the Immobilized Assets, because a thief does not take good title to stolen assets. Opp. at 7-15. Because Plaintiffs, as judgment creditors, stand in the shoes of North Korea, they are required to show that North Korea, the alleged thief, retains title to the Immobilized Assets. The law does not permit Plaintiffs to do so. Indeed, that notion would violate New York public policy, which provides, *inter alia*, that "[n]o one shall be permitted to profit by his own fraud or to take advantage of his own wrong . . . or to acquire property by his own crime," that one "cannot vest himself with title by crime," and that "no court should be required to serve as paymaster of the wages of crime." *Id.* at 15-16 (quoting *Riggs v. Palmer*, 115 N.Y. 506, 511-12 (1889); *Carr v. Hoy*, 2 N.Y.2d 185, 187 (1957)). Plaintiffs also cannot satisfy the second *Beauvais* prong, that North Korea is entitled to possession of the Immobilized

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Opposition.

Assets or that Plaintiffs' rights to the Immobilized Assets are superior to those of Aave LLC, the party currently in possession of those assets. *Id.* at 21-25. These bedrock principles should end the analysis; Plaintiffs, stepping into the shoes of the thief, have no legal right to turnover of the proceeds of a crime, and thus a claims procedure is unnecessary.

Second, even if Plaintiffs could somehow establish their right to turnover, Plaintiffs' proposed notice and claims procedure is procedurally inappropriate. As explained in the Opposition, CPLR 5239 provides that "[p]rior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt" (emphasis added). As such, CPLR 5239 applies "to property or a debt under the control of a sheriff or receiver" or "in 'turnover' situations" where a "claimant does intervene in a turnover proceeding." Weinstein Korn Miller, 11 *New York Civil Practice* ¶ 5239.01 (2026). *See also* Opp. at 25. CPLR 5239 is not a proper vehicle for a judgment creditor to invent a bespoke process to obtain "title clear of all possible claims." October 15 Letter at 2.

The cases cited by Plaintiffs do not support their novel interpretation of CPLR 5239. Plaintiffs cite *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 269 (2d Cir. 2013) (October 15 Letter at 3) for the proposition that CPLR 5239 "provides for a stakeholder action in which parties may assert competing claims to property owned by the judgment debtor." That quotation is the Second Circuit's characterization of the argument made by the *Cruz* plaintiffs. Regardless, *Cruz* is inapposite because it was an action by judgment debtors who sued their banks for failing to provide proper notice and forms after the banks froze the judgment debtors' wages pursuant to restraining notices served by creditors. Plaintiffs also cite *Herman v. Siegmund*, 415 N.Y.S.2d 681, 682 (2d Dep't 1979) (October 15 Letter at 3) for the notion that CPLR 5239 operates as "an all-inclusive tool for the settlement of almost any problem that may arise in connection with the enforcement of money judgments." That out-of-context quote does not help Plaintiffs; the Second Department made it to explain why it was excusing a timeliness defect. Additionally, in *Herman* the CPLR 5239 action was filed by interested parties to set aside a sale of property under the control of the sheriff. *Id.* None of the authorities support Plaintiffs' proposal here to allow judgment creditors to summon hypothetical claimants and foreclose their claims so that "turnover should happen with title clear of all possible claims." October 15 Letter at 2.

Third, even under Plaintiffs' own standard, notice is not "reasonably calculated, under all the circumstances, to apprise interested parties." October 15 Letter at 3 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Plaintiffs originally proposed to send notice to "any potential claimants by (a) posting on Aave's governance forum, (b) posting on Kernel DAO's governance forum, and (c) if Aave LLC will agree, posting on Aave LLC's website, via its *X* account, and via non-fungible token to Aave suppliers in the affected rsETH–ETH pool." Turnover Motion at 30. Then, after Aave LLC filed the Opposition,[2] Plaintiffs pivoted and

[2] Plaintiffs absurdly describe Aave LLC's opposition to Plaintiffs' unsupported proposal, Opp. at 25-27, as "Aave LLC's refusal to cooperate in notifying these potential claimants,"

suggested a new proposal to send notice "by an ERC-20 token (and Arbitrum equivalent) containing a URL with the order to each address that supplied more than $100 worth of ETH to the Aave protocol at the time of the North Korean transaction, and will post the order on *Kelp*'s governance forum (to reach Kelp DAO as an entity)." Dkt. No. 91 at 12 (emphasis in original). Now, Plaintiffs continue to seek to send a token to addresses that supplied more than $100 worth of ETH to the Aave Protocol, and to "serv[e] Kelp DAO as an entity in three ways." October 15 Letter at 4-5.

Plaintiffs do not explain how they determined the $100 threshold, or how such a proposal squares with DeMeo's prior testimony that "users are not exposed to losses on a transaction-by-transaction basis" and "[a]ny attempt to compensate only users who directly supplied rsETH, or who happened to hold positions at a particular snapshot, would arbitrarily favor some users over others whose losses manifested indirectly through price dislocation, liquidity stress, or liquidation dynamics." Dkt. No. 62 ¶ 25. DeMeo further explained that "[i]ndividualized payouts would also be inequitable given market volatility and the continuously changing nature of protocol-level exposure. Users' harm can fluctuate over time and may include secondary and tertiary effects (such as increased liquidation risk, forced deleveraging, or loss of borrowing capacity) that depend on market conditions as a whole, rather than on any single transaction." *Id.* ¶ 26. DeMeo's testimony illustrates that a $100 threshold does not accurately capture users' losses.

Moreover, sending an unsolicited token containing a URL is not reasonably calculated to apprise all interested parties because many recipients will simply disregard the token as malicious or spam. The genesis of the April 18 Incident was a forged message, *see* Dkt. No. 62 ¶¶ 4.a-b, and cryptocurrency hacks and exploits are legion. Many users, understandably wary of further exploits, will not click on the URL. And posting to Kelp DAO's Telegram forum will reach only members of that community at most, a far cry from all those affected. Additionally, Plaintiffs' proposal makes no attempt to address the fact that under their own theory, every judgment creditor of North Korea has a right to the Immobilized Assets; those individuals are not part of this process. Opp. at 26. In sum, Plaintiffs are proposing a process purposefully designed to foreclose other claims so that Plaintiffs can improperly keep the Immobilized Assets for themselves. Plaintiffs' request should be denied.

<u>Finally</u>, Aave LLC respectfully renews its request that the Court require Plaintiffs to post a cash bond to secure against the continuing harm. Dkt. No. 110.

---

October 15 Letter at 2. In actuality, the method most reasonably calculated to make users whole is to deny the Turnover Motion and grant Aave LLC's Motion to Vacate. That way, as DeMeo explained, the Immobilized Assets can be utilized to remediate the effects of the April 18 Incident. *See* Dkt. No. 83 ¶ 40 ("recovery efforts in incidents like this often focus on restoring the protocol's balance and backing at the protocol level, rather than attempting individualized payouts based on snapshots that may be inequitable or administratively unworkable.").

Morrison Cohen



Respectfully submitted,

*/s/ Jason Gottlieb*

Jason Gottlieb

cc: All Counsel of Record (via ECF)