GERSTEIN HARROW LLP

The Hon. Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10009

cc: The Hon. J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10009

*Via Electronic Filing*

*Re: Urgent Letter-Motion in* Kim v. Democratic People's Republic of Korea, *No. 25-MC-527, to Extend Return Date of Writ of Execution in Light of Recent Order in* United States v. All USD Tether Held in The Cryptocurrency Address Tbjt9bp7cm5yyne9ktdf2hnu9mx1wprqpt, *No. 26-CV-8010*

Dear Judges Garnett and Oetken,

My firm represents the Plaintiffs in *Botvin v. Islamic Republic of Iran*, No. 26-MC-35, and *Campuzano v. Islamic Republic of Iran*, No. 13-MC-146 (together "Plaintiffs"), which are related to *Kim v. Democratic People's Republic of Korea*, No. 25-MC-527, and assigned to Judge Garnett. We write requesting that the Court in 25-MC-527 take urgent action necessary to preserve the status quo in light of Judge Oetken's recent restraining order in *United States v. All USD Tether Held In The Cryptocurrency Address Tbjt9bp7cm5yyne9ktdf2hnu9mx1wprqpt*, No. 26-CV-8010 ("*All USDT*" or the "Forfeiture Action").

At the time of Judge Oetken's order, Plaintiffs held (and hold) an execution lien against all property interests of the Islamic Revolutionary Guard Corps ("IRGC") in most of the property subject to the Forfeiture Action. Plaintiffs intend to file a verified claim in that action by the November 25 deadline and will assert a superior claim to so much of the Defendant property as would be necessary to satisfy their judgments against the IRGC. In granting the Government's request for a restraining order, Judge Oetken acted to preserve the status quo, including to "preserve [the appearing claimants'] present enforcement position." *All USDT*, ECF No. 20, at 6. But to the extent Judge Oetken's order would prevent Plaintiffs in these cases from levying their writ of execution on Tether through the Marshal, it could inadvertently *prejudice* Plaintiffs' enforcement position by giving rise to an argument that Plaintiffs' lien had expired due to their inability to levy within the writ's return period.

Plaintiffs intend to assert the validity and superiority of their lien in the Forfeiture Action at the appropriate time and do not ask this Court to confirm their priority or adjudicate their rights vis-à-vis the Government at this time. But Plaintiffs respectfully submit that, in seeking to preserve the status quo, Judge Oetken's order should not inadvertently and prematurely resolve Plaintiffs' priority claim on the merits. For these reasons, Plaintiffs respectfully request that this Court (on the miscellaneous docket) extend the return date of their writs of execution with respect to the property subject to *All USDT* so that Plaintiffs can raise their arguments as to the writ's validity and priority in the Forfeiture Action.

A proposed order is attached. Plaintiffs respectfully request relief no later than October 30, 2026, in case they must seek emergency relief from the Second Circuit to preserve their rights. Imminent action is necessary because, if the proposed order is not granted (or the restraining notice not modified so that the motion for alternative service at ECF No. 120 *in* 25-MC-527 can be granted and carried out) by November 27, 2026, then Plaintiffs' pre-existing priority may expire through no fault of theirs.

## I. Background: Two Cases Involving Overlapping IRGC Assets

Plaintiffs hold judgments against (among others) the Islamic Revolutionary Guard Corps ("IRGC"). On September 28, 2026, Plaintiffs delivered writs of execution to the Marshal for the Southern District of New York directed to Tether International *S.A. de C.V.*, the issuer of USDT assets. *E.g.*, *Kim*, ECF No. 120-2 (explaining delivery). Plaintiffs' delivery of this writ to the marshal created an execution lien in their favor against all interests that the IRGC has at or with Tether, including so much of the Defendant property in *All USDT* as would be necessary to satisfy Plaintiffs' judgments. *See, e.g.*, *Don King Prods., Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir. 1991); *see also* David Gray Carlson, *Critique of the Money Judgment (Part II Liens on Personal Property)*, 83 ST. JOHN'S L. REV. 43, 47–50 (2009) (explaining that New York law creates a lien on property as of the moment the judgment creditor delivers an execution to the executing officer).

Meanwhile, on September 14, 2026, the United States filed a complaint for forfeiture against a USDT balance in which the IRGC has an interest. *All USDT*, ECF No. 1. Between September 16 and October 10, several sets of claimants with judgments against the Islamic Republic of Iran, but not the IRGC, filed verified claims in *All USDT*. ECF Nos. 3, 16. The claimants moved to determine their rights to the *res* and to expedite interim relief, and, in response, the United States sought a restraining order, ECF No. 13-2. Specifically, the United States sought an order that

> All persons or entities having actual knowledge of this Order shall not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, disposed of in any

> manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the all USDT currently held in the [Target Addresses], except to allow Tether to effectuate the Government's seizure of the Defendants-in-rem pursuant to the seizure warrant described in the Complaint.

*Id.*

On October 20, on the *Kim* docket, Plaintiffs moved for alternative service of the writs of execution that they had delivered to the marshal. ECF No. 120. This motion is unopposed and is materially identical to others Judge Garnett has recently granted. *See* ECF No. 69. On October 21, in an omnibus status report (which summarizes the status of many related matters on the *Kim* docket), Plaintiffs noted that this motion is unopposed and relevantly uncontroversial.

On October 21, Judge Oetken issued a restraining order in the Forfeiture Action forbidding, among other things, any person with actual knowledge of the order from "directly or indirectly . . . encumber[ing] . . . or tak[ing] . . . any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the all USDT" that is the *res* in *All USDT*. ECF No. 21. Because both cases deal with USDT in which the IRGC has an interest, the restraining order in *All USDT* could be read to prevent further action by Plaintiffs with respect to this property.

## II. Because Plaintiffs' Writs Might Be Returned Absent Further Action, This Court Should Preserve The Status Quo by Extending The Return Date of The Writs

In a civil forfeiture case, like this one, governed by 18 U.S.C. § 981, the nature of a claimant's asserted property interest in defendant assets is "defined by the law of the State in which the interest arose." *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003). As discussed above, Plaintiffs hold an execution lien against the Defendant property under New York law. *Supra* at 2.

Under New York law, a writ of execution is ordinarily returned after 60 days unless extended in writing or converted to a levy by service of the writ of execution on a garnishee. N.Y. C.P.L.R. § 5230(c). Authorizing the Marshal to levy by service of the writ on Tether, the garnishee, is the purpose of Plaintiffs' motion for alternative service at ECF Number 120 in *Kim*. But the order in *All USDT* at least arguably enjoins Plaintiffs from effecting service or extending the execution time in writing. The solution to preserve the status quo, then, is to have this Court simply order that the writs not be returned so that they do not expire. *See, e.g.*, N.Y. C.P.L.R. § 5240 ("The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting,

conditioning, regulating, extending or modifying the use of any enforcement procedure.”).

Preserving the application of the writs is necessary because Plaintiffs intend to file verified claims in *All USDT* and to assert that their execution lien prevails over the United States’s claim to forfeiture as the D.C. Circuit expressly held in *Estate of Levin v. Wells Fargo Bank, N.A. (“Levin II”)*, 156 F.4th 632, 638 (2025). In that case, the D.C. Circuit held that, where a state sponsor of terrorism obtains property through crime and that property is “blocked” under the International Emergency Economic Powers Act, judgment creditors’ liens from terrorism-related judgments defeat the Government’s claim to forfeiture even if the acts giving rise to forfeiture predate perfection of the liens because the Terrorism Risk Insurance Act “subject[]s to execution” the “blocked assets” of a “terrorist party” “notwithstanding any other provision of law.” 156 F.4th 632, 638 (D.C. Cir. 2025). And in *Kirschenbaum v. 650 Fifth Ave.*, the Second Circuit held that “all assets belonging to an entity that satisfies [the] definition of [a terrorist party under an executive order] are automatically blocked.” 830 F.3d 107, 137 (2d Cir. 2016). Therefore, Plaintiffs’ liens on the *res*—which is the blocked property of a terrorist party—prevail over the United States’s attempt to forfeit the property as proceeds of crime regardless of when the Government’s interest in the property arose under Section 981. *Levin II*, 156 F.4th at 638; *compare* Order, ECF No. 20 at 7.

To be clear, Plaintiffs do not require this Court to adjudicate these arguments at this time. The purpose of the relief sought here is to preserve Plaintiffs’ opportunity to raise these arguments in the Forfeiture Action at the appropriate time. Plaintiffs understand the purpose of the United States’s motion in *All USDT*, and of Judge Oetken’s order in that case, to be preserving the status quo while other claimants (which includes Plaintiffs) have time to file verified claims. Plaintiffs have no objection to that goal, to the extent that it preserves the status quo at the time of the order as to *all* parties, including Plaintiffs. To do that, Plaintiffs’ then-existing position should be maintained.

To achieve that outcome, Plaintiffs respectfully request that Judge Garnett hold their motion for alternative service (at ECF No. 120) in abeyance and issue an order extending the return date to 60 days after *All USDT* is finally resolved and all appeals from the judgment in that case are exhausted or the time within which to appeal has expired. If Judge Garnett issues an order extending the return date, Plaintiffs will then file verified claims in the ordinary course in *All USDT*, participate in the case-management conferrals and conference as necessary, and will not oppose further application of the order in *All USDT*.

Importantly, neither the Government nor the early-appearing claimants in *All USDT* can claim any cognizable prejudice from the requested relief. The Government’s claim to the Defendant property in *All USDT* will be unaffected by an order extending the

return date of Plaintiffs' writs. Under New York law, priority in personal property is determined by the order of delivery of an execution to the Marshal, not by the Marshal (or any other party's) seizure or transfer of the property. Thus, Plaintiffs' lien will survive any seizure by the Government in the Forfeiture Action, and to the extent the Government disputes Plaintiffs' claim to the Defendant property, it can do so without prejudice in due course in the Forfeiture Action. Meanwhile, the early appearing claimants in the Forfeiture Action have no basis to object to Plaintiffs obtaining the same relief that they had requested: preservation of the status quo with respect to "whatever enforcement position they are presently entitled to establish." ECF No. 20, at 6 (quoting claimants' briefs). Unlike the early-appearing claimants in the Forfeiture Action, Plaintiffs are judgment creditors not only of Iran but of the IRGC itself, and therefore may execute directly on property of the IRGC without seeking further judicial intervention. *See Levinson v. Kuwait Finance House (Malaysia) Berhad*, 44 F4th 91, 97 (2d Cir. 2022). The Claimants have no basis in law or equity to prevent Plaintiffs from maintaining *their* enforcement position as of the time of the Court's order.

Accordingly, Plaintiffs, with consideration for the many demands on the Court's time and attention, and with apologies for the urgent letter, respectfully request the Court's attention to this letter motion no later than Friday, October 30. Absent relief from the Court, Plaintiffs appear to be enjoined from subjecting the blocked assets of a terrorist party to the execution of a terrorist judgment and would risk losing their right to do so as early as November 27, 2026. If the proposed order is not timely granted (or the restraining order not otherwise modified), Plaintiffs notice the other parties in *All USDT* of their intent under Federal Rule of Appellate Procedure 8(a)(2)(C) to seek a stay pending appeal from the application of the order in *All USDT* to Plaintiffs' attempts to execute.

## III. Conclusion

Plaintiffs respectfully request that Judge Garnett issue an order preserving the status quo pending resolution of *All USDT*.

Sincerely,
*<u>/s/ Charlie Gerstein</u>*
Charlie Gerstein