**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HAN KIM et al.,

Plaintiffs,

v.

THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA,

Defendant,

CIRCLE INTERNET FINANCIAL, LLC,

Garnishee.

Case No. 1:25-mc-00527-MMG

**GARNISHEE CIRCLE INTERNET FINANCIAL, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR TURNOVER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 3

A. Plaintiffs ..... 3

B. Circle and USDC ..... 4

C. USDC Minting, Redemption, and the Reserves ..... 5

D. The Wallet Addresses ..... 6

ARGUMENT ..... 6

I. The Property Plaintiffs Seek to Garnish Is Immune from Execution ..... 6

II. North Korea Is Subject to Sanctions Restrictions Under U.S. Law and Circle's Terms of Service ..... 8

III. Plaintiffs Are Not Entitled to Turnover from Circle ..... 9

A. The USDC in the Wallet Addresses Is Not Subject to Turnover ..... 11

1. Circle Does Not Possess the USDC ..... 11

2. North Korea Has No Interest in the USDC ..... 12

3. North Korea Did Not Acquire a Property Interest in the USDC by Stealing It ..... 12

4. North Korea Cannot Assign or Transfer the USDC ..... 14

5. North Korea Is Not Entitled to Possession of the USDC ..... 15

B. Circle Cannot Be Required to Mint Substitute USDC for Turnover ..... 15

C. Circle Cannot Be Required to Redeem USDC for U.S. Dollars for Turnover ..... 17

1. North Korea Has No Enforceable Right to the Reserves ..... 17

2. The Reserves Are Not Subject to Turnover ..... 18

a. North Korea Has No Interest in the Reserves ..... 18

b. North Korea Is Not Entitled to Possession of the Reserves ..... 19

c. North Korea Cannot Assign or Transfer the Reserves ..... 20

D. USDC Is Not an Article 8 Security, But It Would Not Matter for This Motion Even If It Were ..... 20

E. CPLR 5240 Is No Help to Plaintiffs ..... 25

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABKCO Indus., Inc. v. Apple Films, Inc.*,
39 N.Y.2d 670 (1976) ....................19

*AG Worldwide v. Red Cube Mgmt. AG*,
No. 01 Civ. 1228 (GEL),
2002 WL 417251 (S.D.N.Y. Mar. 15, 2002) ....................16

*Allegaert v. Chemical Bank*,
657 F.2d 495 (2d Cir. 1980)....................24

*Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*,
190 F.3d 16 (2d Cir. 1999).................... *passim*

*Bainbridge Fund Ltd. v. Republic of Argentina*,
690 F. Supp. 3d 411 (S.D.N.Y. 2023)....................7

*Bass v. Bass*,
140 A.D.2d 251 (1st Dep't 1988) .................... *passim*

*Beauvais v. Allegiance Sec., Inc.*,
942 F.2d 838 (2d Cir. 1991)....................10, 15

*Calderon-Cardona v. Bank of N.Y. Mellon*,
770 F.3d 993 (2d Cir. 2014)....................7

*Capital Ventures Int'l v. Republic of Argentina*,
280 F. App'x 14 (2d Cir. 2008) ....................10

*Carr v. Hoy*,
2 N.Y.2d 185 (1957) ....................12, 16, 17

*Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*,
21 N.Y.3d 55 (2013),
*aff'd*, 717 F.3d 266 (2d Cir. NY 2013) ....................11

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
452 F. Supp. 1108 (S.D.N.Y. 1978)....................24

*Dussault v. Republic of Argentina*,
616 F. App'x 26 (2d Cir. 2015) ....................10, 15, 19

*FDIC v. Conte*,
204 A.D.2d 845 (3d Dep't 1994) ....................10

*Guardian Loan Co. v. Early*,
47 N.Y.2d 515 (1979) ....................25, 26

*Hausler v. JP Morgan Chase Bank, N.A.*,
770 F.3d 207 (2d Cir. 2014)....................9

*Highland Cap. Mgmt. LP v. Schneider*,
8 N.Y.3d 406 (2007)....................23, 24

*Hofferman v. Simmons*,
290 N.Y. 449 (1943)....................12

*In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*,
536 F.3d 980 (9th Cir. 2008)....................8

*In re Sealed Case*,
932 F.3d 915 (D.C. Cir. 2019)....................8

*Kaplan v. Supak & Sons Mfg. Co.*,
46 Misc. 2d 574 (Civ. Ct. N.Y. Cnty. 1965)....................26

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F.3d 70 (2d Cir. 2002)....................10, 12

*Ladjevardian v. Republic of Argentina*,
663 F. App'x 77 (2d Cir. 2016)....................19

*Lifespan Corp. v. Nat'l Union Fire Ins. Co.*,
59 F. Supp. 3d 427 (D.R.I. 2014)....................24

*M.F. Hickey Co. v. Port of N.Y. Auth.*,
23 A.D.2d 739 (1st Dep't 1965)....................15

*Marx v. Go Publ'g Co.*,
721 F.2d 1272 (9th Cir. 1983)....................8

*Matter of Supreme Merch. Co. v. Chem. Bank*,
70 N.Y.2d 344 (1987)....................18

*Mitchell v. Garrison Protective Servs., Inc.*,
579 F. App'x 18 (2d Cir. 2014),
*aff'd*, 819 F.3d 636 (2d Cir. NY 2016)....................14

*N.Y. State Tax Comm'n v. Ritter*,
101 Misc. 2d 606 (Sup. Ct. Orange Cnty. 1979)....................12

*Oil City Petroleum Co. v. Fabac Realty Corp.*,
50 N.Y.2d 853 (1980)....................13

*Peterson v. Bank Markazi*,
121 F.4th 983 (2d Cir. 2024)....................17, 20

*Rafkind v. Chase Manhattan Bank, N.A.*,
No. 92 Civ. 6099 (JSM),
1992 WL 380291 (S.D.N.Y. Dec. 7, 1992)....................13, 14, 15

*Raskin v. Wyatt Co.*,
125 F.3d 55 (2d Cir. 1997)....................13

*Res. Grp. Int'l Ltd. v. Chishti*,
832 F. Supp. 3d 381 (S.D.N.Y. 2026)....................10, 13

*Riggs v. Palmer*,
115 N.Y. 506 (1889)....................12

*Rubin v. Islamic Republic of Iran*,
583 U.S. 202 (2018)....................7

*SEC v. Amerindo Inv. Advisors Inc.*,
No. 05 Civ. 5231 (RJS),
2014 WL 2112032 (S.D.N.Y. May 6, 2014)....................12, 13, 14

*SEC v. Coinbase, Inc.*,
726 F. Supp. 3d 260 (S.D.N.Y. 2024)....................25

*SEC v. Levine*,
881 F.2d 1165 (2d Cir. 1989)....................14

*SEC v. Universal Express, Inc.*,
No. 04 Civ. 2322 (GEL),
2008 WL 1944803 (S.D.N.Y. Apr. 30, 2008)....................14

*Smith v. Amherst Acres, Inc.*,
43 A.D.2d 792 (4th Dep't 1973),
*aff'd*, 19 N.Y.3d 543 (2012)....................19

*Stone v. Freeman*,
298 N.Y. 268 (1948)....................16

*Stuhler v. State*,
127 Misc. 2d 390 (Sup. Ct. N.Y. Cnty.),
*aff'd mem.*, 113 A.D.2d 1038 (1st Dep't 1985)....................12, 13, 14

*Swezey v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
87 A.D.3d 119 (1st Dep't 2011)....................19

*United States v. Griffith*,
515 F. Supp. 3d 106 (S.D.N.Y. 2021)....................8

*United States v. Nat'l Bank of Com.*,
472 U.S. 713 (1985)....................14

**STATUTES**

28 U.S.C. § 1609....................7

28 U.S.C. § 1610(f)(1)(A)....................2, 7

28 U.S.C. § 1963....................8

50 U.S.C. § 1701, *et seq.* .......... 8

N.Y. CPLR 5201(b) .......... *passim*

N.Y. CPLR 5225(b) .......... *passim*

N.Y. CPLR 5240 .......... 3, 25, 26

N.Y. U.C.C. § 8-102(a)(14) .......... 24

N.Y. U.C.C. § 8-102(a)(15) .......... 22, 23

N.Y. U.C.C. § 8-103(h) .......... 23

N.Y. U.C.C. § 8-112 .......... 21

N.Y. U.C.C. § 8-401(a) .......... 23

N.Y. U.C.C. § 12-102(a)(1) .......... 21

N.Y. U.C.C. § 12-105 .......... 22

U.C.C. art. 12 .......... 21

U.C.C. § 8-102 .......... 21, 23, 25

UCC § 8-112 .......... 21

**RULES**

31 C.F.R. § 510.201 .......... 8, 16, 23

31 C.F.R. § 510.206(a) .......... 8, 23

31 C.F.R. § 510.211 .......... 8

31 C.F.R. § 510.212 .......... 8

31 C.F.R. § 510.311(a) .......... 8, 16, 23

31 C.F.R. § 510.405(d)(1) .......... 8

73 Fed. Reg. 63,540 (Oct. 24, 2008) .......... 7

82 Fed. Reg. 56,100 (Nov. 27, 2017) .......... 8

Fed. R. Civ. P. 56(c)(2) .......... 13

Fed. R. Civ. P. 69(a)(1) .......... 9

Fed. R. Evid. 602 .......... 13

Fed. R. Evid. 801(c) .......... 13

Fed. R. Evid. 802 ....................................................................................................................13

## MISCELLANEOUS

David D. Siegel & Patrick M. Connors,
*New York Practice* (6th ed. Dec. 2024 update)..........................................................10, 14

Third Preliminary Report of the Advisory Comm. on Prac. & Proc.
314 (1959)....................................................................................................................25

TRIA § 201(a),
Pub. L. No. 107-297, 116 Stat. 2322 (28 U.S.C. § 1610 note)...........................................7

## INTRODUCTION

Plaintiffs seek an order requiring putative "Garnishee" Circle Internet Financial, LLC ("Circle") to "turn over" USDC held in three wallet addresses on the Ethereum blockchain ("Wallet Addresses") to satisfy their 2015 judgment against the Democratic People's Republic of Korea ("North Korea"). According to Plaintiffs, the Wallet Addresses are held by North Korea and contain USDC that North Korea stole from other victims (not Plaintiffs). Circle "froze" the Wallet Addresses in 2024 and 2025 to comply with federal seizure warrants obtained by the U.S. Department of Justice. But Circle cannot access or move the USDC and cannot turn it over to Plaintiffs. Plaintiffs know this and, as an alternative to the USDC, seek to require Circle to give them the interests they claim North Korea holds in the USDC, namely the equivalent U.S. dollars from the USDC reserves or substitute USDC that Circle would be required to "mint" (i.e., create) for them.

As North Korea's judgment creditors, Plaintiffs "step into the shoes" of North Korea. They are therefore entitled to no more than North Korea could demand from Circle with respect to the USDC at issue. North Korea is of course subject to comprehensive sanctions in the United States intended to cut off its access to American markets and currency. Of relevance here, U.S. persons may not make "any contribution or provision of funds, goods, or services by, to, or for the benefit of" North Korea. Nor may U.S. persons provide financial or other services to it. Circle's USDC terms of service ("Terms") reflect its compliance with these restrictions. Among other things, Circle does not do business with, or provide services to, North Korea, and Circle will freeze wallet addresses identified by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") as linked to or associated with North Korea. Circle will also freeze wallet addresses to comply with court orders, as it did with the Wallet Addresses here.

Plaintiffs' motion fails from the outset. The USDC at issue is immune from execution as the alleged property of a foreign state. The only exception Plaintiffs invoke, 28 U.S.C. § 1610(f)(1)(A), was waived a quarter century ago and is therefore unavailable.

Even if sovereign immunity did not foreclose Plaintiffs' motion, North Korea (and therefore Plaintiffs) is not entitled (1) to require Circle to turn over the frozen USDC, (2) to require Circle to mint substitute USDC for them, or (3) to require Circle to turn over equivalent U.S. dollars.

***Turnover of USDC***. Plaintiffs do not satisfy any of the elements required under New York law for turnover of the USDC. Circle does not possess the USDC; in fact, Plaintiffs contend that it is located in wallet addresses held by North Korea. North Korea has no interest in the USDC recognized under New York law because, according to Plaintiffs, the USDC constitutes the fruits of North Korea's crimes against other victims. And because the USDC is frozen pursuant to court order, North Korea cannot assign or transfer it and is not entitled to possess it.

***Minting New USDC***. For all the same reasons and more that Plaintiffs are not entitled to turnover of the USDC in the Wallet Addresses, they are not entitled to require Circle to mint new, substitute USDC to satisfy North Korea's debt. The substitute USDC does not exist, so Circle could not and does not possess it; North Korea holds no interest in it; North Korea cannot assign or transfer it; and North Korea is not entitled to possess it. Moreover, because federal sanctions law prohibits Circle from minting new USDC for North Korea, Circle cannot be subject to any enforceable obligation to do so. In reality, Plaintiffs want Circle to pay North Korea's debt with Circle's own assets—an outcome that is not permitted under New York law.

***U.S. Dollars***. Again, for all the reasons that Plaintiffs are not entitled to turnover of the USDC, they are not entitled to turnover of equivalent U.S. dollars backing it. And again, federal law forbids Circle from providing funds or services to North Korea, and therefore North Korea has no enforceable entitlement to the USDC reserves. For similar reasons, North Korea is not eligible to redeem the USDC for U.S. dollars from Circle under Circle's Terms.

***Other Arguments***. Plaintiffs' remaining arguments for turnover are likewise meritless. Even if USDC were a security (it is not), Plaintiffs would still have to satisfy the requirements of New York turnover law (possession by the garnishee, the debtor's interest in the property, and the debtor's ability to assign or transfer the property and entitlement to possess it). They do not. Finally, Plaintiffs' Hail Mary invocation of CPLR 5240 does not help them. The provision is intended to give courts the power to prevent "unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts," not to erase all requirements governing turnover. Plaintiffs in effect ask the Court to ignore sovereign immunity, federal sanctions law, and New York enforcement of judgments law. But Plaintiffs provide no authority to support their position that CPLR 5240 empowers the Court to do so, because it does not. The motion should be denied.

## BACKGROUND

### A. Plaintiffs

On April 9, 2015, Plaintiffs Han Kim and Yong Seok Kim obtained a $330 million default judgment against North Korea. ECF No. 1 (registering judgment); Pls.' Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 4-2; ECF No. 4-1 ("Mot.") at 4–5. A separate default judgment, obtained by other Kim family members in 2025, is not at issue in this motion. SUMF ¶ 2; Mot. at 1, 5, 11.

### B. Circle and USDC

Circle issues USDC, a cryptocurrency "stablecoin" backed by reserves that Circle holds in segregated accounts. Declaration of Joanna Marathakis ("Marathakis Decl."), ECF No. 100, ¶ 2; Declaration of Alex Côté ("Côté Decl.") Ex. A ("Terms") §§ 1–2; SUMF, Circle's Counterstatement of Additional Material Facts ("Circle's SUMF") ¶ 40.

USDC exists only as balances associated with wallet addresses on public blockchains. Circle's SUMF ¶ 41. It is not represented by any paper or other physical certificate. *Id.*; SUMF ¶¶ 13–17, 20–21; Côté Decl. ¶ 6.

Circle issues USDC on more than 35 blockchains, including as an ERC-20 token on the Ethereum blockchain, which is the blockchain on which the Wallet Addresses are located. Circle's SUMF ¶ 42. The Ethereum blockchain ledger is maintained by a decentralized network of independent computers ("nodes") that are not operated by Circle or anyone retained by Circle. SUMF ¶¶ 13–14; Circle's SUMF ¶ 43. Circle does not operate any blockchain other than Arc, a Layer-1 blockchain that it launched in September 2026. Circle's SUMF ¶ 44. Neither Circle nor anyone on its behalf records transfers of USDC on a blockchain other than Arc. *Id.* ¶ 45.

In limited circumstances governed by its "Stablecoin Access Denial Policy," Circle can "freeze" a third-party wallet address (what Circle refers to as an "Access Denial") such that USDC can no longer be moved into or out of that address. *Id.* ¶ 46; Marathakis Decl. ¶ 7 & Ex. E ("Access Denial Policy"); Côté Decl. ¶ 10. For instance, under the Access Denial Policy, Circle will freeze a wallet address to comply with a legal order from a court or other governmental authority with jurisdiction over Circle. Circle's SUMF ¶ 49; Access Denial Policy § 3.2. In compliance with federal law, Circle will also freeze wallet addresses that OFAC has identified on its Specially Designated Nationals and Blocked Persons List, including addresses linked to or associated with North Korea. Circle's SUMF ¶ 51.

To access or move cryptocurrency in a wallet address, one must know the address's private key. *Id.* ¶ 52; Marathakis Decl. ¶ 8. Only the holder of the private key can execute a transfer to another address. Circle's SUMF ¶ 53; Marathakis Decl. ¶ 8; Côté Decl. ¶ 7. Even though Circle can stop a wallet address from moving USDC, Circle has no ability to move or obtain the USDC in that address without the private key for that address. Circle's SUMF ¶ 54; Marathakis Decl. ¶¶ 7–8.

### C. USDC Minting, Redemption, and the Reserves

Circle creates new USDC in a process known as "minting," which is available only to Circle Mint account holders.[1] Circle's SUMF ¶ 55. To initiate minting, a Circle Mint account holder must deliver U.S. dollars to Circle through the holder's Mint account, and Circle will provide USDC in exchange. *Id.* ¶ 58; Marathakis Decl. Ex. C at 6 & Ex. D at 2; Côté Decl. ¶ 8.

Circle redeems USDC in the opposite process when a Mint account holder converts its USDC to fiat currency. Circle's SUMF ¶ 59. The Mint account holder must deposit USDC into its Mint account, and Circle then will redeem the USDC for equivalent U.S. dollars from the reserves. *Id.*; Marathakis Decl. ¶¶ 3–4 & Exs. C, D; Côté Decl. ¶ 8. Circle can take USDC out of circulation only if it is located in a wallet address for which Circle knows the private key or if the USDC is provided to Circle. Circle's SUMF ¶ 60; Marathakis Decl. ¶¶ 4, 8, 14 & Ex. C at 6. Circle does not know the private keys for the Wallet Addresses. Circle's SUMF ¶¶ 61, 67; Marathakis Decl. ¶¶ 12–13.

Holders of USDC who do not have a Mint account cannot redeem USDC with Circle. Circle's SUMF ¶ 62; Terms § 2. Even a Mint account holder's ability to redeem is conditioned

---

[1] Circle Mint accounts are only available to institutions in supported jurisdictions that meet certain eligibility requirements. Circle's SUMF ¶ 56; Côté Decl. Ex. B ("Mint Agreement") § 1. North Korea is not eligible. Circle's SUMF ¶ 57; Marathakis Decl. ¶ 6; Mint Agreement §§ 1, 35.

on, among other things, possessing USDC in a registered Mint account and the absence of any action by a regulator, law enforcement, or a court "that would restrict redemption." Terms § 13; Circle's SUMF ¶ 63.

### D. The Wallet Addresses

Plaintiffs seek 2,522,419 USDC that they claim is held by North Korea in the Wallet Addresses. Mot. at 1, 11, 25. Circle froze two of the addresses in September 2024 and the third in March 2025. SUMF ¶ 37; Circle's SUMF ¶ 64. Circle does not possess the (sealed) affidavits that the government submitted to establish probable cause for those warrants. Circle's SUMF ¶ 64. Circle froze these addresses before Plaintiffs served their restraining notice on November 26, 2025. Circle's SUMF ¶ 65; Baskin Decl. Ex. 5.

Circle does not know who owns the Wallet Addresses; nor does it know their private keys. Circle's SUMF ¶ 67; Marathakis Decl. ¶¶ 11–13. Circle does not possess the USDC in the addresses and cannot access or move it. Circle's SUMF ¶ 68; Marathakis Decl. ¶¶ 11–13. Circle has not issued USDC directly to those addresses, no Circle Mint account is associated with them, and Circle has no relationship with whoever controls them. Circle's SUMF ¶ 69; Côté Decl. ¶ 9. Unless someone were to provide that USDC to Circle from a Mint account, Circle could not redeem it. Circle's SUMF ¶ 70; Marathakis Decl. ¶ 14.

## ARGUMENT

### I. The Property Plaintiffs Seek to Garnish Is Immune from Execution

Plaintiffs' turnover motion is premised on their claim that the USDC in the Wallet Addresses is held by North Korea or its agents.[2] But if that claim were accurate, sovereign

[2] Plaintiffs have not provided admissible evidence that the Wallet Addresses are held by North Korea. They rely exclusively on hearsay posts on X and a news article repeating them, which themselves do not even establish that North Korea controls the Wallet Addresses. SUMF ¶¶ 37–

immunity would bar their motion. Under the Foreign Sovereign Immunities Act ("FSIA"), property of a foreign state is immune from attachment unless a statutory exception applies. *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 209 (2018) (citing 28 U.S.C. § 1609); *Calderon-Cardona v. Bank of N.Y. Mellon*, 770 F.3d 993, 998 (2d Cir. 2014).

Plaintiffs have failed to demonstrate that an exception applies. *Bainbridge Fund Ltd. v. Republic of Argentina*, 690 F. Supp. 3d 411, 419 & n.2, 421 (S.D.N.Y. 2023) (burden is on Plaintiffs). The only exception Plaintiffs invoke—28 U.S.C. § 1610(f)(1)(A), *see* Mot. at 2, 12, 17–18—is unavailable. "President Clinton waived § 1610(f)(1)'s attachment remedy entirely," and no subsequent president has reinstated it, thus rendering § 1610(f)(1) "unavailable to plaintiffs." *Calderon-Cardona*, 770 F.3d at 998. For this reason alone, Plaintiffs' motion fails.

Plaintiffs have asserted in other proceedings that the Terrorism Risk Insurance Act ("TRIA") provides a basis for attachment, but they do not do so here for good reason. TRIA reaches only "a judgment against a terrorist party." TRIA § 201(a), Pub. L. No. 107-297, 116 Stat. 2322, 2337 (28 U.S.C. § 1610 note). The Second Circuit has ruled that a "judgment against a terrorist party" means one that was "entered against a party that was a designated state sponsor of terrorism ***when the judgment was entered***." *Calderon-Cardona*, 770 F.3d at 1000 (emphasis added). *Calderon-Cardona* thus held that TRIA did not reach a judgment entered in 2010, since North Korea was not so designated at the time. Nor was North Korea so designated when Plaintiffs' judgment was entered in 2015. SUMF ¶ 1; Circle's SUMF ¶ 71; 73 Fed. Reg. 63,540

---

38; Pls.' Exs. W, X, AI; *see infra* n.6. Even assuming the Wallet Addresses are held by North Korea, Plaintiffs' turnover motion fails for all the reasons herein.

(Oct. 24, 2008); 82 Fed. Reg. 56,100 (Nov. 27, 2017). TRIA therefore provides no basis for attachment in this case.[3]

## II. North Korea Is Subject to Sanctions Restrictions Under U.S. Law and Circle's Terms of Service

North Korea is subject to sanctions in the United States. Relevant here, the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–1706, and related North Korean sanctions regulations prohibit U.S. persons from making "any contribution or provision of funds, goods, or services by, to, or for the benefit of" the Government of North Korea, which includes its agencies and instrumentalities, or from exporting "directly or indirectly" "any goods, services, or technology to North Korea." 31 C.F.R. §§ 510.201(a)(1), (b)(1), 510.206(a), 510.311(a); Exec. Order No. 13,722, §§ 1(a), 3(a)(i), 6(a), 81 Fed. Reg. 14,943 (Mar. 18, 2016). Nor may U.S. persons "provide . . . financial . . . or other services" to it or use others to do indirectly what they cannot do directly. 31 C.F.R. §§ 510.211, 510.212, 510.405(d)(1); Exec. Order No. 13,722, §§ 3(a)(i), (iii), 7.

These "sanctions are intended to cut off North Korea's access to American markets and currency." *In re Sealed Case*, 932 F.3d 915, 919 (D.C. Cir. 2019). Violating these prohibitions carries civil penalties and, if willful, is a federal crime. 50 U.S.C. § 1705(a)–(c); *see also United States v. Griffith*, 515 F. Supp. 3d 106, 112 (S.D.N.Y. 2021) (denying motion to dismiss

[3] Plaintiffs have previously relied on *In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*, 536 F.3d 980 (9th Cir. 2008) ("*Hilao*") to argue that registration of a judgment in a new district creates a "new judgment" that can be used to reset the date a government regime is considered to be a state sponsor of terrorism. The argument is meritless. *Hilao* treated registration under 28 U.S.C. § 1963 as "the functional equivalent of obtaining a new judgment of the registration court" only ***for statute of limitations purposes***, i.e., to permit the registered judgment "to be enforced for the period allowed by the law of that forum." *Id.* at 989; *see also Marx v. Go Publ'g Co.*, 721 F.2d 1272, 1273 (9th Cir. 1983) (cited by *Hilao* and ruling that "registration of the district court judgment under 28 U.S.C. § 1963 . . . commenced anew the running of the applicable statute" of limitations). Neither *Hilao* nor *Marx* addressed TRIA.

indictment for conspiracy to violate IEEPA based on defendant's "presentation" in North Korea "on cryptocurrency topics that were pre-approved by the DPRK and largely surrounded the potential to launder money and evade sanctions"; defendant ultimately pleaded guilty and was sentenced to 63 months in prison).

In compliance with these restrictions, Circle does not do business with North Korea or its agencies or instrumentalities and does not hold assets on their behalf. Circle's SUMF ¶ 72; *see* Terms §§ 3, 30. As reflected in Circle's Terms, applicable law requires Circle "to prevent Restricted Persons from holding USDC using USDC Services," which includes issuing or redeeming USDC. Terms §§ 2–3; Circle's SUMF ¶ 73. "Restricted Persons" means any person that is the subject or target of sanctions, including one "located, organized or resident in" North Korea. Terms § 3; Circle's SUMF ¶ 73.

The Terms also prohibit holders of USDC from using Circle's services to transact with or on behalf of North Korea. Terms §§ 3, 30; Circle's SUMF ¶¶ 74–75.

## III. Plaintiffs Are Not Entitled to Turnover from Circle

Even if sovereign immunity did not bar turnover, Plaintiffs' motion would fail.

Here, New York law governs the procedure to enforce a judgment and the property that may be reached. Fed. R. Civ. P. 69(a)(1); *Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 190 F.3d 16, 20–25 (2d Cir. 1999). TRIA does not preempt state turnover law. *See Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) (per curiam).

New York procedure for enforcement of judgments is found in CPLR article 52. CPLR 5201 identifies the assets available to judgment creditors, and the remaining provisions supply "the devices whereby to reach" particular assets. *Alliance Bond*, 190 F.3d at 20–21 (internal quotation marks omitted). Relevant here, CPLR 5225(b) requires Plaintiffs to show that Circle is "in possession or custody of money or other personal property in which the judgment debtor has

an interest" and that "the judgment debtor is entitled to the possession of such property."[4] *Beauvais v. Allegiance Sec., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991). CPLR 5201(b) requires Plaintiffs to show that North Korea is permitted to assign or transfer the property interests they seek. *Alliance Bond*, 190 F.3d at 24.

Turnover law reflects the well-established principle that a judgment creditor steps into the shoes of the judgment debtor, such that "if a given property, asset, interest, or deposit is unavailable to the debtor, it is unavailable to the creditor." David D. Siegel & Patrick M. Connors, *New York Practice* § 488 (6th ed. Dec. 2024 update); *see also Dussault v. Republic of Argentina*, 616 F. App'x 26, 27–28 (2d Cir. 2015) (summary order) (affirming denial of CPLR 5225(b) turnover to judgment creditor where judgment debtor was not "entitled to the possession" of the funds at issue); *Bass v. Bass*, 140 A.D.2d 251, 253–54 (1st Dep't 1988) (affirming vacatur of restraining notice directed to garnishee's real property where judgment debtor had no legal interest he could assign or transfer in it).[5] The principle holds particular force in this case where, even according to Plaintiffs, North Korea stole the USDC at issue from other victims; North Korea is the subject of comprehensive sanctions in the United States; and

[4] Plaintiffs move only under the possession-or-custody prong of CPLR 5225(b). The transferee prong, which is "a mechanism for obtaining a money judgment against the recipient of a fraudulent conveyance," *FDIC v. Conte*, 204 A.D.2d 845, 846 (3d Dep't 1994), is not at issue where North Korea has transferred nothing to Circle. Marathakis Decl. ¶¶ 3–4, 6, 11–14; Côté Decl. ¶ 9.

[5] *Accord Capital Ventures Int'l v. Republic of Argentina*, 280 F. App'x 14, 15–16 (2d Cir. 2008) (summary order) (affirming denial of judgment creditor's effort to seize attached "excess Interest Collateral" because judgment debtor "cannot secure, much less assign or transfer, any excess Interest Collateral"); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83, 92–93 (2d Cir. 2002) (affirming denial of motion to attach funds that judgment debtor possessed "[l]ike a trustee" but did not own); *Res. Grp. Int'l Ltd. v. Chishti*, 832 F. Supp. 3d 381, 390 (S.D.N.Y. 2026) (denying CPLR 5225(b) turnover of shares titled in name of judgment debtor's spouse because the creditor failed to show the debtor was entitled to their possession).

North Korea is a "Restricted Person" under Circle's Terms, which, among other things, prohibit Circle from doing business with North Korea, including issuing or redeeming USDC for it. Terms §§ 3, 30; Circle's SUMF ¶¶ 73–74.

As discussed below, North Korea has no property interest in the USDC in the Wallet Addresses, let alone the right to possess it or the ability to assign or transfer it; no right to force Circle to provide it with equivalent U.S. dollar reserves backing the USDC; and no right to require Circle to mint new USDC for it. Because North Korea can claim none of these things, Plaintiffs cannot either.

### A. The USDC in the Wallet Addresses Is Not Subject to Turnover

First, Plaintiffs seek turnover of "North Korea's property interests currently in the Wallet Addresses," namely the USDC. Mot. at 18. Plaintiffs fail every requirement for turnover: (1) Circle does not possess the USDC, (2) North Korea has no interest in it, (3) North Korea cannot assign or transfer it, and (4) North Korea is not entitled to possess it.

#### 1. Circle Does Not Possess the USDC

"[P]ossession or custody" under CPLR 5225(b) requires "actual possession." *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 63 (2013), *aff'd*, 717 F.3d 266 (2d Cir. NY 2013). Control or constructive possession does not suffice. *Id.* Circle does not have actual possession of the USDC in the Wallet Addresses and cannot even access or retrieve it. Circle's SUMF ¶ 68; *see also* Mot. at 8 ("Circle cannot directly move a balance from one address to another without changing the smart contract that it wrote to govern USDC.").

### 2. North Korea Has No Interest in the USDC

Turnover cannot "reach assets in which the judgment debtor has no interest." *Bass*, 140 A.D.2d at 253; *accord Karaha Bodas*, 313 F.3d at 83. North Korea has no interest in the USDC because the USDC is the admitted fruit of North Korea's thefts.

### 3. North Korea Did Not Acquire a Property Interest in the USDC by Stealing It

According to Plaintiffs, North Korea obtained the USDC "as part of a long-running international campaign of hacking and fraud" perpetrated against other victims. Mot. at 1. Under established New York law, "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Carr v. Hoy*, 2 N.Y.2d 185, 187 (1957) (quoting *Riggs v. Palmer*, 115 N.Y. 506, 511 (1889)) (barring conversion claim against sheriff for money plaintiff acquired through criminal conduct); *see also Hofferman v. Simmons*, 290 N.Y. 449, 457 (1943) (ruling that gamblers could not recover seized gambling receipts because a wrongdoer "cannot vest himself with title by crime" (quoting *Riggs*, 115 N.Y. at 513)).

Accordingly, in the context of execution of a judgment, funds that are "the fruits of criminal activity" "are not property in which [the judgment debtor] has an interest" and are therefore unavailable for turnover. *Stuhler v. State*, 127 Misc. 2d 390, 392 (Sup. Ct. N.Y. Cnty.), *aff'd mem.*, 113 A.D.2d 1038 (1st Dep't 1985) (dismissing CPLR 5225(b) petition against proceeds of "fraudulently induced sales"); *N.Y. State Tax Comm'n v. Ritter*, 101 Misc. 2d 606, 607 (Sup. Ct. Orange Cnty. 1979) (judgment debtor "has no interest in or right to the money which appears to be 'fruits of a crime,' therefore there is no basis for relief under CPLR 5225(b)"); *SEC v. Amerindo Inv. Advisors Inc.*, No. 05 Civ. 5231 (RJS), 2014 WL 2112032, at *16 (S.D.N.Y. May 6, 2014) ("[T]he assets rightfully belong to investors. . . . Of course, [the

judgment creditors] cannot satisfy their judgment with other investors' money."); *Rafkind v. Chase Manhattan Bank, N.A.*, No. 92 Civ. 6099 (JSM), 1992 WL 380291, at *3 (S.D.N.Y. Dec. 7, 1992).

Plaintiffs concede that "if North Korea simply steals property it does not acquire title to that property." ECF No. 47 at 13–14; *see* ECF No. 67 at 11. While they may argue that North Korea did not "simply steal" the USDC at issue, that argument does not permit turnover here.

*First*, Plaintiffs have offered no evidence that North Korea did not simply steal the USDC. Their evidence consists entirely of anonymous hearsay posts and a trade-press article repeating them,[6] which describe the funds as "stolen" or "laundered" but provide no facts to determine the procedure used by North Korea to obtain the USDC. Pls.' Exs. W, X, AI; SUMF ¶¶ 37–38. Plaintiffs' motion should therefore be denied and these proceedings dismissed without a trial. *See Res. Grp.*, 832 F. Supp. 3d at 390 (denying CPLR 5225(b) turnover without trial where petitioner "failed to show, as a matter of law, that [the judgment debtor] is legally entitled to the possession of those shares"); *Oil City Petroleum Co. v. Fabac Realty Corp.*, 50 N.Y.2d 853, 854 (1980) (affirming dismissal of turnover petition where judgment debtor "retained [no] interest whatsoever" in the property).

*Second*, even if Plaintiffs had submitted evidence that North Korea did not "simply steal" the USDC, the result would be the same under New York law. *Stuhler*, *Ritter*, *Amerindo,* and *Rafkind* establish that a wrongdoer's creditors cannot use turnover to reach the fruits of the wrong no matter how obtained. *Stuhler* involved money that customers paid voluntarily, though induced by fraud, and the court held the judgment debtor had no interest in it: "It makes no

[6] Circle objects to Plaintiffs' Exhibits W, X, and AI under Federal Rule of Civil Procedure 56(c)(2). They are hearsay, and nothing shows personal knowledge. Fed. R. Evid. 602, 801(c), 802; *see Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

difference that the money was procured through telephone solicitation rather than by the use of force." 127 Misc. 2d at 392; *accord Amerindo*, 2014 WL 2112032, at *16 (fraud proceeds); *Rafkind*, 1992 WL 380291, at *1, *3 (fraud proceeds).[7]

### 4. North Korea Cannot Assign or Transfer the USDC

A money judgment may be enforced only against property "which could be assigned or transferred." CPLR 5201(b). Thus, "only those property interests of the judgment debtor 'which by law the debtor may assign or transfer, may be sought for application to the judgment.'" *Alliance Bond*, 190 F.3d at 24 (quoting David D. Siegel, *New York Practice* § 486, at 742 (2d ed. 1991)). "[I]f the debtor's rights in the property do not include the right to assign or transfer it, it is not 'property' for the purposes of § 5201." *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 22 (2d Cir. 2014), *aff'd*, 819 F.3d 636 (2d Cir. NY 2016) (summary order); *see also Bass*, 140 A.D.2d at 253.

North Korea cannot assign or transfer the USDC because the USDC is frozen by court order. When a wallet address is subject to an Access Denial, "all of the Circle Stablecoin controlled by that address is blocked and cannot be transferred on-chain." Access Denial Policy at 1; Circle's SUMF ¶¶ 46–47. In *Rafkind*, the court denied a judgment creditor's petition to reach accounts frozen by a federal court order because the freeze "renders them unassignable and

---

[7] The cases Plaintiffs have cited in other proceedings for the proposition that a wrongdoer takes title to property obtained by fraud or exchanged for stolen property do not help them here. *E.g.*, ECF No. 60-1 at 20–28. Those cases did not permit a thief, or its creditors, to keep the fruits of a theft from the victim(s) of the theft. Indeed, Plaintiffs' own cited case holds that a victim of the theft may recover "regardless of the form into which the thief has converted the stolen property." *SEC v. Universal Express, Inc.*, No. 04 Civ. 2322 (GEL), 2008 WL 1944803, at *3 (S.D.N.Y. Apr. 30, 2008). *SEC v. Levine*, 881 F.2d 1165 (2d Cir. 1989), is not to the contrary. *Levine* held that a federal tax lien attached to an insider trader's unadjudicated profits because, once state law supplied a property interest, "the validity of the government's tax lien [was] governed by federal law" that gave the IRS a priority interest. *Id.* at 1176 (citing *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 722–23 (1985)); *see id.* at 1174–76, 1182. Plaintiffs have no such priority.

non-transferrable. Therefore, a money judgment may not be enforced." 1992 WL 380291, at *2. The same is true here.

### 5. North Korea Is Not Entitled to Possession of the USDC

Even if North Korea had some interest in the USDC, Plaintiffs would still have to show that North Korea "is 'entitled to the possession of such property.'" *Beauvais*, 942 F.2d at 840 (citation omitted). They cannot. "For this prong to be met, the [judgment debtor] must be able to retrieve the disputed assets back from [the garnishee]." *Dussault*, 616 F. App'x at 27. As noted, North Korea cannot retrieve the USDC in the Wallet Addresses because it is frozen pursuant to court orders. Marathakis Decl. ¶¶ 7, 10; Circle's SUMF ¶¶ 46–49, 51, 64. As in *Dussault*, a debtor "barred from getting the funds back" is "not 'entitled to the possession' of the funds." 616 F. App'x at 28.

Moreover, under Circle's Terms, Circle may "block or otherwise prevent transactions that relate to . . . any Restricted Persons." Terms § 21; *see id.* §§ 3, 30. These prohibitions also prevent turnover here, because a judgment creditor takes the debtor's rights subject to the obligor's contractual defenses. *See, e.g.*, *M.F. Hickey Co. v. Port of N.Y. Auth.*, 23 A.D.2d 739, 739–40 (1st Dep't 1965) (finding that judgment debtor's right to property was limited by counterparty's contractual right to withhold payment, thereby limiting judgment creditor's claim); *Alliance Bond*, 190 F.3d at 22, 24 & n.8 (ruling that open questions regarding terms of toll-road program under which receivables at issue were claimed foreclosed resolution of whether receivables were assignable or transferable).

### B. Circle Cannot Be Required to Mint Substitute USDC for Turnover

Nor can Plaintiffs force Circle to "issue 2,522,419 USDC" to a different wallet address designated by their counsel. Mot. at 25.

First, North Korea can have no enforceable right to require Circle to mint USDC for it, so Plaintiffs cannot either. Federal law prohibits Circle from doing business with North Korea, including providing "funds, goods, or services" to or for its benefit. 31 C.F.R. §§ 510.201(a)(1), (b)(1), 510.311(a); Exec. Order No. 13,722, §§ 1(a), 6(a), 81 Fed. Reg. 14,943 (Mar. 18, 2016). This includes issuing or redeeming USDC for North Korea. *See* Terms §§ 2–3, 30; Circle's SUMF ¶¶ 72–74. North Korea therefore has no enforceable right to require Circle to mint USDC for it. New York courts will not enforce a right whose performance is prohibited by law. "[A] party to an illegal contract cannot ask a court of law to help him carry out his illegal object." *Carr*, 2 N.Y.2d at 187 (quoting *Stone v. Freeman*, 298 N.Y. 268, 271 (1948)); *see also* Marathakis Decl. ¶ 6. And again, because Plaintiffs "stand in the shoes of the judgment debtor," *Bass*, 140 A.D.2d at 253, they can obtain nothing North Korea could not. *See supra* at 10 & n.5.

Second, even if sanctions law did not prohibit it, Plaintiffs would not be entitled to require Circle to mint new USDC for them. Because Plaintiffs are not entitled to turnover of the USDC in the Wallet Addresses, they have no basis to demand a "substitute" for it. Moreover, "substitute" USDC fails the requirements of New York turnover law on its own merits. No "substitute" USDC exists, and Circle is therefore not "in possession or custody" of it. CPLR 5225(b). Nor could North Korea have an "interest" in, be "entitled to the possession" of, or be capable of "assign[ing] or transfer[ring]" USDC that Circle has never issued. *Id.*; CPLR 5201(b); Marathakis Decl. ¶ 6 & Ex. C at 6.

In any event, requiring Circle to issue new USDC would not be turnover of a judgment debtor's property; it would be ordering Circle to pay North Korea's judgment. "[J]udgments cannot be satisfied with assets of third parties against whom the judgment does not run." *AG Worldwide v. Red Cube Mgmt. AG*, No. 01 Civ. 1228 (GEL), 2002 WL 417251, at *2 (S.D.N.Y.

Mar. 15, 2002); *see also Peterson v. Bank Markazi*, 121 F.4th 983, 999 (2d Cir. 2024) (garnishee "is not substantively liable for satisfying the judgments").

**C. Circle Cannot Be Required to Redeem USDC for U.S. Dollars for Turnover**

Likewise unavailing is Plaintiffs' effort to obtain turnover of equivalent U.S. dollar reserves that Circle holds to back USDC. Plaintiffs seek "the interest that any USDC holder would have to redeem 2,522,419 USDC for that many U.S. dollars," Mot. at 22, on the theory that "USDC give their holders a clear and assignable interest in the reserves." *Id.* at 2. They are incorrect.

Again, for all the reasons discussed above, Plaintiffs are not entitled to the USDC in the Wallet Addresses as North Korea's judgment creditors. They therefore do not have any rights in the USDC that might otherwise be available to a USDC holder.

And North Korea is not just "any USDC holder." It is subject to comprehensive sanctions in the United States, and it is a "Restricted Person" under Circle's Terms. Circle's SUMF ¶¶ 72–73. Accordingly, even if North Korea could claim any interest in the USDC at issue, (1) federal law prohibits North Korea from holding any enforceable right to require Circle to redeem USDC for U.S. dollars, and (2) equivalent U.S. dollar reserves backing USDC are not subject to turnover.

**1. North Korea Has No Enforceable Right to the Reserves**

As discussed above, federal law prohibits Circle from providing any services to North Korea or contributing any funds or goods to it. *Supra* at 8. Thus, for the same reasons that North Korea has no enforceable right to require Circle to mint USDC, it also has no enforceable right to require Circle to redeem the USDC or otherwise provide reserves to North Korea. Terms §§ 2–3, 30; *Carr*, 2 N.Y.2d at 187. Plaintiffs therefore also have no such rights. *See Bass*, 140 A.D.2d at 253.

### 2. The Reserves Are Not Subject to Turnover

Even if sanctions law did not bar it, Plaintiffs would not meet the requirements for turnover of equivalent U.S. dollar reserves backing the USDC.

#### a. North Korea Has No Interest in the Reserves

Even if North Korea had an interest in the USDC, it would have no property interest in the reserves. *See* CPLR 5225(b). It never acquired a right to redeem the USDC, much less one it can exercise or transfer. Circle's commitment to redeem is "subject to these Terms, applicable law, and any fees where applicable." Terms § 2; Circle's SUMF ¶ 76. The Terms permit redemption only through a Circle Mint account, by a Mint account holder, who provides to Circle the USDC to be redeemed, and only in the absence of any "action, pending or otherwise, by a regulator, law enforcement or a court of competent jurisdiction that would restrict redemption." Terms §§ 2, 13; Circle's SUMF ¶¶ 59, 62–63. Similarly, the assignment clause on which Plaintiffs rely, Mot. at 22, states that sending USDC transfers to the recipient the right to redeem the USDC only "so long as the Holder is eligible to, and does, register a Circle Mint account." Terms § 2.

North Korea fails every requirement for redemption. It is not, and is ineligible to become, a Mint account holder. Marathakis Decl. ¶ 6; Mint Agreement §§ 1, 35; Circle's SUMF ¶ 57. Both federal law and the Terms prohibit Circle and North Korea from engaging in a redemption transaction. Terms §§ 3, 30; Circle's SUMF ¶¶ 72–75; *supra* at 8. And because the USDC at issue is frozen by court order, *see* Circle's SUMF ¶ 64, it cannot be presented to Circle for redemption. *See Matter of Supreme Merch. Co. v. Chem. Bank*, 70 N.Y.2d 344, 350 (1987) (beneficiary's interest in letter of credit not attachable because "[i]n the absence of compliance with the terms and conditions of a letter of credit, the issuing bank owes nothing to the beneficiary").

Plaintiffs identify no authority to the contrary. Citing *ABKCO Industries, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670 (1976), they argue they are entitled to any property interest in the reserves that North Korea can assign or transfer, even if that interest has little or no value. Mot. at 21. *ABKCO* is inapposite because the debtor in that case held a property interest that could be attached. 39 N.Y.2d at 674–75. In contrast, North Korea holds no interest at all in the reserves and therefore has no interest subject to enforcement. *See* CPLR 5201(b).

Nor can Plaintiffs show that their "rights to the property are superior" to Circle's. CPLR 5225(b). Plaintiffs' rights are wholly derivative of North Korea's, and North Korea has none. Any lien Plaintiffs claim through their writ or restraining notice reaches only North Korea's property, *see* Mot. at 11 n.2, and leaves them in "no better position with respect to property of the garnishee than" North Korea. *Swezey v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 87 A.D.3d 119, 127 (1st Dep't 2011) (quoting *Smith v. Amherst Acres, Inc.*, 43 A.D.2d 792, 793 (4th Dep't 1973), *aff'd*, 19 N.Y.3d 543 (2012)). And Plaintiffs' appeals to "absurd results and unjust enrichment," Mot. at 22–23, are precisely the kind of "subjective equitable assessments of the relative fairness of paying one class of creditor or another" that New York courts do not use to determine superior rights, which turn instead on "legal interests in the property." *Dussault*, 616 F. App'x at 28.

**b. North Korea Is Not Entitled to Possession of the Reserves**

For the same reasons, even if North Korea had a right to the USDC in the Wallet Addresses, it would not be "entitled to the possession" of any reserves. CPLR 5225(b); *Alliance Bond*, 190 F.3d at 21. A debtor that "could not claw [the assets] back" from the garnishee is not entitled to possess them. *Ladjevardian v. Republic of Argentina*, 663 F. App'x 77, 80 (2d Cir. 2016) (summary order) (quoting district court); *see also Dussault*, 616 F. App'x at 28.

Plaintiffs' repeated claim that Circle holds the reserves "on behalf of, and for the benefit of" North Korea is false. *See* Mot. at 1–3, 7, 12–17, 23–24. In compliance with its legal obligations, Circle ***does not*** hold assets on behalf of North Korea. Marathakis Decl. ¶ 6; Terms §§ 3–4; Circle's SUMF ¶ 72. *Peterson*, 121 F.4th at 991, is not to the contrary. There, Iran's central bank held bonds "in an account with" an intermediary that "holds securities on behalf of and for the benefit of its clients." *Id.* North Korea has no account with Circle and cannot have one.

#### c. North Korea Cannot Assign or Transfer the Reserves

Likewise, North Korea has no ability to assign or transfer the reserves. *See* CPLR 5201(b). Any right USDC holders have to redeem USDC for U.S. dollars (which, as discussed above, is a right limited to eligible Circle Mint account holders) is inseparable from the USDC itself. *See* Terms § 2 ("[S]ending USDC to another address automatically transfers and assigns to the owner of that address (a 'Holder'), and any subsequent Holder, the right to redeem USDC for USD funds so long as the Holder is eligible to, and does, register a Circle Mint account. . . . [I]f a Holder is not eligible to register a Circle Mint account, or fails to do so, such Holder is not entitled to redeem USDC with Circle"); Marathakis Decl. ¶ 4 (redemption requires a Mint account holder to provide USDC to Circle in exchange for U.S. dollars); Terms § 13; Circle's SUMF ¶ 77. North Korea has no right in the USDC and, even if it did, it cannot assign or transfer the USDC to Plaintiffs because it is frozen pursuant to court order. Circle's SUMF ¶¶ 46–51, 64.

### D. USDC Is Not an Article 8 Security, But It Would Not Matter for This Motion Even If It Were

Plaintiffs' arguments about whether USDC is a security under the UCC are beside the point. Even if USDC were a security, Plaintiffs would still have to satisfy the requirements of

federal law and CPLR 5225(b) and 5201(b) to obtain turnover from Circle, which, as discussed above, they cannot do.

Plaintiffs argue that if USDC is a security, North Korea's interest may be reached under UCC § 8-112 "through legal process on Circle, the issuer of the security." Mot. at 18. But Section 8-112 does not provide Plaintiffs with any shortcut to turnover. It "indicates only how attachment is to be made, not when it is legally justified." U.C.C. § 8-112 cmt. 2. Subsections 8-112(a) and (b), on which Plaintiffs rely (Mot. at 18, 20), merely identify how to reach "[t]he interest of a debtor" in a security, such as by seizing a security certificate or serving the issuer of an uncertificated security "at its chief executive office in the United States." N.Y. U.C.C. § 8-112(a)–(b). They do nothing to expand North Korea's interest, alter the substantive requirements for turnover, or eliminate the sanctions restrictions concerning North Korea.

In any event, USDC is not a security. As Plaintiffs have conceded, *see* ECF No. 111 at 18, USDC is a "controllable electronic record" ("CER"), i.e., "a record stored in an electronic medium that can be subjected to control under Section 12-105." N.Y. U.C.C. § 12-102(a)(1) (added by L. 2025, ch. 579, § 86, eff. June 3, 2026). "[A] controllable electronic record ***is not itself a 'security***.'" U.C.C. § 8-102 cmt. 18 (Am. L. Inst. & Unif. L. Comm'n 2022) (emphasis added); *accord id.* § 12-102 cmt. 2.

The UCC drafters described bitcoin and other virtual currencies as "prototypical controllable electronic records." U.C.C. art. 12, Prefatory Note ¶ 2 (Am. L. Inst. & Unif. L. Comm'n 2022). USDC likewise embodies the quintessential attributes of a CER. Whoever holds the private key for a wallet address can use and transfer the USDC in it, can exclude

everyone else, and is identified by that key. *See* Marathakis Decl. ¶ 8; Circle's SUMF ¶ 78; N.Y. U.C.C. § 12-105(a).[8]

Nor does USDC satisfy Article 8's definition of a security, which requires (1) "an obligation of an issuer" that (2) is "represented by a security certificate" or whose transfer "may be registered upon books maintained for that purpose by or on behalf of the issuer," (3) "is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations" (the divisibility test), and (4) "is, or is of a type, dealt in or traded on securities exchanges or securities markets" (the functional test). N.Y. U.C.C. § 8-102(a)(15)(i)–(ii), (iii)(A). USDC meets none of these requirements.

*No obligation to North Korea.* Plaintiffs argue that USDC is an obligation "[u]nder the plain language of the USDC terms of service." Mot. at 19. But the Terms limit redemption to Mint account holders and condition it on the account holder's possession of "a corresponding amount of USDC associated with a registered Circle Mint account." Terms §§ 2, 3, 13, 30; Marathakis Decl. ¶¶ 4–6; Circle's SUMF ¶¶ 55, 62–63. Whatever Circle owes eligible Mint account holders, it owes nothing to North Korea, and federal law forbids it to undertake any obligation to North Korea.

*No certificate and no transfer books.* A security must be either "represented by a security certificate in bearer or registered form" or be one "the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer." N.Y. U.C.C. § 8-102(a)(15)(i). USDC is neither. "The term 'security certificate' refers to the paper certificates that have

[8] Circle's ability to implement an Access Denial does not affect its status as a CER. A power remains "exclusive" even if the system "has a protocol programmed to cause a change, including a transfer or loss of control or a modification of benefits afforded by the electronic record." N.Y. U.C.C. § 12-105(b)(1).

traditionally been used to embody the underlying intangible interest." U.C.C. § 8-102 cmt. 16; *id.* cmt. 18; *Highland Cap. Mgmt. LP v. Schneider*, 8 N.Y.3d 406, 413 (2007) (UCC definitions "might refer either to a specialized document like a traditional stock certificate or, more generally, to a paper embodying the underlying intangible interest"). Circle issues no certificate; USDC exists only as entries on blockchain ledgers. Côté Decl. ¶ 6; Circle's SUMF ¶ 41.

Nor may USDC transfers "be registered upon books maintained for that purpose by or on behalf of the issuer." N.Y. U.C.C. § 8-102(a)(15)(i). They are executed by whoever holds the private key for the originating wallet address and recorded on a public ledger that, by Plaintiffs' own account, is kept by "a distributed network of machines." SUMF ¶¶ 13–14; Côté Decl. ¶ 7; Circle's SUMF ¶ 43. Although Circle does keep records for the Arc blockchain, as well as to administer Mint accounts and to meet its legal and regulatory obligations, doing so does not satisfy this requirement of a security. *See* N.Y. U.C.C. § 8-103(h).[9]

*Not one of a class or series.* The divisibility test distinguishes securities from "individual obligations of the sort governed by ordinary contract law." U.C.C. § 8-102 cmt. 15. USDC is not issued in classes or series. Circle mints USDC continuously, in whatever amounts Mint account holders properly request, and Circle burns USDC upon redemption. Circle's SUMF ¶ 79. The result is that the supply changes daily. *Id.* Moreover, any redemption right exists only

[9] In addition, whether a transfer "may be registered" is determined by "whether [the issuer] would have been required to register the transfer of the [security] to a third party at the [holder's] request." *Highland*, 8 N.Y.3d at 414 (construing § 8-102(a)(13)(ii)). Federal law and the UCC prohibit Circle from doing so. *See, e.g.*, 31 C.F.R. §§ 510.201(a)(1), (b)(1), 510.206(a), 510.311(a); *see also* N.Y. U.C.C. § 8-401(a)(1), (7) (issuer must register transfer only if, among other conditions, "under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name" and "the transfer is in fact rightful or is to a protected purchaser").

under an individual Mint account holder's own agreement with Circle, *id.* ¶ 80, an individual obligation governed by ordinary contract law, not a security.

Plaintiffs' reliance on *Allegaert v. Chemical Bank*, 657 F.2d 495 (2d Cir. 1980), is misplaced. *See* Mot. at 19–20. The sentence Plaintiffs quote—that an element was "so obvious that it does not warrant discussion"—concerned a different element, namely whether the instrument "evidences . . . an obligation of the issuer." 657 F.2d at 507. On class or series, *Allegaert* required "at least two instruments in a specified class or series, or that the single instrument be divisible into at least one additional instrument," and found that test met because "two DGF Debentures were issued," which were investment vehicles, one pledged to each of two banks. *Id.* Unlike a debenture, USDC has no maturity date and pays no interest. Circle's SUMF ¶ 81. USDC is not issued in a specified class or series, nor is it a single instrument divisible into others.[10]

*Not traded on securities exchanges.* Plaintiffs' only evidence on this element is that USDC trades on Coinbase and Gemini, which "call themselves securities intermediaries." Mot. at 20; SUMF ¶ 31. But a securities intermediary is not a securities exchange; it is a person that "maintains securities accounts for others." N.Y. U.C.C. § 8-102(a)(14). A "cryptocurrency

[10] Plaintiffs cite no decision holding that a stablecoin, or any digital token, satisfies the divisibility test, and Circle is aware of none. The cases finding the divisibility test satisfied involved traditional instruments such as notes, debentures, and stock. *E.g.*, *Highland*, 8 N.Y.3d at 415 (notes "identified in [the issuer's] Form 8-K as a class of obligations"). Courts have found the test unmet for interests created by individual agreements. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F. Supp. 1108, 1118 (S.D.N.Y. 1978) (loan-participation certificates); *Lifespan Corp. v. Nat'l Union Fire Ins. Co.*, 59 F. Supp. 3d 427, 455 (D.R.I. 2014) (interest-rate swap; alternative holding applying New York law). USDC's redemption right belongs in the latter category since it exists only within each Mint account holder's own account relationship with Circle, and a holder without a Mint account has none. Circle's SUMF ¶¶ 55, 62, 80; Terms § 2.

exchange that holds only cryptocurrencies (and not securities) for customers might be a securities intermediary." U.C.C. § 8-102 cmt. 14.

The agreements cited by Plaintiffs confirm the point. Coinbase states that it "is not registered with the U.S. Securities and Exchange Commission and does not offer securities services in the United States," Pls.' Ex. Y at 2, and Gemini states that its use of Article 8 terms "does not imply that the 'financial assets' held in your Gemini Account qualify as 'securities' under federal or state securities laws." Pls.' Ex. Z at 37. Plaintiffs' reliance on *SEC v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 274–75 (S.D.N.Y. 2024), is misplaced: that case addressed thirteen other crypto-assets at the pleading stage, and the SEC later dismissed the suit with prejudice. *See Coinbase*, No. 23 Civ. 4738, ECF No. 176 (S.D.N.Y. Feb. 27, 2025) (Baskin Decl. Ex. 3).

Finally, stablecoins "are not marketed as investments or with any emphasis on the potential for profit"; rather, they are marketed and used "as so-called 'digital dollars' in the same way one would use USD." SEC Div. of Corp. Fin., *Statement on Stablecoins* (Apr. 4, 2025) (Baskin Decl. Ex. 2). They therefore do not fit within UCC Article 8, which is entitled "Investment Securities."

### E. CPLR 5240 Is No Help to Plaintiffs

Finally, Plaintiffs invoke CPLR 5240, but it does not help them. Mot. at 3, 13, 23–24. CPLR 5240 permits a court to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." CPLR 5240. The provision is intended to give courts the power to prevent "unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts." *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 519 (1979) (quoting Third Preliminary Report of the Advisory Comm. on Prac. & Proc. 314 (1959)). While it "relates to the use of an enforcement device," it does not enlarge the property that enforcement devices reach or revive what the Legislature removed from Article

52. *Guardian Loan*, 47 N.Y.2d at 520 (declining to use CPLR 5240 to resurrect "a remedy purposefully deleted from article 52 by the Legislature and one which we have no right to invoke"). Nor does it "empower the court to ignore those procedures [set forth in article 52] or issue an order contrary to the statute." *Kaplan v. Supak & Sons Mfg. Co.*, 46 Misc. 2d 574, 578 (Civ. Ct. N.Y. Cnty. 1965).

An order compelling Circle to pay North Korea or create new property for North Korea here would contravene sovereign immunity, federal sanctions law, and the requirements of New York law on enforcement of judgments. It would also discard the "practical and conceptually sound requirement, under §§ 5225 and 5227, that in order to obtain a turnover order, the judgment creditor must proceed against the person having the ability to produce the asset." *Alliance Bond*, 190 F.3d at 25.

Plaintiffs provide no caselaw supporting their proposed novel use of CPLR 5240. Their examples of a different stablecoin provider reissuing tokens to the United States are inapposite; they involved no turnover to a private creditor and do not address what CPLR 5225(b), 5201(b), or 5240 permit. *See* Mot. at 3, 8, 21, 23–24.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for turnover.

Dated: October 23, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI,
Professional Corporation

/s/ *Colleen Bal*

John P. Flynn
Colleen Bal (admitted *pro hac vice*)
Joshua A. Baskin (admitted *pro hac vice*)
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329

*Counsel for Garnishee Circle Internet Financial, LLC*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law complies with Local Civil Rule 7.1(c) and the Court's Individual Rules and Practices. According to the word-count function of the word-processing program used to prepare it, the memorandum contains 8,724 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate.

/s/ *Colleen Bal*
Colleen Bal (admitted *pro hac vice*)