**McANDREW VUOTTO** LLC
ATTORNEYS AT LAW

Jonathan P. Vuotto, Esq.
jpv@mcandrewvuotto.com
Direct: (973) 532-6242

October 26, 2026

***Via ECF***

Hon. J. Paul Oetken, U.S.D.J.
United States District Court, SDNY
40 Foley Square
New York, NY 10007

**Re:** ***United States v. All USD Tether Held in Cryptocurrency Addresses, et al.*****,**
**Case No. 26-cv-8010 (JPO)**
***Kim v. Democratic People's Republic of Korea*****, No. 25-mc-527 (MMG)**
**Response to Charles Gerstein Letter Motion (ECF No. 23/122)**

Dear Judge Oetken:

We represent the Breitweiser, Ryan, and Eaton Claimants (collectively, the "Breitweiser Claimants") in the above-referenced forfeiture proceeding. We write concerning the October 23, 2026 letter motion filed by attorney Charlie Gerstein in *Kim v. Democratic People's Republic of Korea*, No. 25-mc-527 (MMG), ECF No. 122, and submitted on this docket as ECF No. 23. Mr. Gerstein seeks an extraordinary extension of purported writs of execution directed against Tether assets that are already the subject of this Court's jurisdiction and October 21, 2026 Memorandum and Order (ECF No. 20) and restraining order (ECF No. 21).

The Breitweiser Claimants respectfully submit that Mr. Gerstein's application should not be permitted to circumvent this Court's determination that competing creditors should not obtain additional priority-producing enforcement advantages while the threshold questions concerning their respective interests in the Defendant Property remain unresolved. Although the Breitweiser Claimants respectfully disagree with the Court's deferral of their application for a limited order of attachment, Mr. Gerstein cannot properly obtain preferential treatment through a separate enforcement proceeding concerning the very same property.

**1. This Court expressly prohibited further priority-producing enforcement activity.**

In its October 21 Memorandum and Order, this Court granted the Government's application for a restraining order and deferred consideration of the Breitweiser Claimants' request for expedited attachment relief. The Court explained that the restraining order protects the Defendant Property against other creditors seeking to establish or improve their priority positions while the forfeiture claims remain pending. ECF No. 20 at 6.

The Court further determined that it would be premature to issue an attachment order before resolving threshold questions concerning standing, the availability of TRIA relief in forfeiture proceedings, and the competing claimants' interests in the Defendant Property. *Id.* at 6-8.

Mr. Gerstein's application raises substantially the same issues. He asserts that purported writs delivered to the United States Marshal on September 28, 2026 created liens against most of the Defendant Property, and seeks an order preserving those purported liens through final resolution of this forfeiture proceeding, including all appeals. But neither the validity of those liens nor their priority over the competing claims has been adjudicated.

Mr. Gerstein should not be permitted to obtain, through a separate miscellaneous proceeding, enforcement relief that effectively circumvents the restrictions imposed by this Court upon the Breitweiser Claimants and other creditors. Any relief granted in the related proceeding must remain expressly subordinate to this Court's restraining order and its eventual adjudication of the competing claims.

**2. Mr. Gerstein has not established a valid or superior lien against the Defendant Property.**

The Government commenced this forfeiture proceeding on September 14, 2026. The Breitweiser Claimants filed their verified claim on September 16, 2026. Mr. Gerstein alleges that his clients delivered additional writs of execution to the Marshal on September 28, 2026, after commencement of this proceeding. Unlike the Breitweiser Claimants, Mr. Gerstein had not filed a verified claim in this forfeiture proceeding when he pursued execution through the separate Kim proceedings, and his October 23 letter indicates that his clients intend to file their forfeiture claim by November 25, 2026.

Mr. Gerstein nevertheless maintains that delivery alone established superior execution liens against substantially all of the relevant Islamic Revolutionary Guard Corps ("IRGC") property held by Tether. That assertion is unsupported by any adjudication of the particular property interests involved.

While CPLR 5202(a) recognizes certain rights arising upon delivery of an execution to an enforcement officer, those rights extend only to property against which the judgment may lawfully be enforced. They do not establish ownership of particular property, resolve the applicability of TRIA, or determine priority against the Government or competing judgment creditors. *See Don King Productions, Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir. 1991).

Mr. Gerstein has not demonstrated that each of the cryptocurrency addresses at issue contains property legally subject to execution under the particular judgments identified in his application. Nor has he established the relative priority of those judgments over the interests asserted by the Breitweiser Claimants.

Indeed, his claimed lien appears exceptionally broad and is not tied to an individualized showing concerning the ten cryptocurrency addresses identified in the forfeiture complaint. The actual writs have not been provided to the Breitweiser Claimants, despite our request. Their precise scope, validity, and applicability to the Defendant Property therefore remain unverified.

Further, although Mr. Gerstein emphasizes that certain of his clients possess judgments directly against the IRGC, that distinction does not automatically establish priority over the Breitweiser Claimants. TRIA § 201(a) expressly provides for execution against qualifying blocked assets of agencies and instrumentalities of a terrorist party, and the respective parties' rights in the Defendant Property remain unresolved.

**3. The Government's relation-back interest and case law further undermines the asserted priority.**

This Court specifically recognized that, under 18 U.S.C. § 981(f), the Government's asserted interest in forfeitable property relates back to the commission of the underlying criminal acts, rather than the date on which the Government obtains physical custody. ECF No. 20 at 7-8.

Those criminal acts substantially predate Mr. Gerstein's September 28 writs. Accordingly, his assertion that he necessarily acquired superior rights merely by delivering writs to the Marshal overlooks a central premise of this Court's decision.

Moreover, once the Defendant Property enters the Government's custody, federal sovereign immunity presents an additional substantial obstacle to independent attachment or execution. In *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428 (D.C. Cir. 2023), the court held that federal sovereign immunity barred terrorism judgment creditors from executing against Iranian assets held by the United States, and that TRIA did not waive that immunity.

The Breitweiser Claimants recognize that *Estate of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632 (D.C. Cir. 2025), addresses the availability of TRIA attachment relief notwithstanding certain civil forfeiture restrictions. But *Levin* does not establish that Mr. Gerstein's particular writs created valid liens on the Defendant Property or that his clients possess superior rights to those of other judgment creditors. Those issues remain for determination in this proceeding.

Similarly, the September 4, 2026 decision in *United States v. All Petroleum-Product Cargo Aboard the Achilleas*, No. 21-cv-305 (D.D.C.), recognized that qualifying terrorism judgment creditors may have standing to assert claims in a forfeiture proceeding notwithstanding separate restrictions on execution. That decision reinforces the distinction between participating in forfeiture proceedings and obtaining immediate enforcement rights against property subject to federal custody and forfeiture.

Mr. Gerstein's ability to file a verified claim in this action does not entitle him to a preferential enforcement position outside of it, or to collaterally attack this Court's October 21 Order with an unverified writ.

**4. The proposed extension is extraordinary and should not be granted without sufficient cause and notice to affected creditors.**

Mr. Gerstein requests that the Marshal be prohibited from returning his purported September 28 writs until 60 days after this forfeiture proceeding has concluded and all appeals have been exhausted. This is a potentially indefinite extension of execution process, notwithstanding the extension procedures established by CPLR 5230(c).

Moreover, Mr. Gerstein's October 20 application for alternative service in the *Kim* proceeding apparently did not disclose this pending forfeiture action, although the Government had commenced it more than a month earlier. Mr. Gerstein subsequently relied upon the forfeiture proceeding as grounds for extending the writs. That omission is particularly significant because Mr. Gerstein subsequently invoked the very same forfeiture proceeding as grounds for extraordinary relief preserving his purported execution rights. Before granting such relief, the court should require an explanation of why the pending forfeiture action was not disclosed in the earlier application and whether Judge Garnett was provided with a complete account of the proceedings affecting the Defendant Property.

Mr. Gerstein also does not establish why ordinary statutory extensions under CPLR 5230(c) would be inadequate or why the proposed order should preserve the writs throughout potentially years of additional litigation.

At a minimum, no extension should be granted without production of the underlying writs, proof of their issuance and delivery, identification of the particular judgments they enforce, and an explanation of their claimed application to the Defendant Property.

This is not the first time Mr. Gerstein has attempted to use the *Kim* proceedings to advance competing claims against Tether. In June 2026, the *Benson* plaintiffs challenged his attempt to rely on earlier proceedings involving North Korea judgment creditors to support priority claims by Iran judgment creditors who had pursued enforcement later. *Kim*, ECF No. 75 at 2-3; *Benson*, ECF No. 55. The same concern arises here. Prior orders involving other creditors and writs do not establish that Mr. Gerstein's September 28 writs are valid, reach the Defendant Property, or confer priority. Those matters must first be independently established before the court exercising jurisdiction over the Defendant Property, not presumed through a separate enforcement proceeding.

**5. The Breitweiser Claimants request equal protection against priority-producing enforcement activity.**

The Breitweiser Claimants respectfully maintain their disagreement with the Court's decision to defer their request for a limited attachment order. Their proposed relief was intended to permit issuance of an attachment order and delivery to the Marshal – not service upon the Government, transfer of the Defendant Property, or interference with the Government's contemplated seizure. The requested limited relief was designed to preserve whatever priority rights New York law might recognize pending adjudication of the competing claims, while respecting the Government's custody and this Court's jurisdiction.

Mr. Gerstein's present application demonstrates the precise concern that prompted the Breitweiser Claimants' request. Competing judgment creditors are pursuing enforcement devices intended to establish or preserve their asserted priority, notwithstanding this Court's determination that such questions should be addressed after completion of the forfeiture notice process.

If the Court continues to defer the Breitweiser Claimants' attachment request, it should ensure that other creditors are not permitted to obtain a practical advantage through orders issued in parallel proceedings.

Accordingly, the Breitweiser Claimants respectfully request that the Court:

(1) Confirm that the Court's Restraining Order (ECF No. 21) prohibits any additional levy, attachment, service, perfection, or other priority-producing enforcement activity against the Defendant Property absent further order of this Court;

(2) Direct that any extension granted in the *Kim* proceeding shall not establish, validate, enlarge, or improve any purported lien or priority against the Defendant Property;

(3) Require production of the September 28 writs and supporting issuance and delivery records before any judicial determination of their validity, scope, or asserted effect upon the Defendant Property;

(4) Preserve the rights of the Breitweiser Claimants to challenge those writs under applicable federal law and CPLR Article 52; and

(5) Preserve the Breitweiser Claimants' right to seek prompt, limited relief concerning their pending attachment application, including issuance of an attachment order solely for delivery to the Marshal, without service or levy pending further order.

The Breitweiser Claimants respectfully submit that these measures would give effect to the Court's stated objective of preserving the Defendant Property and preventing further priority-producing enforcement activity, while avoiding premature adjudication of the competing claimants' rights.

Respectfully submitted,

*<u>/s/Jonathan P. Vuotto</u>*
Jonathan P. Vuotto

cc: Hon. Margaret M. Garnett, U.S.D.J. (via email and ECF)
All counsel of record