**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAN KIM, YONG SEOK KIM, YONG HWA CHUNG KIM, CHUNG KOOK KIM, and DANI BUTLER,<br><br>Plaintiffs,<br><br>v.<br><br>THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, a.k.a. NORTH KOREA,<br><br>Defendant,<br><br>CIRCLE INTERNET FINANCIAL LLC,<br><br>Garnishee. | Case No. 1:25-mc-00527-MMG |
| HAN KIM, YONG SEOK KIM, YONG HWA CHUNG KIM, CHUNG KOOK KIM, and DANI BUTLER,<br><br>Plaintiffs,<br><br>v.<br><br>CIRCLE INTERNET GROUP, INC., and CIRCLE INTERNET FINANCIAL, LLC,<br><br>Defendants. | Case No. 1:26-cv-05445-MMG |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GARNISHEE AND DEFENDANT CIRCLE INTERNET FINANCIAL, LLC'S MOTION TO VACATE RESTRAINING NOTICE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. THE RESTRAINING NOTICE WAS INEFFECTIVE AB INITIO ........ 3

II. CIRCLE NEVER HAD "POSSESSION OR CUSTODY" OF ANY NORTH KOREAN PROPERTY ........ 5

A. Even a Valid Restraining Notice Would Only Reach Property in Circle's Actual Possession ........ 5

B. Circle Did Not Actually Possess North Korean Property ........ 8

C. North Korea Has No Interest in the USDC Reserves ........ 10

III. PLAINTIFFS' POLICY ARGUMENTS ARE MERITLESS ........ 11

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABKCO Indus., Inc. v. Apple Films, Inc.*,
39 N.Y.2d 670 (1976) .......... 10

*All. Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*,
190 F.3d 16 (2d Cir. 1999) .......... 10

*Aspen Indus., Inc. v. Marine Midland Bank*,
52 N.Y.2d 575 (1981) .......... 3

*Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*,
21 N.Y.3d 55 (2013) .......... *passim*

*Contact Res. Servs., LLC v. Gregory*,
10 Misc. 3d 968 (Rochester City Ct. 2005) .......... 4

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
22 F.4th 83 (2d Cir. 2021) .......... 6

*Hotel 71 Mezz Lender LLC v. Falor*,
14 N.Y.3d 303 (2010) .......... 10

*In re Gravel*,
6 F.4th 503 (2d Cir. 2021) .......... 3

*In re Sealed Case*,
932 F.3d 915 (D.C. Cir. 2019) .......... 7

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
295 F. Supp. 2d 366 (S.D.N.Y. 2003) .......... 3, 4

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
739 F.3d 45 (2d Cir. 2013) .......... 7

*MacArthur I, Inc. v. Fields*,
188 A.D.3d 493 (1st Dep't 2020) .......... 1, 6, 7

*Matter of Supreme Mdse. Co. v. Chem. Bank*,
70 N.Y.2d 344 (1987) .......... 10

*Matter of Wimbledon Fin. Master Fund, Ltd. v. Bergstein*,
173 A.D.3d 401 (1st Dep't 2019) .......... 3

*May v. Google LLC*,
2026 U.S. Dist. LEXIS 59785 (N.D. Cal. Mar. 20, 2026) .......... 9

*Pan Am. World Airways, Inc. v. Chem. Bank*,
78 A.D.2d 844 (1st Dep't 1980) .......... 3

*Plaza Hotel Assocs. v. Wellington Assocs., Inc.*,
Misc. 2d 777 (Sup. Ct. N.Y. Cnty. 1975) ........ 8

*Ray v. Jama Prods., Inc.*,
74 A.D.2d 845 (2d Dep't 1980) ........ 7

*Retail Prop. Tr. v. Nassau Cnty. Dep't of Assessment*,
185 F.4th 316 (2d Cir. 2026) ........ 6

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) ........ 6

*Tri-Glob. Mgmt. Corp. v. Richardson*,
25 A.D.3d 600 (2d Dep't 2006) ........ 3

*Wagner v. Chiari & Ilecki, LLP*,
973 F.3d 154 (2d Cir. 2020) ........ 5

**STATUTES**

CPLR 5201(b) ........ 10

CPLR 5222 ........ *passim*

CPLR 5240 ........ 11

McKinney's Cons. Laws of N.Y., Book 1, Statutes § 97 ........ 6

McKinney's Cons. Laws of N.Y., Book 1, Statutes § 98 ........ 6

N.Y. U.C.C. § 12-105(a)(1)(A)–(B) ........ 9

**RULES**

31 C.F.R. § 510.201(a)(1) ........ 10

31 C.F.R. § 510.201(b)(1) ........ 7, 9, 10

31 C.F.R. § 510.405(d)(1) ........ 7

## PRELIMINARY STATEMENT

Plaintiffs' restraining notice is invalid. As explained in Circle's opening brief, the notice was void *ab initio* because Circle was not in "possession or custody" of North Korean property at the time Plaintiffs served it. Mot. 5–9; CPLR 5222(b); *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*, 21 N.Y.3d 55, 57, 63 (2013) (ruling that "possession or custody" requires "actual possession").

In opposition, Plaintiffs do not even try to demonstrate actual possession. Instead, they argue that *MacArthur I, Inc. v. Fields*, 188 A.D.3d 493 (1st Dep't 2020), repudiated the requirement in the context of restraining notices, as if the *MacArthur* court could alter the statutory text or overturn a higher court's precedent. In reality, *MacArthur* ruled on its facts that a judgment debtor could not evade his fiscal obligations by delegating authority over his assets to a non-party. The case has no application here.

Plaintiffs also argue that Circle's capabilities as the issuer of USDC constitute sufficient control over USDC that Plaintiffs need not allege actual possession. That argument contravenes *Northern Mariana* and is also based on fabrications nowhere present in the record—including that Circle "can do whatever it wants with USDC" (Opp. 13) and "can cause every single USDC balance anywhere to move from one address to another" (Opp. 17), to the point where Plaintiffs ultimately contend that Circle should be deemed to possess "every single USDC" ever issued (Opp. 16–17). Plaintiffs' fabrications and reliance on material outside the record only serve to demonstrate the poverty of their position:

*First*, as noted, the notice never took effect. Its first provision improperly purports to restrain Circle's *own* property, not North Korea's. Contrary to Plaintiffs' contention, Circle was not required to look beyond the actual language of the notice to decipher what Plaintiffs say they intended.

The entire restraining notice, including its second provision which purports to restrain Circle with respect to North Korean property coming into Circle's possession or custody after service of the notice, is invalid because Circle did not possess property in which it knew North Korea had an interest "at the time of service." CPLR 5222(b). Plaintiffs manipulate CPLR 5222(b)'s language to try to construct "a second, independent" basis to find the notice valid, but the effort is fruitless. Even Plaintiffs' construction would have required them to "state[] in the notice" the specific North Korean property in Circle's possession at the time. Because Circle had no such property, then or since, the notice was ineffective.

Plaintiffs point to Circle's abilities to freeze USDC and "mint" (i.e., create) new USDC, but neither constitutes actual possession of North Korean assets. And Plaintiffs' contention that Circle could *revise* its technology to permit it to "move a USDC balance from one address to another" admits that Circle did not have that ability at the time the restraining notice was served.

*Second*, North Korea does not have any interest in the reserves backing USDC. Among other things, North Korea has no right to redeem USDC for U.S. dollars from Circle, and because U.S. sanctions law and Circle's own terms prohibit it, Circle cannot be required to do so. North Korea likewise cannot require Circle to mint USDC for it and therefore has no interest in "substitute" USDC.

Finally, vacating the restraining notice would not "benefit" North Korea, as Plaintiffs contend. The USDC in the three wallets would remain frozen, as it was before Plaintiffs served the notice. And it would have no effect on Circle's ongoing obligations to comply with sanctions law and regulations.

For these reasons, Circle respectfully requests that the Court vacate the restraining notice.

## ARGUMENT

## I. THE RESTRAINING NOTICE WAS INEFFECTIVE *AB INITIO*

*The First Provision*. The first provision restrains "any property in which you [Circle] have an interest." Baskin Decl. Ex. A at 3. That is beyond the scope of CPLR 5222(b) and therefore invalid. Plaintiffs do not address, let alone distinguish, Circle's on-point authority. *See* Mot. 4 (citing *JSC*, *AG Worldwide*, *Verizon New England*).

Instead, Plaintiffs argue that Circle should have known they meant to restrain North Korean property. Opp. 11–12. But Circle was not required to speculate that Plaintiffs intended the provision to restrain North Korea's property, not Circle's. A restraining notice "serves as a type of injunction," *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981), and "to imply a restraint where none is stated would violate the principle that a party must have 'explicit notice' of what is forbidden or required." *In re Gravel*, 6 F.4th 503, 513 (2d Cir. 2021) (citation omitted); *see Tri-Glob. Mgmt. Corp. v. Richardson*, 25 A.D.3d 600, 601 (2d Dep't 2006) (no contempt for "failure to freeze" account not "included in a proper restraining notice").

Plaintiffs' cases are inapt. Neither involved a notice that, by its terms, purported to restrain the garnishee's own property. *See Pan Am. World Airways, Inc. v. Chem. Bank*, 78 A.D.2d 844, 844 (1st Dep't 1980) (ordering hearing to determine whether bank knew misnamed account belonged to the debtor); *Matter of Wimbledon Fin. Master Fund, Ltd. v. Bergstein*, 173 A.D.3d 401, 401–02 (1st Dep't 2019) (holding firm in civil contempt for dissipating assets from the firm's escrow account knowing they were subject to restraint).

In the alternative, Plaintiffs ask the Court to modify the notice to restrain North Korean property. Opp. 12. That would be futile. A modified notice would restrain nothing, because Circle held no North Korean property at service and Plaintiffs do not provide any evidence that Circle holds North Korean property now. *See* Marathakis Decl. ¶¶ 6, 11–13. Plaintiffs' cases

are again inapt. They involved *a restrained party's* request to narrow overbroad notices. Neither rewrote a restraining notice to reach property the restrained party did not hold. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 393 (S.D.N.Y. 2003) (granting defendants' motion to modify restraining notices "to the extent that they purport to affect any property other than that of the judgment debtor"); *Contact Res. Servs., LLC v. Gregory*, 10 Misc. 3d 968, 975–76 (Rochester City Ct. 2005) (on defendant's motion, requiring future notices to exclude "exempt Social Security benefits").

*The Second Provision*. The entire restraining notice, including the second provision, never took effect because, at the time of service, Circle did not possess any North Korean property. Marathakis Decl. ¶¶ 11–13; CPLR 5222(b). Again, Plaintiffs do not address, let alone distinguish, Circle's authorities vacating restraining notices for this very reason. *See* Mot. 5–6, 8–9 (citing *AG Worldwide*, *AXGINC*, Siegel, N.Y. Jur. 2d Enforcement and Execution of Judgments, and the CPLR 5222 legislative history, *Greenwood*, *Taag*, *Cascade*, *Israel Discount*, and *Hillwick*).

Instead, Plaintiffs manipulate the language of CPLR 5222(b) to argue that a restraining notice is effective if it states "that the judgment debtor . . . has an interest in specified property in the possession or custody of the person served," *whether or not* the restrained party was in possession of such property at the time of service. *See* Opp. 9–10. Plaintiffs cite no authority to support their interpretation abolishing the "at the time of service" requirement because there is none. In fact, a Second Circuit case Plaintiffs cite says precisely the opposite:

> While restraining notices can be served on a person other than a judgment debtor, such a restraining notice "is effective only if, ***at the time of service***" (1) "he or she owes a debt to the judgment debtor," (2) the person "is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest," or (3) "***the judgment creditor or support collection unit has stated in the notice . . . that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served***."

*Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 157 (2d Cir. 2020) (emphasis added) (quoting CPLR 5222(b)); *see also* CPLR 5222 McKinney, Legislative Studies and Reports ("Under the second sentence of subd. (b) the restraining notice is effective against persons other than the judgment debtor only if they know or have reason to believe *at the time of service* that they are indebted to, or have property of, the judgment debtor." (emphasis added)).

## II. CIRCLE NEVER HAD "POSSESSION OR CUSTODY" OF ANY NORTH KOREAN PROPERTY

Even if Plaintiffs' interpretation of CPLR 5222(b) were correct, the outcome would be the same. The notice did not identify any property "in the possession or custody of" Circle in which North Korea had an interest and was therefore never effective. *See* Marathakis Decl. ¶¶ 11–13; Mot. 8–9 (collecting cases vacating restraining notices for this reason).

### A. Even a Valid Restraining Notice Would Only Reach Property in Circle's Actual Possession

A restraining notice against a third party like Circle only covers property "in the possession or custody" of the third party in which the judgment debtor has an interest. CPLR 5222(b). The New York Court of Appeals has held that "possession or custody" means actual possession, not control or constructive possession. *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*, 21 N.Y.3d 55, 61 (2013); Mot. 6–8.

Plaintiffs argue that the New York Court of Appeals' decision in *Northern Mariana*, interpreting "possession or custody" to require "actual possession," is limited to turnover under CPLR 5225(b) and does not apply to restraining notices under CPLR 5222(b). Opp. 13–16.

They are mistaken. Although the court performed its statutory analysis of "possession or custody" in the context of responding to a question about turnover, its decision was not confined to turnover. *See, e.g.*, 21 N.Y.3d at 63 ("[T]his Court is required to construe the entire CPLR in a manner that harmonizes these variations [of 'possession or custody' with 'possession, custody or control'].""); *id.* at 62 ("When the legislature has sought to encompass the concept of 'control' it has done so explicitly, evincing a legislative intent to exclude consideration of 'control' from those sections from which it is omitted."). Nor did *Northern Mariana* turn on the subsidiary's foreign location, as Plaintiffs contend. Opp. 14–15, 18. Its holding rests on the legislature's omission of "control" from "possession or custody." 21 N.Y.3d at 61–63.

Because the court's analysis across the CPLR was required to construe "possession or custody," it is binding authority. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *Retail Prop. Tr. v. Nassau Cnty. Dep't of Assessment*, 185 F.4th 316, 326 (2d Cir. 2026) (same).

Plaintiffs' claim that "possession or custody" is more broadly construed in CPLR 5222(b) than in CPLR 5225(b) must therefore be rejected as antithetical to *Northern Mariana*, as well as general principles of statutory construction. *See* Opp. 13–16; *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 96 (2d Cir. 2021) (Second Circuit "bound to apply" "New York law as determined by the New York Court of Appeals"); *N. Mariana*, 21 N.Y.3d at 63 (citing McKinney's Cons. Laws of N.Y., Book 1, Statutes §§ 97, 98).

Plaintiffs contend that in *MacArthur*, the Appellate Division "rejected extending *Northern Mariana's* 'actual possession' rule to restraining notices." Opp. 15. For the reasons discussed above, the claim that any "extension" is necessary mischaracterizes *Northern Mariana*.

Regardless, *MacArthur* does not suggest any departure from *Northern Mariana* here. Nor could it. In *MacArthur*, a payment administrator that the judgment debtor authorized to access an account and "make deposits, withdrawals and transfers as directed" disbursed nearly $470,000 at the debtor's direction after receiving the notice. 188 A.D.3d at 494–95. The court declined to interpret "possession or custody" to exclude the administrator's relationship to the debtor's accounts, since the debtor authorized the administrator to transact for his benefit. *Id.* at 495.[1]

Those facts are not remotely at issue here. Plaintiffs do not show that Circle has any relationship with North Korea, and it has none. Marathakis Decl. ¶ 6. Indeed, federal sanctions law prohibits U.S. persons from providing "financial . . . or other services" to North Korea. *See* 31 C.F.R. § 510.405(d)(1); *see also id.* § 510.201(b)(1); Exec. Order No. 13722 § 3(a)(i), 81 Fed. Reg. 14943 (Mar. 18, 2016); *In re Sealed Case*, 932 F.3d 915, 919 (D.C. Cir. 2019). North Korea cannot hold a Circle Mint account and did not give Circle access to or authority over anything. Marathakis Decl. ¶¶ 6, 12–13. Nor did Circle transfer anything; it froze the three wallets before service and cannot move their contents. *Id.* ¶¶ 10, 12–13.

Even if *MacArthur* were relevant here, to the extent it interprets "possession or custody" to mean anything other than "actual possession," it must be rejected. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (declining to follow "mistaken" intermediate appellate court ruling where New York Court of Appeals had "already prescribed the . . . rules applicable to the case at bar").

[1] *Ray v. Jama Prods., Inc.*, 74 A.D.2d 845, 845–46 (2d Dep't 1980), is inapposite for the same reasons. The garnishee in *Ray* had a relationship with the judgment debtor and, in violation of a restraining notice, paid a third party for the judgment debtor's benefit. *Id.* at 845.

### B. Circle Did Not Actually Possess North Korean Property

Circle[2] never actually possessed any North Korean property, including the USDC in the three wallet addresses identified in the restraining notice. Mot. 3, 8; Marathakis Decl. ¶¶ 11–13. Plaintiffs do not dispute that Circle lacks the private keys and cannot move that USDC. *See* Opp. 12–13; *see also* Opp. 4 (Circle "cannot directly move a frozen balance" without "changing the smart contract"). That forecloses any "prima facie" showing. Opp. 8, 16. *Plaza Hotel Associates v. Wellington Associates, Inc.*, cited by Plaintiffs, is inapposite. The bank indisputably held the account, and the only question was whether its contents belonged to the debtor's alter ego. 84 Misc. 2d 777, 778–81 (Sup. Ct. N.Y. Cnty. 1975).

Plaintiffs instead argue the *non sequitur* that Circle supposedly possesses "every USDC coin that it issues" because it can freeze wallet addresses and mint new tokens. Opp. 16–17. Neither ability gives Circle possession of alleged North Korean USDC, and *Northern Mariana* rejected the "control" test Plaintiffs advocate. 21 N.Y.3d at 60. Plaintiffs' Wells Fargo analogy (Opp. 17) is inapt because Wells Fargo has possession or custody of the funds in its customers' bank accounts.

Plaintiffs' fallback, that Circle could in the future rewrite its smart contracts to "move a USDC balance from one address to another," (Opp. 17), fares no better. Plaintiffs do not contend that Circle had rewritten anything at the time Plaintiffs served the restraining notice, and even if they did, the mere ability to "move" USDC out of a wallet is not possession of it.

Nor does UCC Article 12, which governs controllable electronic records ("CERs"), help Plaintiffs. Control of a CER requires that a person have, among other things, (1) the "power to

---

[2] Circle withdraws its statement that the restraining notice was not served on Circle Internet Group, Inc. Mot. 1; *see* Opp. Ex. A. Regardless, the notice never took effect on either Circle entity for the same reasons. *See* Mot. 5–9.

avail itself of substantially all the benefit" of the record, and (2) "exclusive power . . . to . . . transfer control of the electronic record to another person or cause another person to obtain control of another controllable electronic record as a result of the transfer of the electronic record." N.Y. U.C.C. § 12-105(a)(1)(A)–(B). Whoever holds the private keys, not Circle, has those powers. Circle never controlled, much less possessed, the USDC in the three wallet addresses.[3]

USDC is also not akin to gift-card balances, as Plaintiffs contend. Opp. 18–19. Holders cannot redeem USDC from Circle without being eligible for, and having, a Circle Mint account. North Korea is ineligible. Marathakis Decl. ¶¶ 4–6 & Ex. B, USDC Terms § 2; 31 C.F.R. § 510.201(b)(1). And *May v. Google LLC*, 2026 U.S. Dist. LEXIS 59785, at *53–54 & n.2 (N.D. Cal. Mar. 20, 2026), is inapposite. It applied California conversion law, not the CPLR, and it credited without deciding the "allegation" that Google possessed the funds at issue. *Id.* at *53 & n.2.

Contrary to Plaintiffs' claim (Opp. 4–5), Circle's voluntary agreement to issue substitute USDC in the context of a government forfeiture case, conditioned on "a final order or judgment of forfeiture and a permanent blocklisting order," (*id.*) says nothing about the requirements of CPLR article 52. If anything, an agreement by Circle to issue *substitute* USDC after the government obtains a final order of forfeiture confirms that Circle does not possess the USDC.

[3] Plaintiffs' contention that "control" of a CER establishes possession is unsupported by Prefatory Note 1 to UCC Article 12 that they cite. Opp. 18. The note calls control "the functional analogue of possession" in the "context of" "perfection of a security interest." It does not say that control is possession, much less in the context of a restraining notice. *See N. Mariana*, 21 N.Y.3d at 62 (rejecting argument that "custody" is "the functional equivalent of 'control'").

### C. North Korea Has No Interest in the USDC Reserves

Plaintiffs' alternative theory, that North Korea held an assignable interest in equivalent U.S. dollar reserves held by Circle to back USDC, (Opp. 19–20), fails because North Korea has no interest in the reserves. CPLR 5222(b).

Federal law prohibits Circle from providing "funds, goods, or services" to or for the benefit of North Korea, and the USDC Terms likewise bar North Korea from holding or redeeming USDC. 31 C.F.R. §§ 510.201(a)(1), (b)(1); Marathakis Decl. Ex. B, USDC Terms §§ 2–3, 30.[4] Consistent with these obligations, Circle does not redeem USDC for North Korea. Marathakis Decl. ¶ 6. Nor does it matter that the reserves are held "for the benefit of" holders, including in the case of frozen USDC (Opp. 19); the same Terms permit redemption only "so long as the Holder is eligible to, and does, register a Circle Mint account." Marathakis Decl. Ex. B, USDC Terms §§ 1–2. North Korea does not qualify.

Because North Korea has no right in the reserves that "could be assigned or transferred," CPLR 5201(b), the reserves are not subject to a restraint. *See* CPLR 5222(b); *Matter of Supreme Mdse. Co. v. Chem. Bank*, 70 N.Y.2d 344, 350 (1987) ("In the absence of compliance with the terms and conditions of a letter of credit, the issuing bank owes nothing to the beneficiary."); *All. Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 190 F.3d 16, 25 (2d Cir. 1999).

Plaintiffs' reliance on *ABKCO* and *Hotel 71* is misplaced. Opp. 20. They involved interests the debtors held and could assign. *ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 674 (1976); *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 314 (2010). North Korea holds no right at all in the reserves backing USDC.

---

[4] Circle's statement to the SEC that outstanding USDC "continue to represent an obligation for the Company to redeem" them, (Opp. 3, 20), is not to the contrary. The same letter explains that "not all holders are able to redeem Circle stablecoins directly from Circle." Letter from Circle Internet Financial Ltd. to SEC, at 38 (Apr. 12, 2024).

## III. PLAINTIFFS' POLICY ARGUMENTS ARE MERITLESS

Plaintiffs' argument that the notice "does not require Circle to do anything it should not already be doing" under sanctions law is misguided. Opp. 20–21. Sanctions obligations exist independent of restraining notices. They cannot transform an ineffective notice into an effective one.

Nor is Circle "asking for permission to not exercise" its power to freeze. Opp. 21. Circle froze the three wallets before Plaintiffs served the notice, and they remain frozen. Marathakis Decl. ¶ 10. Plaintiffs' complaint that Circle would be "categorically and always immune" from notices aimed at wallet addresses other than its own, (Opp. 2), is a quibble with CPLR 5222(b)'s requirement that a restrained party actually possess the restrained property.

Finally, Circle may move to vacate a restraining notice at "any time." CPLR 5240.

## CONCLUSION

For the foregoing reasons, Circle respectfully requests that the Court vacate the restraining notice.

Dated: October 30, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *John P. Flynn*
John P. Flynn
Colleen Bal (admitted *pro hac vice*)
Joshua A. Baskin (admitted *pro hac vice*)
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: jflynn@wsgr.com
Email: cbal@wsgr.com
Email: jbaskin@wsgr.com

*Counsel for Defendants Circle Internet Financial LLC, Circle Internet Group, Inc. and Garnishee Circle Internet Financial LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, the undersigned certifies that this brief contains 3,418 words and complies with the Court's formatting rules.

Dated: October 30, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *John P. Flynn*
John P. Flynn
Colleen Bal (admitted *pro hac vice*)
Joshua A. Baskin (admitted *pro hac vice*)
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: jflynn@wsgr.com
Email: cbal@wsgr.com
Email: jbaskin@wsgr.com

*Counsel for Defendants Circle Internet Financial LLC, Circle Internet Group, Inc. and Garnishee Circle Internet Financial LLC*